UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TONY V. STARLING, SR.,

                                        Plaintiff,

                                                                5:19-cv-1458
v.                                                              (DNH/TWD)


SYRACUSE POLICE DEPARTMENT, et al.,

                                        Defendants.
_____

APPEARANCES:

TONY V. STARLING, SR.
Plaintiff, *pro se*
Onondaga County Justice Center
555 South State Street
Syracuse, NY 13202

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

        The Clerk has sent to the Court for review a complaint submitted by *pro* se Plaintiff Tony

V. Starling, Sr., asserting claims pursuant to 42 U.S.C. § 1983, together with an application to

proceed *in forma pauperis* ("IFP Application").  (Dkt. Nos. 1, 4.[1])  Plaintiff, who is presently

confined at the Onondaga County Justice Center, has not paid the required filing fee.

## I.      IFP APPLICATION

        Plaintiff has submitted a completed and signed IFP Application (Dkt. No. 4), which

demonstrates economic need.  *See* 28 U.S.C. § 1915(a)(2).  Plaintiff has also filed the inmate

---

        [1]  By Order filed November 26, 2019, Plaintiff's first IFP Application (Dkt. No. 2) was
denied as incomplete and this action was administratively closed.  (Dkt. No. 3.)  The matter was
reopened and restored to the docket by Order filed December 5, 2019.  (Dkt. No. 6.)

authorization form required in this District.  (Dkt. No. 5.)  Accordingly, Plaintiff's IFP Application is granted.[2]

## II.    SUFFICIENCY OF THE COMPLAINT

### A.    Governing Legal Standard

Section 1915(e) directs that when a person proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(I)-(iii).[3]

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner[4] seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief can be granted; or . . . seeks monetary relief against a person who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir.

---

[2]  "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged."  *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts."  *Id*. (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).  Plaintiff should also note that although his IFP Application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[3]  An action is frivolous if the complaint "lacks an arguable basis either in law or in fact." *Natzke v. Williams*, 490 U.S. 319, 325 (1989).

[4]  As used in this section, the term "prisoner" means "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  28 U.S.C. § 1915A(c).

2007) (stating that both Sections 1915 and 1915A are available to evaluate prisoner *pro se* complaints).

A court may not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

The Court must construe *pro se* complaints liberally, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted).

Moreover, a *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

**B.      Summary of the Complaint**

Plaintiff's nineteen-page pleading is comprised of a *pro se* civil rights form complaint, along with additional pages of documents and letters in support thereof. (*See generally* Dkt. No. 1.[5]) The following fact are set forth as alleged by Plaintiff.

On April 7, 2019, Plaintiff was subjected to excessive force during an arrest and denied subsequent medical treatment by Syracuse Police Officers P. Moore, C. Mahon, and K. Kemple.[6]

---

[5] In addition to the form complaint, dated November 16, 2019, Plaintiff has filed a two-page handwritten narrative detailing the event giving rise to this action with a New York State caption against the Syracuse Police Department as dated October 7, 2019, and November 21, 2019, (*id*. at 1-2); a four-page handwritten similar narrative with a New York State caption against Onondaga County Justice Center, Onondaga County Sheriff's Office, Onondaga County (County Executive), Sheriff, Undersheriff, Chief of Custody, Syracuse Police Department, Syracuse Police Officers, Syracuse Police Chief, and City of Syracuse (Office of Mayor), titled "Verified Affidavit in Support of Notice of Claim, Tort, and Complaint," dated October 24, 2019, (*id*. at 6-9); a six-page handwritten letter describing the events at issue addressed to The Post Standard, The Legal Aid Society of New York, and Cozen O'Connor Law Firm, and copied to the Onondaga County Supreme Court, Onondaga County Executive, City of Syracuse Mayor, City of Syracuse Chief of Police, and State of New York Attorney General, dated October 19, 2019, (*id* at. 10-15); correspondence from the Syracuse Citizen Review Board dated April 12, 2019, (*id*. at 16); correspondence from the Syracuse Police Department dated April 23, 2019, (*id*. at 17); correspondence from the Syracuse Police Department dated April 23, 2019, and June 11, 2019, (*id*. at 17-18); and a handwritten letter addressed to Syracuse Police of Chief Kenton T. Buckner dated October 15, 2019, (*id*. at 19).

[6] Plaintiff states that "K. Kemple" may be "K. Kemble," "K. Kimple," or "K. Kimble." (Dkt. No. 1 at 4, 5.) The Court will use "K. Kemple" herein.

(*Id*. at 3-5.[7])  Specifically, he claims he was "beaten," "pepper sprayed," and "snatched," from the passenger side of his cousin's vehicle "without being asked for I.D." while the car was parked on the side of the street by these Syracuse Police Officers.  (*Id*. at 4.)  The excessive force was "applied . . . continuously for a few minutes composed of dragging, pulling, slamming, punching, and bludgeoning [Plaintiff].  Even after applying restraints and having [him] fully subdued, police continued with exercising blunt force and gratuitous violent behavior."  (*Id*. at 12.)  Plaintiff "clamored and writhed in agony and pain, importing police to cease their beating on him and to seek exigent emergency services.  He was taken to the nearby fire department to flush his eyes for about three minutes and then transported directly to the Justice Center.  No hospitalization or emergency medical services were administered."  (*Id*. at 13.)

Five days later, after he kept complaining about his pain, Plaintiff was transported from the Onondaga County Justice Center to "nearby hospital services where it was deemed [he] had incurred a fractured disc in the lower lumbar (back), nerve damage in his back, neck, and hands, ensuing numbness in the hands, neck, and legs, and deplorable injury to his right eye."  (*Id*. at 4, 13.)  In addition to his injuries, Plaintiff must now wear glasses.  (*Id*. at 4.)

Plaintiff seeks money damages.  For a complete statement, reference is made to the complaint.

### C.    Analysis

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action "for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws

---

[7]  Page references to documents identified by docket number refer to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.  Unless noted, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

of the United States." 42 U.S.C. §1983. "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). Accordingly, supervisors cannot be held liable for damages under Section 1983 solely by virtue of their roles as supervisors, nor can their liability be predicated upon *respondeat superior*. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *see also Iqbal*, 556 U.S. at 676 ("[V]icarious liability is inapplicable to . . . [Section] 1983 suits.").

Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).[8]

---

[8] The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

### 1. P. Moore, C. Mahon, and K. Kemple

The Court construes Plaintiff's complaint as alleging Fourth Amendment excessive force and Fourteenth Amendment deliberate indifference claims against Syracuse Police Officers P. Moore, C. Mahon, and K. Kemple. Therefore, the Clerk is directed to amend the docket to add P. Moore, C. Mahon, and K. Kemple as Defendants.

#### a. Excessive Force

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). The standard governing excessive force is "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "[T]he Second Circuit has held that even minor injuries, including scrapes and bruises, can support an excessive-force claim." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 442 (E.D.N.Y. 2012).

Here, Plaintiff claims that on April 7, 2009, P. Moore, C. Mahon, and K. Kemple beat, pepper sprayed, dragged, pulled, slammed, and punched Plaintiff, some of which occurred while he was restrained, resulting in serious injuries. (Dkt. No. 1 at 3-5, 12, 13.) Mindful of the Second Circuit's direction that a *pro se* plaintiff's pleadings must be liberally construed, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds Plaintiff's Fourth Amendment excessive force claims against P. Moore, C. Mahon, and K. Kemple survives *sua sponte* review. In so finding, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed dispositive motion.

### b.        Deliberate Indifference

An arrestee or pretrial detainee's claim of deliberate indifference to medical needs is analyzed under the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment, which is the source of the same right for convicted prisoners. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (addressing pretrial detainees' claims of deliberate indifference to conditions of confinement); *see also Boston v. Suffolk Cty.*, No. 14-cv-5791, 2018 WL 344970, at *10 (E.D.N.Y. Jan. 9, 2018) (applying *Darnell* to claims of deliberate indifference to medical needs by arrestee).[9]

To state a Fourteenth Amendment claim for medical indifference, a plaintiff must allege (1) the medical need was "sufficiency serious" such that it is "a condition of urgency, one that may produce death, degeneration, or extreme pain," and (2) the defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed . . . even though the [officer] knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d. at 35. Both prongs of this test are defined "objectively" under the Fourteenth Amendment. *Id.*

As a general matter, non-medical personnel may be liable for deliberate indifference to medical needs where a plaintiff demonstrates that such personnel intentionally denied or delayed

---

[9]  Because Plaintiff has not alleged any deprivation of his constitutional rights while a convicted prisoner, the Court recommends dismissing any Eighth Amendment claims pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). Plaintiff also asserts a Fifth Amendment claim. (*See* Dkt. No. 1 at 5.) The Fifth Amendment, however, applies to the federal government, not to the states. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (holding Fifth Amendment's Due Process Clause protects citizens against only federal government actors, not state officials); *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 466-67 (S.D.N.Y. 2009) (holding that any due process claim against the city was "properly brought under the Fourteenth Amendment, not the Fifth Amendment"). Because Plaintiff has not alleged any deprivation of his due process rights by the federal government, the Court also recommends dismissing any Fifth Amendment claims pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

access to medical care or intentionally interfered with medical treatment once is was prescribed. *See Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 274 (N.D.N.Y. 2018); *see also Boyd v. Doe #1*, No. 9:18-CV-1333 (TJM/ATB), 2019 WL 1771501, at *7 (N.D.N.Y. Apr. 23, 2019).

Here, Plaintiff claims that he "clamored and writhed in agony and pain, importing police to cease their beating on him and to seek exigent emergency services." (Dkt. No. 1 at 13.) Although he was taken to the nearby fire department to "flush his eyes," "[n]o hospitalization or emergency medical services were administered" and, instead, Plaintiff was transported to the Onondaga County Justice Center. (*Id*. at 13.)

Mindful of the Second Circuit's direction that a *pro se* plaintiff's pleadings must be liberally construed, *Sealed Plaintiff v. Sealed Defendant*, *supra*, the Court finds Plaintiff's Fourteenth Amendment medical indifference claims against P. Moore, C. Mahon, and K. Kemple survives *sua sponte* review. In so finding, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed dispositive motion.

### 2. Syracuse Police Department and Onondaga County Sheriff's Office

Plaintiff identifies the Syracuse Police Department and Onondaga County Sheriff's Office as Defendants. However, "[a] police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (dismissing claims against county sheriff's department) (citations omitted); *see also Jackson v. Cty. of Nassau*, 07-CV-245, 2010 WL 335581, at *5 (E.D.N.Y. Jan. 22, 2010) ("Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued."); *see, e.g.*, *La Grande v. Town of Bethlehem Police Dep't*, No. 1:08-CV-0738 (LEK/DRH), 2009 WL 2868231, at *2 (N.D.N.Y. Sept. 1, 2009)

("Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, [the plaintiff's] [c]omplaint is dismissed as against the Town of Bethlehem Police Department."); *Jenkins v. Liadka*, No. 5:10-CV-1223 (GTS/DEP), 2012 WL 4052286, at *5 (N.D.N.Y. Sept. 13, 2012) ("Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant.").

Therefore, the Court recommends dismissing the complaint against the Syracuse Police Department and Onondaga County Sheriff's Office with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### 3.    Onondaga County and City of Syracuse

While amenable to suit under Section 1983, a municipality may not be held liable under that section for the acts of its employees based on a theory of *respondeat superior*. *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978); *Blond v. City of Schenectady*, No. 10-CV-0598, 2010 WL 4316810, at *3 (N.D.N.Y. Oct. 26, 2010). To sustain a Section 1983 claim for municipal liability, a plaintiff must show that he suffered a constitutional violation, and the violation resulted from an identified municipal policy or custom. *Monell*, 436 U.S. at 694-695.

As set forth above, an "official policy or custom" can be shown in several ways: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent it amounts to deliberate indifference to the rights of those who come in contact with the municipal employees. *Dorsett-*

*Felicelli, Inc. v. Cty. of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (citing *Monell*, 436 U.S. at 690-91). "Custom denotes persistent and widespread practices, and thus proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*[.]" *Ahern v. City of Syracuse*, 411 F. Supp. 2d 132, 139 (N.D.N.Y. 2006) (punctuation and citation omitted); *see, e.g.*, *Nielsen v. City of Rochester*, 58 F. Supp. 3d 268, 277 (W.D.N.Y. 2014) (conclusory allegations which merely recite the elements for stating a *Monell* claim are insufficient to state a claim for municipal liability) (citing, *inter alia*, *Genovese v. Town of Southhampton*, 92 F. Supp. 2d 8, 25 (E.D.N.Y. 2013)).

Even liberally construed, Plaintiff does not articulate an independent basis to hold these Defendants liable in his complaint and, instead, has only listed Onondaga County and the City of Syracuse as Defendants in the caption on page 6 of the complaint. Plaintiff essentially complains of a single incident, during which the officers did not act properly. There is no indication that Plaintiff can assert a policy or custom which would support municipality liability based on these facts. Therefore, the Court recommends dismissing the complaint against Onondaga County and the City of Syracuse without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### 4.      Onondaga County Justice Center

Section 1983 provides that an action may be maintained against a "person" who has deprived another of rights under the "Constitution and laws." 42 U.S.C. 1983. A correctional facility or jail "are not 'persons' within the meaning of 1983." *Philips v. Valhalla County Jail*, No. 19-CV-2019 (CS), 2019 WL 1915331, at *1 (S.D.N.Y. Apr. 30, 2019) (collecting cases). Therefore, although Plaintiff listed the Onondaga County Justice Center as a Defendant in the caption on page 6 of the complaint, the Court recommends dismissing the complaint against

Onondaga County Justice Center with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

**5.    Sheriff, Undersheriff, Chief of Custody, Syracuse Police Officers, and Syracuse Police Chief**

Although Plaintiff listed the Sheriff, Undersheriff, Chief of Custody, Syracuse Police Officers, and Syracuse Police Chief as Defendants in the caption on page 6 of the complaint, he has not asserted any allegations in the body of his complaint that these Defendants were personally involved in any alleged wrongdoing.  Under such circumstances, dismissal is warranted under initial review.  *See Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998)); *see also Crown v. Wagenstein*, No. 96-CV-3895, 1998 WL 118169, at *1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York*, 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same).

Further, to the extent Plaintiff has named these Defendants to establish liability based upon *respondent superior*, Plaintiff may not bring such a claim under Section 1983.  *See Hasan v. Onondaga Cty.*, No. 5:18-CV-806 (GLS/ATB), 2018 WL 4055296, at *10 (N.D.N.Y. Aug. 2, 2018), *report-recommendation adopted by* 2018 WL 4054105 (N.D.N.Y. Aug. 24, 2018).  Nor has Plaintiff asserted any claims for supervisor liability under *Colon*.

Therefore, the Court recommends dismissing the complaint against the Sheriff, Undersheriff, Chief of Custody, Syracuse Police Officers, and Syracuse Police Chief without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

## III.    CONCLUSION

For the reasons stated above, the Court finds only Plaintiff's Fourth Amendment excessive force and Fourteenth Amendment deliberate indifference claims against Defendants P. Moore, C. Mahon and K. Kemple survive *sua sponte* review and recommends that the complaint be dismissed in its entirety as against all other Defendants pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

**WHEREFORE**, based on the findings above, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 4) is **GRANTED**;[10] and it is further

**ORDERED** that the Clerk shall amend the docket to add Syracuse Police Officers P. Moore, C. Mahon, and K. Kemple[11] as Defendants; and it is further

**RECOMMENDED** that the complaint (Dkt. No. 1) be **dismissed in its entirety with prejudice** as against **Defendants Syracuse Police Department, Onondaga County Sheriff's Office, and Onondaga County Justice Center** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b); and it is further

**RECOMMENDED** that the complaint (Dkt. No. 1) be **dismissed in its entirety without prejudice** as against **Defendants Onondaga County, City of Syracuse, Sheriff, Undersheriff, Chief of Custody, Syracuse Police Officers, and Syracuse Police Chief** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b); and it is further

---

[10]  Plaintiff should note that although his IFP Application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[11]  Also referred to as "K. Kemble," "K. Kimple," and "K. Kimble."

**RECOMMENDED** that Plaintiff's Fourth Amendment excessive force and Fourteenth Amendment deliberate indifference claims against **Defendants P. Moore, C. Mahon, and K. Kemple survive** *sua sponte* review; and it is further

**RECOMMENDED** that if the District Court adopts this Report-Recommendation, the Clerk be directed to: (1) provide the superintendent of the facility that Plaintiff designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 5) and notify that official that this action has been filed and that Plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915 through periodic withdrawals from his inmate accounts; (2) provide a copy of Plaintiff's authorization form (Dkt. No. 5) to the Financial Deputy of the Clerk's Office; and (3) issue a summons and forward it, along with a copy of the complaint (Dkt. No. 1), to the United States Marshal for service upon Syracuse Police Officers P. Moore, C. Mahon and K. Kemple, and it is further

**RECOMMENDED** that Defendants P. Moore, C. Mahon and K. Kemple be **ORDERED** to file a formal response to Plaintiff's complaint as provided for in the Federal Rules of Civil Procedure subsequent to service of process; and it is further

**ORDERED** that all pleadings, motions, and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket. Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this

action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

      **ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[12]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: December 20, 2019
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[12]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by  mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2008 WL 857528
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Richard AUSTIN, Plaintiff,
v.
Brian PAPPAS, John Does, Yonkers
Police Commissioner Charles C. Coles,
Westchester County, Defendants.

No. 04-CV-7263 (KMK)(LMS).
|
March 31, 2008.

**Attorneys and Law Firms**

Mr. Richard Austin, Stormville, NY, pro se.

Rory Carleton McCormick, Esq., Corporation Counsel, City of Yonkers, Yonkers, NY, for Defendants.

*ORDER ADOPTING REPORT & RECOMMENDATION*

KENNETH M. KARAS, District Judge.

**\*1** Richard Austin ("Plaintiff") filed this suit pursuant to 42 U.S .C. § 1983 ("Section 1983") against Yonkers Police Officer Brian Pappas ("Defendant Pappas"), several John Doe Yonkers Police Officers ("John Doe Defendants"), former Yonkers Police Commissioner Charles C. Cola ("Defendant Cola") (whose name is misspelled in Plaintiff's Complaint as Charles C. Coles), and Westchester County (collectively, "Defendants"), alleging violations of Plaintiff's civil rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, along with various supplemental state law claims.[1] (Compl.¶¶ 17, 19.) Plaintiff alleged that these violations occurred when Defendants failed to protect Plaintiff from Franklyn Kelley, a private individual who physically attacked Plaintiff during the course of Plaintiff's May 16, 2003 arrest. (*Id.* ¶ 10.) Plaintiff alleged that Defendant Pappas and the John Doe Defendants handcuffed him and pinned him to the ground while Franklyn Kelley repeatedly kicked and punched Plaintiff in the face. (*Id.* ("The officers did nothing to protect the plaintiff from this vicious assault, even though plaintiff was helpless and in their custody [.]").) Defendants moved for summary judgment, and this Motion was referred by Judge McMahon to Chief Magistrate Judge Lisa M. Smith for review pursuant to 28 U.S.C. § 636(b)(1). On August 2, 2007, Magistrate Judge Smith issued a thorough Report and Recommendation ("R & R"), concluding that this Court should grant Defendants' Motion for Summary Judgment on the ground that Plaintiff has failed to demonstrate that there exists a genuine issue of material fact as to whether his constitutional rights were violated. Plaintiff was advised of his right to file objections to the R & R, but he did not do so.

[1]    On August 8, 2005, Plaintiff's claim against Westchester County was dismissed by the Honorable Gerald E. Lynch, to whom this case was initially assigned. On February 28, 2006, the case was transferred to White Plains and reassigned to Judge Colleen McMahon. The case was reassigned to the undersigned on August 6, 2007.

A district court reviewing a report and recommendation " 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.' " *Donahue v. Global Home Loans & Fin., Inc.,* No. 05-CV-8362, 2007 WL 831816, at \*1 (S.D.N.Y. Mar. 15, 2007) (quoting 28 U.S.C. § 636(b)(1)(C)). Under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, parties may submit objections to a magistrate judge's report and recommendation. The objections must be "specific" and "written," and must be made "within 10 days after being served with a copy of the recommended disposition." Fed.R.Civ.P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

Where a party does not submit an objection, " 'a district court need only satisfy itself that there is no clear error on the face of the record.' " *Donahue,* 2007 WL 831816, at \*1 (quoting *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985)). In addition, a party's failure to object waives that party's right to challenge the report and recommendation on appeal. *See Fed. Deposit Ins. Corp. v. Hillcrest Assocs.,* 66 F.3d 566, 569 (2d Cir.1995) ("Our rule is that 'failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.' " (quoting *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989))).

**\*2** Here, Plaintiff has not filed objections to the R & R. Accordingly, the Court has reviewed the R & R for clear error only. In so doing, the Court adopts the conclusion reached in the R & R that Defendants' Motion for Summary Judgment should be granted, but the Court does so in part on different grounds than those relied on in the R & R.

First, the Court agrees with Magistrate Judge Smith that Defendants' noncompliance with Local Civil Rule 56.2 should be overlooked because any prejudice resulting from noncompliance was cured by the following: (i) Magistrate Judge Smith advised Plaintiff of the nature of summary judgment during a March 23, 2007 conference; and (ii) Magistrate Judge Smith annexed a Rule 56.2 notice to the R & R, a document to which Plaintiff was free to file objections. See Narumanchi v. Foster, No. 02-CV-6553, 2006 WL 2844184, at *2 (E.D.N.Y. Sept. 29, 2006) (refusing to deny defendant's motion for summary judgment based on failure of defendant to comply with Local Civil Rule 56.2 because "[a]ny prejudice to pro se plaintiffs [was] cured" by court's actions).

As expressed in the R & R, though Plaintiff did not file any opposition to Defendants' Motion for Summary Judgment, Defendants were still required to meet their burden of demonstrating to the Court that "no material issue of fact remains for trial." See Amaker v. Foley, 274 F.3d 677, 681 (2d Cir.2001). The Court finds no clear error in Magistrate Judge Smith's determination that Defendants satisfied this burden.

With respect to Defendants Pappas and Cola, the Court finds that Plaintiff has failed to offer any evidence demonstrating that they were personally involved in the alleged violation of Plaintiff's constitutional rights. The " 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir.2004) (quoting McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir.1977)). For purposes of Section 1983 liability, personal involvement can be established by evidence that:

> '(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ...

> by failing to act on information indicating that unconstitutional acts were occurring.'

Id. at 127 (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir.1995)); accord Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir.2003); Schiller v. City of New York, No. 04-CV-7922, 2008 WL 200021, at *4 (S.D.N.Y. Jan. 23, 2008); Fair v. Weiburg, No. 02-CV-9218, 2006 WL 2801999, at *4 (S.D.N.Y. Sept. 28, 2006). Further, a Section 1983 plaintiff must "allege a tangible connection between the acts of the defendant and the injuries suffered." Bass v. Jackson, 790 F.2d 260, 263 (2d Cir.1986); see also Fair, 2006 WL 2801999, at *4 (citing Bass ).

*3 In support of their Motion for Summary Judgment, Defendants submitted evidence that Defendant Pappas did not directly participate in the arrest of Plaintiff, but he instead arrested Plaintiff's accomplice. For example, on April 8, 2004, at a hearing before the Honorable Richard A. Molea of the Westchester County Court, Defendant Pappas testified that he remained with Plaintiff's accomplice while other officers arrested Plaintiff. (Defs.' Affirmation in Supp., Ex. J, 50-51.) Further, in response to interrogatories served on him by Plaintiff, Defendant Pappas stated that he "did not observe what transpired during the course of plaintiff's arrest." (Id., Ex. L.) Finally, Defendants offer a police report indicating that "Pappas was detaining [Plaintiff's accomplice] in the garage area, as additional units arrived and placed [Plaintiff] into custody." (Id., Ex. C.)

Plaintiff has failed to offer any evidence refuting Defendant Pappas' version of events. In other words, Plaintiff has offered no evidence demonstrating that Defendant Pappas was actually one of the officers who arrested him and allegedly pinned him to the ground while Kelley assaulted him. In fact, during his deposition testimony, Plaintiff admitted that he was not sure whether Defendant Pappas was one of the police officers who arrested him, and that the reason Defendant Pappas was named as a defendant in the present suit was because Plaintiff had seen his name on Plaintiff's felony complaint. (Id., Ex. G, 32-35.) As such, the unrefuted evidence before the Court demonstrates that Defendant Pappas was not one of the officers directly involved in Plaintiff's arrest. Plaintiff therefore has failed to satisfy a prerequisite to liability under Section 1983-namely that Defendant Pappas had personal involvement in the alleged violation of Plaintiff's constitutional rights.

*See Back,* 365 F.3d at 122. Thus, Plaintiff's claim against Defendant Pappas must be dismissed.

Plaintiff alleged that Defendant Cola, Yonkers Police Commissioner at the time of Plaintiff's 2003 arrest, violated Plaintiff's constitutional rights by "authoriz[ing], tolerat[ing], as institutionalized practices, and ratif[ying] the misconduct [of Defendant Pappas and John Doe Defendants]." (Compl.¶ 14.) More specifically, Plaintiff charges Defendant Cola with failure to properly: (1) discipline subordinate officers; (2) take adequate precautions in hiring subordinate officers; (3) report criminal acts by police personnel to the Westchester County District Attorney; and (4) establish a system for dealing with complaints about police misconduct. (*Id.*) Plaintiff does not assert that Defendant Cola directly participated in the violation of his constitutional rights; instead, Plaintiff urges the Court to find Defendant Cola liable under Section 1983 based on his role as supervisor of Defendant Pappas and the John Doe Defendants.

"It is well settled, however, that the doctrine of respondeat superior standing alone does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity." *See Hayut,* 352 F.3d at 753 (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978)). Instead, it is necessary to establish a supervisory official's personal involvement in the alleged constitutional violation. *See id.; Fair,* 2006 WL 2801999, at *4.

**\*4** Plaintiff has failed to provide the Court with any evidence from which a reasonable jury could conclude that Defendant Cola was personally involved in the alleged violation of Plaintiff's constitutional rights. Plaintiff has offered no evidence demonstrating that Defendant Cola was aware of and failed to remedy constitutional violations by subordinate officers, or that he acted in a grossly negligent or deliberately indifferent manner in supervising or training subordinate officers. There is also no evidence in the record to support a theory that Defendant Cola created a policy or custom that fostered and led to the alleged violation of Plaintiff's rights. *See Hayut,* 352 F.3d at 754 (finding as fatal to plaintiff's Section 1983 claim the fact that there existed "no evidence that, after becoming aware of the alleged harassment, any of the [supervisory officials] failed to respond or remedy the situation, that any of these [supervisory officials] created or allowed a policy to continue under which alleged harassment could occur, or that they were grossly negligent in monitoring [the alleged harasser's] conduct"); *Harris v. City of New York,* No. 01-CV-6927, 2003 WL

554745, at *6 (S.D.N.Y. Feb. 26, 2003) ("[P]laintiff has put forth no evidence pointing to defendant ['s] personal involvement in plaintiff's alleged deprivation of rights .... Plaintiff's conclusory allegations regarding defendant['s] alleged supervisory role, without more, cannot withstand summary judgment."). Further, nothing in the record, even drawing all inferences in Plaintiff's favor, suggests any tangible connection between Defendant Cola's training or supervision of subordinate officers and the alleged violation of Plaintiff's rights. In fact, the record contains no evidence with regard to Defendant Cola whatsoever. Without such evidence, no reasonable jury could conclude that Defendant Cola had personal involvement in the alleged violation of Plaintiff's constitutional rights, which means that Plaintiff has failed to satisfy a prerequisite to Section 1983 liability, and therefore that Defendant Cola is entitled to summary judgment in his favor. *See Davis v. Kelly,* 160 F.3d 917, 921 (2d Cir.1998) ("After an opportunity for discovery, undisputed allegations that [a] supervisor lacked personal involvement will ultimately suffice to dismiss that official from the case.").

In sum, the Court finds that Plaintiff has failed to establish the personal involvement of Defendants Pappas and Cola in the alleged violation of his rights. For reasons set forth more fully in the R & R, the Court also dismisses the Complaint as to the John Doe Defendants because Plaintiff's time limit to amend the Complaint in order to substitute in named defendants has lapsed. Therefore, the Court finds it unnecessary to reach the question of whether Plaintiff has adequately established an underlying violation of his constitutional rights. Finally, having determined that no cognizable federal claims exist, the Court will follow Magistrate Judge Smith's recommendation in declining to exercise jurisdiction over the state law claims.

**\*5** Accordingly, it is hereby:

ORDERED that the Report and Recommendation dated August 2, 2007, is ADOPTED on the grounds set forth in this Order; and it is further

ORDERED that Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 is GRANTED.

The Clerk of Court is respectfully directed to enter judgment in favor of Defendants, to terminate Defendant's Motion (Dkt. No. 28), and to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 857528

---

    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

---

**WESTLAW**    © 2019 Thomson Reuters. No claim to original U.S. Government Works.    4

326 F.Supp.3d 1
United States District Court, E.D. New York.

Robert BOSTON, Plaintiff,

v.

SUFFOLK COUNTY, NEW YORK, Suffolk County
Police Department, Town of Smithtown, New
York, Town of Smithtown Park Police, Suffolk
County Police Officers John Doe #1 to John
Doe #5, Town of Smithtown Department of
Public Safety Personnel and/or Park Rangers
John Doe #1 to John Doe #5, Defendants.

14-cv-5791 (ADS) (AKT)
|
Signed 01/09/2018

**Synopsis**

**Background:** Arrestee brought civil rights action against
various defendants, including town and county, alleging
deprivation of his Fourteenth Amendment rights in violation
of § 1983, arising from drug induced seizure arrestee
sustained after he was taken into custody by law enforcement
officers after a suicide attempt. Arrestee moved to amend his
complaint and defendants moved for summary judgment.

**Holdings:** The District Court, Spatt, J., held that:

[1] arrestee was not entitled to amend his complaint;

[2] arrestee's amended complaint did not relate back to his
original complaint under New York law;

[3] genuine issues of material fact existed regarding whether
arrestee suffered a serious medical deprivation, precluding
summary judgment on failure to train *Monell* claim;

[4] genuine issue of material fact existed regarding whether
park rangers and desk officer recklessly failed to act
with reasonable care to mitigate risk, precluding summary
judgment on failure to train *Monell* claim; and

[5] genuine issue of material fact existed as to whether
arrestee's injuries were caused by failure of county and town
to train officers, precluding summary judgment on failure to
train *Monell* claim.

Arrestee's motion denied, defendants' motion granted in part
and denied in part.

West Headnotes (42)

[1]  **Limitation of Actions**
      Intervention or bringing in new parties

     An amended complaint that adds a new party
     must meet the following criteria to relate back:
     (1) the claim must have arisen out of conduct
     set out in the original pleading; (2) the party to
     be brought in must have received such notice
     that it will not be prejudiced in maintaining its
     defense; (3) that party should have known that,
     but for a mistake of identity, the original action
     would have been brought against it; and (4)
     the second and third criteria are fulfilled within
     120 days of the filing of the original complaint,
     and the original complaint was filed within the
     limitations period. Fed. R. Civ. P. 15(c)(1)(C).

     1 Cases that cite this headnote

[2]  **Limitation of Actions**
      Amendment of defects

     "John Doe" pleadings cannot be used to
     circumvent statutes of limitations because
     replacing a "John Doe" with a named party in
     effect constitutes a change in the party sued.

[3]  **Limitation of Actions**
      Amendment of defects

     Amendment to civil rights complaint substituting
     certain law enforcement officers for John Doe
     defendants was not result of mistake concerning
     identity of proper defendants, and thus did not
     relate back to original complaint, where plaintiff
     was ignorant of the identities of the John Doe
     defendants. Fed. R. Civ. P. 15(c)(1)(C).

[4]  **Federal Civil Procedure**
      Amendments

Plaintiff in civil rights action did not supply a proposed amended complaint and did not mention once in his motion to amend complaint which officers he sought to substitute for the John Does, and thus plaintiff was not entitled to amend his complaint, where it was not clear whether plaintiff sought to substitute certain law enforcement officers in their individual capacities, their official capacities, or both. Fed. R. Civ. P. 15.

**[5]  Federal Civil Procedure**
    🔑 Requisites of motion

The district court may grant a motion to amend a pleading based solely on the moving papers where the papers adequately explain the basis for, and nature of, the proposed amendment. Fed. R. Civ. P. 15.

**[6]  Limitation of Actions**
    🔑 Amendment of Pleadings

The Rule governing amendment of pleadings does not apply to preclude any relation back that may be permitted under the applicable limitations law. Fed. R. Civ. P. 15.

**[7]  Limitation of Actions**
    🔑 Amendment of Pleadings

The Rule governing the relation back of amended pleadings instructs courts to look to the entire body of limitations law that provides the applicable statute of limitations. Fed. R. Civ. P. 15(c)(1)(A).

**[8]  Limitation of Actions**
    🔑 Amendment of defects

**Parties**
    🔑 Description

Under the New York statute allowing a party to proceed against an unknown party, a court may allow a plaintiff to substitute a named party for a John Doe party if the plaintiff meets two requirements: (1) exercise due diligence,

prior to the running of the statute of limitations, to identify the defendant by name; and (2) describe the John Doe party in such form as will fairly apprise the party that he is the intended defendant. N.Y. CPLR § 1024.

**[9]  Parties**
    🔑 Designation by fictitious names

**Process**
    🔑 Time for service

Under the New York statute allowing a party to proceed against an unknown party, a plaintiff must ascertain the identity of unknown Jane Doe parties, and serve process upon them, within 120 days from filing. N.Y. CPLR § 1024.

**[10]  Federal Civil Procedure**
    🔑 Identity and location of witnesses and others

**Records**
    🔑 Judicial enforcement in general

To identify unknown parties after filing, under the New York statute allowing a party to proceed against an unknown party, a plaintiff is advised to serve discovery demands upon any known parties, seek disclosures pursuant to a Freedom of Information Law (FOIL) request, or otherwise act with diligence. N.Y. CPLR § 1024.

**[11]  Civil Rights**
    🔑 Time to Sue

In New York, the statute of limitations for claims brought pursuant to § 1983 is three years. 42 U.S.C.A. § 1983.

**[12]  Limitation of Actions**
    🔑 Amendment of defects

Arrestee, in civil rights action under § 1983, did not exercise due diligence prior to the running of the statute of limitations to identify defendant law enforcement officers by name, and thus arrestee's amended complaint substituting certain law enforcement officers for John Doe

defendants did not relate back to his original complaint, under New York statute allowing a party to proceed against an unknown party, in order to satisfy the three-year limitations period, where defendants provided arrestee with the names of the officers involved in his arrest prior to the expiration of the statute of limitations and close of discovery, yet arrestee did not attempt to amend the complaint to add any individual officers prior to the expiration of the statute of limitations. 42 U.S.C.A. § 1983; N.Y. CPLR § 1024; Fed. R. Civ. P. 15.

**[13]    Limitation of Actions**
      Amendment of defects

One pitfall of the New York statute allowing a party to proceed against an unknown party is that parties are not to resort to the "Jane Doe" procedure unless they exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name and, despite such efforts, are unable to do so. N.Y. CPLR § 1024.

**[14]    Federal Civil Procedure**
      Ascertaining existence of fact issue

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge on a motion for summary judgment. Fed. R. Civ. P. 56(a).

**[15]    Civil Rights**
      Nature and elements of civil actions

To state a § 1983 claim, a plaintiff must allege: (1) that the challenged conduct was committed by a person acting under color of state law; and (2) that such conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C.A. § 1983.

**[16]    Civil Rights**
      Substantive or procedural rights

Section 1983 does not create any independent substantive right, but rather is a vehicle to redress the deprivation of federal rights established elsewhere. 42 U.S.C.A. § 1983.

**[17]    Civil Rights**
      Acts of officers and employees in general; vicarious liability and respondeat superior in general

A municipality cannot be held liable under § 1983 on a respondeat superior theory. 42 U.S.C.A. § 1983.

**[18]    Civil Rights**
      Governmental Ordinance, Policy, Practice, or Custom

Section 1983 extends liability to a municipal organization where the policies or customs it has sanctioned led to an independent constitutional violation. 42 U.S.C.A. § 1983.

**[19]    Civil Rights**
      Lack of Control, Training, or Supervision; Knowledge and Inaction

Municipal liability under § 1983 may be premised on a failure to train employees when inadequate training reflects deliberate indifference to constitutional rights. 42 U.S.C.A. § 1983.

**[20]    Civil Rights**
      Governmental Ordinance, Policy, Practice, or Custom

To prevail on a § 1983 claim against a municipality, a plaintiff must show that action pursuant to official municipal policy caused the alleged constitutional injury. 42 U.S.C.A. § 1983.

1 Cases that cite this headnote

**[21]    Civil Rights**

👉 Governmental Ordinance, Policy, Practice, or Custom

**Civil Rights**

👉 Lack of Control, Training, or Supervision; Knowledge and Inaction

A plaintiff can establish the existence of a municipal policy or custom, for purposes of a claim under § 1983 against a municipality, by showing existence of: (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision-making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge and acquiescence can be implied on the part of the policy making officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with the municipal employees. 42 U.S.C.A. § 1983.

1 Cases that cite this headnote

**[22]** **Civil Rights**

👉 Lack of Control, Training, or Supervision; Knowledge and Inaction

A municipality's culpability under § 1983 for a deprivation of rights is at its most tenuous where a claim turns on a failure to train; only where a plaintiff can demonstrate that a municipality's failure to train amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact will a policy or custom actionable under § 1983 be established. 42 U.S.C.A. § 1983.

**[23]** **Civil Rights**

👉 Lack of Control, Training, or Supervision; Knowledge and Inaction

"Deliberate indifference" to the constitutional rights of those with whom municipal employees will come into contact, for purposes of a failure to train claim against municipality under § 1983, is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or

obvious consequence of his action. 42 U.S.C.A. § 1983.

**[24]** **Civil Rights**

👉 Lack of Control, Training, or Supervision; Knowledge and Inaction

To establish deliberate indifference to the constitutional rights of those with whom municipal employees will come into contact, for purposes of a failure to train claim against municipality under § 1983, a plaintiff must demonstrate that: (1) a policymaker knows to a moral certainty that her employees will confront a given situation; (2) the situation either presents the employee with a difficult choice of the sort that training will make less difficult or there is a history of employees mishandling the situation; and (3) the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. 42 U.S.C.A. § 1983.

**[25]** **Civil Rights**

👉 Lack of Control, Training, or Supervision; Knowledge and Inaction

Demonstration of deliberate indifference to the constitutional rights of those with whom municipal employees will come into contact, for purposes of a failure to train claim against municipality under § 1983, requires a showing that the official made a conscious choice, and was not merely negligent. 42 U.S.C.A. § 1983.

**[26]** **Civil Rights**

👉 Lack of Control, Training, or Supervision; Knowledge and Inaction

Where a city has a training program, a plaintiff, for purposes of a failure to train claim against municipality under § 1983, must identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation. 42 U.S.C.A. § 1983.

**[27]**   **Civil Rights**
👉 Lack of Control, Training, or Supervision; Knowledge and Inaction

The plaintiff, for purposes of a failure to train claim against a municipality under § 1983, must offer evidence to support the conclusion that the training program was inadequate, not that a particular officer may be unsatisfactorily trained or that an otherwise sound program has occasionally been negligently administered, and that a hypothetically well-trained officer would have avoided the constitutional violation. 42 U.S.C.A. § 1983.

**[28]**   **Civil Rights**
👉 Lack of Control, Training, or Supervision; Knowledge and Inaction

A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train claim against municipality under § 1983; this is because without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. 42 U.S.C.A. § 1983.

**[29]**   **Civil Rights**
👉 Lack of Control, Training, or Supervision; Knowledge and Inaction

Under the single-incident theory, a municipality can be found to be deliberately indifferent based on a single constitutional violation where the unconstitutional consequences of failing to train are so patently obvious that a city should be liable under § 1983 for failure to train without proof of a pre-existing pattern of violations. 42 U.S.C.A. § 1983.

**[30]**   **Civil Rights**
👉 Lack of Control, Training, or Supervision; Knowledge and Inaction

Under the single-incident theory, for purposes of a failure to train claim against a municipality under § 1983, violation of constitutional rights must be a highly predictable consequence of the failure to train. 42 U.S.C.A. § 1983.

**[31]**   **Civil Rights**
👉 Lack of Control, Training, or Supervision; Knowledge and Inaction

Deliberate indifference, for purposes of a failure to train claim against a municipality pursuant to § 1983 under the single-incident theory, may be inferred where the need for more or better supervision to protect against constitutional violations was obvious, but the policymaker failed to make meaningful efforts to address the risk of harm to plaintiffs. 42 U.S.C.A. § 1983.

**[32]**   **Constitutional Law**
👉 Medical treatment

**Sentencing and Punishment**
👉 Medical care and treatment

Where a pretrial detainee in a civil rights action was allegedly deprived of medical care, courts construe the rights seeking to be vindicated as arising under either the Eighth Amendment prohibition against cruel and unusual punishment, or the Fourteenth Amendment's Due Process Clause. U.S. Const. Amends. 8, 14.

**[33]**   **Sentencing and Punishment**
👉 Necessity of criminal conviction

Eighth Amendment scrutiny, in a civil rights claim alleging deprivation of medical care, is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions; the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. U.S. Const. Amend. 8.

**[34]** **Constitutional Law**
  🔑 Conditions

**Sentencing and Punishment**
  🔑 Necessity of criminal conviction

A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment. U.S. Const. Amends. 8, 14.

**[35]** **Constitutional Law**
  🔑 Medical treatment

A pretrial detainee alleging deliberate indifference to medical needs under the Due Process Clause must satisfy two prongs: (1) an objective prong showing that the alleged deprivation was sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain, existed; and (2) a mens rea prong, or mental element prong, showing that the officer acted with at least deliberate indifference to the challenged conditions. U.S. Const. Amend. 14.

3 Cases that cite this headnote

**[36]** **Constitutional Law**
  🔑 Medical treatment

The mens rea prong of a deliberate indifference to medical needs claim brought by a pretrial detainee under the Due Process Clause is to be assessed objectively. U.S. Const. Amend. 14.

2 Cases that cite this headnote

**[37]** **Municipal Corporations**
  🔑 Capacity to sue or be sued in general

Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued.

**[38]** **Federal Civil Procedure**
  🔑 Civil rights cases in general

Genuine issues of material fact existed regarding whether arrestee, who was found sleeping in his car in the park by town park rangers to whom he admitted taking drugs, and then taken to county jail where he was interviewed by desk officer, suffered a serious medical deprivation by their failure to obtain medical attention for him before he suffered a drug-induced seizure, precluding summary judgment on arrestee's § 1983 failure to train *Monell* claim against town and county alleging deprivation of medical care in violation of due process. U.S. Const. Amend. 14; 42 U.S.C.A. § 1983.

**[39]** **Arrest**
  🔑 Custody and Disposition of Prisoner

**Prisons**
  🔑 Health and Medical Care

The Constitution does not require an arresting police officer or jail official to seek medical attention for every arrestee or inmate who appears to be affected by drugs or alcohol.

**[40]** **Constitutional Law**
  🔑 Medical treatment

In applying the mens rea prong of a claim alleging deliberate indifference to medical needs under the Fourteenth Amendment Due Process Clause, the court is called upon to determine, without the benefit of medical expertise, whether an objectively reasonable person in defendants' position would have known, or should have known, that defendants' actions or omissions posed an excessive risk of harm to the plaintiff. U.S. Const. Amend. 14.

2 Cases that cite this headnote

**[41]** **Federal Civil Procedure**
  🔑 Civil rights cases in general

Genuine issue of material fact existed regarding whether park rangers, who found arrestee sleeping in his car in the park, and desk officer at county jail where he was subsequently taken, recklessly failed to act with reasonable care

to mitigate risk to arrestee in light of their knowledge that arrestee had taken large amount of drugs, precluding summary judgment on arrestee's § 1983 failure to train *Monell* claim against town and county alleging deprivation of medical care in violation of due process, based on his drug-induced seizure. U.S. Const. Amend. 14; 42 U.S.C.A. § 1983.

**[42]** **Federal Civil Procedure**
👉 Civil rights cases in general

Genuine issue of material fact existed as to whether arrestee's injuries, which resulted from drug-induced seizure, were caused by failure of county and town to train their law enforcement officers on the effects of drugs on individuals or how to interact with arrestees in medical distress, precluding summary judgment on arrestee's § 1983 failure to train *Monell* claim against town and county alleging deprivation of medical care in violation of due process. U.S. Const. Amend. 14; 42 U.S.C.A. § 1983.

**Attorneys and Law Firms**

**\*6** Brill Legal Group, P.C., Attorneys for the Plaintiff, 233 Broadway, Suite 2340, New York, NY 10279, By: Peter E. Brill, Esq., Joseph P. Griffin, Esq., Of Counsel

Suffolk County Department of Law, Corporation Counsel for the Defendants Suffolk County, New York and Suffolk County Police Department, H. Lee Dennison Building, 100 Veterans Memorial Highway, PO Box 6100, Hauppauge, NY 11788, By: Kyle O Wood, Assistant Corporation Counsel, Susan A. Flynn, Assistant Corporation Counsel

Law Office of Stanley E. Orzechowski P.C., Attorney for the Defendants Town of Smithton, New York and Town of Smithtown Park Police, 38 Southern Boulevard, Nesconset, NY 11767, By: Stanley E. Orzechowski, Esq., Of Counsel

**MEMORANDUM OF DECISION & ORDER**

SPATT, District Judge:

**\*\*1** The Plaintiff Robert Boston (the "Plaintiff") brought this civil rights action against the Defendants Suffolk County, New York (the "County" or "Suffolk"), Suffolk County Police Department (the "SCPD") (with the County, the "Suffolk Defendants"), Town Of Smithtown, New York (the "Town" or "Smithtown"), Town Of Smithtown Park Police ("TSPP") (with Smithtown, the "Smithtown Defendants"), Suffolk County Police Officers John Doe # 1 To John Doe # 5, Town Of Smithtown Department Of Public Safety Personnel **\*7** and/or Park Rangers John Doe # 1 To John Doe # 5 (together with the SCPD John Does 1 through 5, the "John Doe defendants") (collectively, the "Defendants") alleging that they deprived him of his constitutional rights by failing to provide him with medical care while in their custody.

Presently before the Court are motions by the Suffolk Defendants and the Smithtown Defendants for summary judgment pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 56, as well as a motion by the Plaintiff to amend his complaint pursuant to Rule 15 to substitute certain police officers and rangers for the John Doe defendants.

For the following reasons, the Plaintiff's motion to amend pursuant to Rule 15 is denied, and the Defendants' motions for summary judgment are granted in part, and denied in part.

**I. BACKGROUND**

**A. The Relevant Facts**
On the afternoon of July 4, 2013, the Plaintiff left his home after having a dispute with his wife. He brought nine tablets of Valium and 35 tablets of Wellbutrin with him. The Plaintiff testified that he does not remember where he went, but that he drove past his wife at some point, and ended up in Bill Richards Memorial Park in Smithtown, New York. (Dep. of Robert Boston at 47–48). While at the park, he smoked some marijuana, and swallowed nine Valium pills and an unknown quantity of Wellbutrin. He wanted to kill himself. The next thing that the Plaintiff remembers is being asked to sign a desk appearance ticket at a police station on July 5, 2013.

At about 10:19 in the morning on July 5, 2013, Town of Smithtown Park Rangers Russell Sokol ("Ranger Sokol" or "Sokol") and Joseph Paterson ("Ranger Paterson" or "Paterson") received a radio report of an individual who was on the premises without authorization. Paterson testified that

there was a radio call for a suspicion person around a vehicle, who was possibly intoxicated. (Dep. of Sokol at 35).

Paterson and Sokol encountered the Plaintiff at about 10:50 a.m. The Plaintiff "appeared to be ... sleeping." (*Id.* at 37). The rangers awakened the Plaintiff and asked him for identification. The Plaintiff refused. He told the officers that he did not want to come out of the car because he believed they were going to arrest him. (*Id.* at 39). Ranger Paterson testified that the Plaintiff said that he wanted to be left alone so that he could sleep. (Dep. of Paterson at 36).

The rangers eventually convinced the Plaintiff to exit his car, and he did so without any aid from the rangers. (Dep. of Sokol at 40–41). He said that he did not know why the rangers were bothering him; he was just sleeping and did not see any problem. (Dep. of Paterson at 37). The Plaintiff cursed at the rangers and used other abusive and offensive language. (Dep. of Sokol at 45–46). The Plaintiff identified himself and the rangers took down his information. (*Id.* at 47).

 **\*\*2**  The Plaintiff was a little unsteady on his feet, but was coherent and able to answer the officers' questions. He told the rangers that he had taken two tabs of acid and nine Diazepam pills, and that he had smoked a little weed. Rangers Sokol and Paterson had the Plaintiff sit down and asked him if he needed any medical attention or if he wanted to go to the hospital. The Plaintiff said no. (*Id.* at 43). Ranger Paterson asked him a series of question to assess his well-being: he asked him the name of the current president; what the weather was that day; what was the day of the week; and the current date. (Dep. of Paterson at 38).  **\*8**  Paterson testified that he "got responses that were exactly what [he] had asked. There was no waivering [sic]. There was nothing that arose suspicion. It just seemed like he was just very tired." (Dep. of Paterson at 39).

The rangers observed several pills lying on the passenger floor, and the Plaintiff told them that he also had weed. Rangers Sokol and Paterson recovered a quantity of marijuana from the Plaintiff's person. Paterson observed some dried vomit on the passenger seat of the Plaintiff's car. (*Id.* at 49). The Plaintiff later supported this point by testifying that he had to clean vomit out of his car.

The Plaintiff was placed under arrest. The Plaintiff was arrested for possession of marijuana; possession of a controlled substance; remaining upon Town Park Property while under the influence of non-prescription controlled

substances; use of loud, abusive and indecent language on park property; and failure to show identification upon request.

Rangers Sokol and Paterson transported the Plaintiff to the Suffolk County Police Fourth Precinct (the "Fourth Precinct") for processing. While he was transporting the Plaintiff, Ranger Paterson explained the process at the precinct, and the Plaintiff seemed coherent. (Dep. of Paterson at 50).

At 10:55 a.m., the Plaintiff arrived at the Fourth Precinct. The Plaintiff walked into the precinct without any assistance. The desk sergeant asked the Plaintiff a series of questions: whether he needed medical attention; whether he was okay; whether he was taking any medication; and what was his pedigree information. The Plaintiff answered all of these questions, and stated that he did not need medical attention.

Sergeant Thomas Healy ("Sergeant Healy" or "Healy") of the SCPD was the desk officer at that time. He testified that he had no independent recollection of interacting with the Plaintiff. However, on the Prisoner Activity Log, Healy wrote "No" in the section that asks whether the "prisoner claims pain, injury or illness." (Prisoner Activity Log, Suffolk Defs. Ex. J). Healy also noted that the Plaintiff was unsteady on his feet, lethargic, and spoke with slurred speech.

Healy did not recall a prisoner ever failing to give a response to his questioning concerning injury or illness. He does not remember the Plaintiff ever making any statements about attempting to take his life; and testified that he would have noted such statements if they had been made, and would have sent the prisoner to the hospital. Healy testified that if a prisoner asks for medical attention, the officer to whom the request was made would bring that request to the desk sergeant's attention. While he has no independent recollection, Healy testified that the records reflect that the Plaintiff did not request medical attention while housed at the Fourth Precinct. Although Healy does not remember it, Ranger Paterson testified that he told him that the Plaintiff claimed to have ingested nine diazepam and two tabs of acid. (Paterson Dep. at 60).

The prisoner activity log shows that the Plaintiff was in custody at the Fourth Precinct from 10:55 a.m. until 3:20 p.m. The officers noted in the activity log that the Plaintiff was calm the entire time. At three different times, he took drinks of water. At 12:03 p.m., Ranger Paterson remarked on the log that the Plaintiff was "cooperative." At 3:20 p.m., the Plaintiff signed a desk appearance ticket. The Plaintiff testified that

he remembered signing the desk appearance ticket. (Dep. of Robert Boston at 63–66).

 **\*\*3**  After issuing the Plaintiff a desk appearance ticket, Ranger Paterson sought to  **\*9**  bring the Plaintiff home. He did not want the Plaintiff to drive because he was very tired, but he did not want him housed overnight at another precinct because the Plaintiff had been cooperative. (Dep. of Paterson at 71). The Plaintiff had provided the officers with his home phone number, but he had told them that no one was home. Paterson asked the Plaintiff if he would rather go to a jail cell or go home and get some sleep. The Plaintiff told Paterson that he wanted to go home; specifically, he said he was tired and wanted to go to bed. (Dep. of Paterson at 75).

While he was at the Fourth Precinct, the Plaintiff never requested medical attention; never complained of any injury or illness; and never disclosed that he had attempted suicide.

Ranger Paterson drove the Plaintiff home, and Ranger Sokol followed in a separate car. Paterson parked in the driveway. He asked the Plaintiff whose cars were in the driveway, and the Plaintiff told him that the two cars belonged to him and his wife. The Plaintiff further stated that he had thought his wife was still at work, and asked Ranger Paterson to go speak with her if she was home. The Plaintiff remained in the car. The car was running, the air conditioning was on, and the windows were cracked. (Dep. of Sokol at 92).

Ranger Paterson spoke to the Plaintiff's wife, Joann Boston. He explained to her what happened, and she said that she would not let him into the house. The Plaintiff's daughter, Kayla Boston, ran out of the house to where her father was, and yelled at him, saying that she hated him. The car door was open, and she pulled it open more to yell at him. Ranger Sokol came around to prevent Kayla Boston from opening the door all the way. Kayla Boston testified by deposition that her father did not respond. She said that "he wasn't [her] dad at that moment. He was looking at [her], but like he was looking through [her] [ ] like [she] was a stranger ...." (Dep. of Kayla Boston at 92). She ran back inside. She testified that she did not know if he was in need of medical attention or in distress at that point. (*Id.* at 160).

About that time Joann Boston walked outside, and saw the Plaintiff in the car. She went to tell him that his mother was coming to get him. Joann Boston testified that the Plaintiff:

was sitting in the back [of the car] and he was tipped over[,] and his eyes were like blank. They looked like dead eyes. They weren't his eyes. And he seemed pale and sweaty. And he was tipped over. And I tried to talk to him. I said, are you okay? And I couldn't get him – he wouldn't even respond to me. So I said to the officer – I said, he doesn't need to sleep it off under the tree, he needs an ambulance, he needs to go to the hospital. And he said, well you can call 911 if you want.

(Dep. of Joann Boston at 92). She went inside and called 911. The Plaintiff suffered a seizure at that point. An ambulance arrived and took the Plaintiff to St. Catherine's Hospital. The Plaintiff was in a coma for six days. He has been diagnosed with post-traumatic stress disorder; has lost most of his sense of smell; has lost many fine motor senses; and does not see as well as he used to.

Prior to these events, the Plaintiff had never suffered a drug induced seizure despite having taken many drugs over the course of many years.

Relevant here, the officers also testified as to their respective training. Ranger Sokol testified that he had never received any training in the signs and symptoms of narcotic use, (Sokol Dep. at 23), and that there are no specific regulations as to how  **\*10**  to deal with someone in medical distress, (*id.* at 28). Ranger Paterson testified that he did not receive any training with regard to the use of drugs, (Paterson Dep. at 16–17), the identification of drugs, (*id.*), or how to interact with arrestees, (*id.* at 20–21). He testified, however, that he was trained in the administration of Narcan, (*id.* at 17), which is a medication that blocks the effects of opioids, especially in overdose. Sergeant Healy testified that he did not receive any training on how drugs might affect people. (Dep. of Healy at 18).

**B. The Relevant Procedural Background**
 **\*\*4**  On October 1, 2013, the Plaintiff served an unverified Notice of Claim on the Town of Smithtown and Suffolk County. On November 8, 2013, the Plaintiff served an

amended verified Notice of Claim on the Town of Smithtown and Suffolk County.

On October 3, 2014, the Plaintiff filed his complaint. The Plaintiff alleges that the Defendants deprived him of his Fourteenth Amendment rights in violation of [42 U.S.C. § 1983](). The 1983 claims are brought against the SCPD, the TSPP, and the John Doe defendants, and the Plaintiff brings *Monell* claims against the County and the Town. The Plaintiff also brings causes of action for negligence against all of the Defendants, and vicarious liability against the County and the Town. The complaint seeks compensatory and punitive damages.

On June 23, 2017, the Suffolk Defendants and the Smithtown Defendants filed their respective motions for summary judgment pursuant to Rule 56.

On August 4, 2017, the Plaintiff filed his motion to amend the complaint pursuant to Rule 15.

## II. DISCUSSION

### A. As to the Plaintiff's Motion to Amend

#### 1. Rule 15(c)(1)(C)

The Plaintiff seeks to amend his complaint pursuant to Rule 15(c)(1)(C) to substitute certain officers for John Doe defendants. The Defendants argue that the statute of limitations has passed, and Rule 15(c)(1)(C) does not permit relation back in this situation where there was no mistake of identity. The Court finds that the Plaintiff cannot avail himself of the provisions of Rule 15(c)(1)(C).

 **[1]**  "Rule 15(c)(1)(C) provides the federal standard for relation back." *Hogan v. Fischer,* [738 F.3d 509, 517 (2d Cir. 2013).]() An amended complaint that adds a new party must meet the following criteria to relate back under Rule 15(c)(1)(C):

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party should have known that, *but for a*

*mistake of identity*, the original action would have been brought against it; and (4) the second and third criteria are fulfilled within 120 days of the filing of the original complaint, and the original complaint was filed within the limitations period.

*Id.* (quoting *Barrow v. Wethersfield Police Dep't,* [66 F.3d 466, 468–69 (2d Cir. 1995)]() (internal alterations omitted, emphasis in original) ). However, the Second Circuit has said that "that the lack of knowledge of a John Doe defendant's name does not constitute a mistake of identity." *Id.* [at 518]() (internal citations and quotation marks omitted).

 **[2]**  " 'John Doe' pleadings cannot be used to circumvent statutes of limitations **\*11** because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." *Barrow,* [66 F.3d at 468]().

 **[3]**  Therefore, because the Second Circuit has explicitly held that "lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity,' " *Hogan,* [738 F.3d at 517,]() the Plaintiff cannot avail himself of Rule 15(c)(1)(C). *See Parker v. New York State Div. of Parole*, No. 04-CV-03901, [2017 WL 3600420, at \*4 (S.D.N.Y. Aug. 18, 2017)]() ("Because Rule 15(c)(1)(C) cannot be used to save claims that are untimely due to a lack of knowledge, plaintiff's claims against Cieslak and DiBenedetto do not relate back to his original complaint under the federal relation back doctrine."); *Doe v. New York*, [97 F.Supp.3d 5, 18 (E.D.N.Y. 2015)]() (finding that the plaintiff could not avail himself of Rule 15(c)(1)(C) where he had brought claims against John Doe defendants because "lack of knowledge of a John Doe defendant's name does not constitute a mistake of identity" (quoting *Hogan,* [738 F.3d at 517]() ); *Ceara v. Deacon,* [68 F.Supp.3d 402, 407, (S.D.N.Y. 2014)]() (concluding that the plaintiff's claims did not relate back under Rule 15(c)(1)(C) because the plaintiff was "ignorant" and not "mistaken" about the John Doe defendants' identities); *Strada v. City of New York,* No. 11-CV-5735 (MKB), [2014 WL 3490306, at \*10 (E.D.N.Y. July 11, 2014)]() (citing *Hogan* and explaining that "*Barrow* remains good law ... and precludes [the] [c]ourt from finding that [the] [p]laintiff's failure to amend the [c]omplaint to name the individual officers was a mistake contemplated by Rule 15(c)").

**\*\*5** Contrary to the Plaintiff's arguments, *Barrow* is still the law of the Second Circuit. *See, e.g., DaCosta v. City of New York,* 296 F.Supp.3d 569, 593 (E.D.N.Y. 2017) ("[T]he Court of Appeals for the Second Circuit has not yet abandoned the *Barrow* rule."). In fact, in *Hogan,* the Court cited *Barrow* as precedent that it held that Rule 15(c)(1)(C) did not allow for relation back where the plaintiff was ignorant of the identities of the John Doe defendants. *Hogan,* 738 F.3d at 517–18.

[4] More importantly, the Plaintiff has not supplied a proposed amended complaint, and did not mention once in his motion which officers he sought to substitute for the John Does. The Defendants and the Court are left to speculate as to which officers the Plaintiff seeks to substitute. It is not clear whether the Plaintiff seeks to substitute certain officers in their individual capacities, their official capacities, or both. This is an insufficient showing, and sufficient reason to summarily deny the Plaintiff's motion to amend his complaint pursuant to Rule 15. *See Christian v. Town of Riga,* 649 F.Supp.2d 84, 100 (W.D.N.Y. 2009) ("Usually, a movant's failure to submit a proposed amended complaint constitutes sufficient grounds to deny a motion to amend." (citing *Murray v. N.Y.,* 604 F.Supp.2d 581, 588 (W.D.N.Y. 2009) ); *La Barbera v. Ferran Enterprises, Inc.,* No. 06-cv-2678, 2009 WL 367611, at \*3 (E.D.N.Y. Feb. 10, 2009) ("In order to meet the requirements of particularity in a motion to amend, a complete copy of the proposed amended complaint must accompany the motion so that both the Court and the opposing party can understand the exact changes sought.") (internal citations and quotation marks omitted); *Team Air Express, Inc. v. A. Heffco Technologies, Inc.,* No. 06-cv-2742, 2008 WL 3165892, at \*10 n.10 (E.D.N.Y. Aug. 6, 2008) (stating that "the Court could recommend denial of the motion [for leave to amend] solely on the basis of plaintiff's failure to submit a proposed amended Complaint"); *Zito v. Leasecomm Corp.,* No. 02-cv-8074, 2004 WL 2211650, at \*25 (S.D.N.Y. Sept. 30, 2004) ("In order to meet the requirements **\*12** of particularity in a motion to amend, 'a complete copy of the proposed amended complaint must accompany the motion so that both the Court and opposing parties can understand the exact changes sought.' " (quoting *Smith v. Planas,* 151 F.R.D. 547, 550 (S.D.N.Y. 1993) ) ).

[5] While it is true that a Court may grant a motion to amend based solely on the moving papers where the "papers adequately explain the basis for, and nature of, the proposed amendment," *Murray,* 604 F.Supp.2d at 588 (citing *Segatt v. GSI Holding Corp.,* No. 07 CIV. 11413 (WHP), 2008 WL 4865033, at \*4 (S.D.N.Y. Nov. 3, 2008) ), the Plaintiff did

not adequately explain the nature of the proposed amendment. That is, he did not say which officers he seeks to substitute. The Smithtown Defendants assumed that the Plaintiff sought to substitute Sokol and Paterson. The Court cannot engage in such conjecture.

In any event, as stated above, even if the Plaintiff had named certain officers, he would not be able to avail himself of Rule 15(c)(1)(C).

Therefore, the Plaintiff's motion to amend his complaint pursuant to Rule 15(c)(1)(C) is denied.

**2. N.Y. C.P.L.R. § 1024.**

While the Plaintiff did not raise the issue, in an abundance of caution, the Court will also examine whether the Plaintiff would be permitted to substitute certain police officers for the John Doe Defendants under N.Y. C.P.L.R. § 1024 ("Section 1024").

**\*\*6** [6] [7] The Second Circuit has held that even where a plaintiff's claims do not relate back under Rule 15(c)(1) (C), "Rule 15(c)(1)(A) permits an amended pleading to relate back when 'the law that provides the applicable statute of limitations allows relation back.' " *Hogan,* 738 F.3d at 518 (quoting FED. R. CIV. P. 15(c)(1)(A) ); *see also* FED. R. CIV. P. 15(c)(1)(A) (stating that "[a]n amendment ... relates back ... when the law that provides the applicable statute of limitations allows relation back"). Rule 15 "does not apply to preclude any relation back that may be permitted under the applicable limitations law." *Id.* "Rule 15(c)(1)(A) instructs courts, then, to look to the entire *body* of limitations law that provides the applicable statute of limitations." *Id.* (emphasis in original).

New York State law "provides a more forgiving principle of relation back in the John Doe context, compared to the federal relation back doctrine under Rule 15(c)(1)(C). *Id.* Here, the applicable limitations law is Section 1024 of the N.Y. C.P.L.R., which states:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is

known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

[N.Y. C.P.L.R. § 1024.](#)

[8] [9] Under [Section 1024 of the N.Y. C.P.L.R.](#), a court may allow a plaintiff to substitute a named party for a John Doe party if the plaintiff meets two requirements: (1) " 'exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name,' " and (2) "describe the John Doe party 'in such form as will fairly apprise the party that [he] is the intended defendant." *Hogan,* 738 F.3d at 518–19 (quoting *Bumpus v. N.Y.C. Transit Auth.,* 66 A.D.3d 26, 883 N.Y.S.2d 99, 104 (N.Y. 2009) ). A plaintiff must then "ascertain the identity of unknown **\*13** 'Jane Doe' parties, and ... serve process upon them, within 120 days from filing." *Bumpus,* 66 A.D.3d at 31, 883 N.Y.S.2d at 105; see also *JCG v. Ercole,* No. 11-CV6844, 2014 WL 1630815, at \*13 (S.D.N.Y. Apr. 24, 2014) ("If a plaintiff fulfills these conditions, he 'must then ascertain the identity of unknown [John] Doe parties, and ... serve process upon them, within 120 days from filing [the original complaint].' " (alterations in original) (quoting *Williams v. United States,* No. 07-CV-3018, 2010 WL 963474, at \* 12 (S.D.N.Y. Feb. 25, 2010) ) ). The 120-day deadline imposed by [C.P.L.R. 305](#)-b may be extended "upon good cause shown or in the interest of justice." [N.Y. C.P.L.R. 305](#)-b.

[10] "To identify unknown parties after filing, a plaintiff is advised to serve discovery demands upon any known parties, seek disclosures pursuant to a Freedom of Information Law ("FOIL") request, or otherwise act with diligence." *Williams,* 2010 WL 963474, at \*12 (citing *Bumpus,* 66 A.D.3d at 33–34, 883 N.Y.S.2d at 107).

Here, the Court finds that the Plaintiff did not act with due diligence. Assuming for the purposes of this analysis that the Plaintiff seeks to substitute Healy, Sokol and Paterson for the John Doe Defendants, the Plaintiff knew their identities years ago, yet failed to serve process upon them.

[11] [12] In New York, the statute of limitations for claims brought pursuant to [Section 1983](#) is three years. *Morales v. Cty. of Suffolk,* 952 F.Supp.2d 433, 436 (E.D.N.Y. 2013) (Spatt, J.) (citing *Patterson v. Cty. of Oneida,* 375 F.3d 206,

225 (2d Cir. 2004) ). The Plaintiff alleges that his rights were violated as late as July 5, 2013. The complaint was filed on October 3, 2013. The Plaintiff moved to amend his complaint on August 4, 2017, more than four years after the incident. Healy testified by deposition on November 6, 2015. Counsel for the Plaintiff was present, and questioned Healy. Sokol was deposed on November 25, 2015. Counsel for the Plaintiff was present, and questioned Sokol. Paterson was deposed on December 22, 2015. Counsel for the Plaintiff was present, and questioned Paterson. Furthermore, counsel for the Smithtown Defendants submitted an affidavit stating that the Plaintiff possessed the arrest records and prosecution records, which contained Healy, Sokol, and Paterson's names, no later than February 12, 2014, because counsel for the Plaintiff produced those records at the [GEN. MUN. LAW § 50-E](#) ("Section 50-E") hearing.

**\*\*7** The Plaintiff cannot avail himself of the benefits of [§ 1024](#) where it is clear that he had the names of Sergeant Healy, Ranger Sokol and Ranger Paterson before the statute of limitations had run. The Plaintiff had the names of the officers before the statute of limitations expired, yet made no attempt to amend his complaint or serve them. He did not move to amend his complaint until more than three years after he produced documents with their names at the [Section 50-E](#) hearing, and a year and a half after he deposed the officers.

"Here, Defendants provided Plaintiff with the names of the officers involved in Plaintiff's arrest prior to the expiration of the statute of limitations and close of discovery, yet Plaintiff did not attempt to amend the Complaint to add any individual officers prior to the expiration of the statute of limitations." *Strada,* 2014 WL 3490306, at \*6.

While this may be a harsh result, it is mandated by the case law interpreting [N.Y. C.P.L.R. § 1024.](#) *See Gonzalez v. City of N.Y.,* No. 14 CIV. 7721 LGS, 2015 WL 6873451, at \*3 (S.D.N.Y. Nov. 9, 2015) ("Where, as here, nothing in the record **\*14** indicates that Plaintiff exercised due diligence before the statute of limitations expired, she may not use the 'John Doe' procedure in [§ 1024](#)." (citing *Temple v. N.Y. Cmty. Hosp. of Brooklyn,* 89 A.D.3d 926, 933 N.Y.S.2d 321, 322 (N.Y. App. Div. 2011) ("To make use of the 'John Doe' procedure delineated in [C.P.L.R. 1024,](#) parties must demonstrate that they have exercised due diligence ....") ) ); *Vasconcellos v. City of N.Y.,* No. 12 Civ. 8445, 2014 WL 4961441, at \*9 (S.D.N.Y. Oct. 2, 2014) ("[I]n order to invoke [C.P.L.R. 1024](#)'s benefits, [plaintiff] must first show that she exercise[d] due diligence, prior to the running of the statute of

limitations, to identify the defendant[s] by name.") (internal citations and quotation marks omitted) ).

 **[13]** "The use of C.P.L.R. 1024 presents many pitfalls. One pitfall is that parties are not to resort to the 'Jane Doe' procedure unless they exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name and, despite such efforts, *are unable to do so.*" *Bumpus,* 66 A.D.3d at 29–30, 883 N.Y.S.2d at 104 (emphasis added). The Plaintiff did not exercise due diligence prior to the running of the statute of limitations, and has thus fallen into one of the pitfalls of Section 1024.

Therefore, the Plaintiff cannot avail himself of Section 1024, and his motion to amend his complaint pursuant to Rule 15 to substitute certain officers for the John Doe defendants is denied.

## B. As to the Defendants' Motions for Summary Judgment

### 1. The Legal Standard

Under FED. R. CIV. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When deciding a motion for summary judgment, "[t]he Court 'must draw all reasonable inferences and resolve all ambiguities in favor of the non–moving party.' " *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.,* 150 F.3d 132, 137 (2d Cir. 1998) (quoting *Garza v. Marine Transp. Lines, Inc.,* 861 F.2d 23, 26 (2d Cir. 1988) ).

 **[14]** "[A]t the summary judgment stage the judge's function is not [ ] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Redd v. N.Y. State Div. of Parole,* 678 F.3d 166, 173–74 (2d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (internal quotation marks omitted) ). In other words, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Barrows v. Seneca Foods Corp.,* 512 F. App'x 115, 117 (2d Cir. 2013) (quoting *Redd,* 678 F.3d at 174 (internal quotation marks omitted) ). The Court should not attempt to resolve issues of fact, but rather "assess whether there are any factual issues to be tried." *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.,* 677 F.3d 109, 119 (2d Cir. 2012).

 **\*\*8** The movant has the burden of demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If a nonmoving party fails to make a sufficient showing on an essential element of its case where they will have the burden of proof, then summary judgment is appropriate. *Id.* at 323, 106 S.Ct. 2548, 2552. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  **\*15** *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. 2505. The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for that party. *See Dawson v. Cty. of Westchester,* 373 F.3d 265, 272 (2d Cir. 2004).

### 2. The Applicable Law

#### a. Section 1983 Generally

42 U.S.C. § 1983 provides, in relevant part, that "any person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, is liable to the injured party for damages."

 **[15]**  **[16]** To state a § 1983 claim, a plaintiff must allege: (1) that the challenged conduct was "committed by a person acting under color of state law"; and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir. 1994) ). Section 1983 does not create any independent substantive right, but rather is a vehicle to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir. 1999); *see also Rosa R. v. Connelly,* 889 F.2d 435, 440 (2d Cir. 1989) ("It is fundamental, however, that § 1983 creates no independent, substantive constitutional rights but rather is a vehicle for enforcing such rights.").

#### b. 1983 Claims Against Municipalities, namely, "*Monell* Claims"

**[17]**  **[18]**  **[19]**  It is well-established that "a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). However, section 1983 "extends liability to a municipal organization where ... the policies or customs it has sanctioned, led to an independent constitutional violation." *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006). "Municipal liability may also be premised on a failure to train employees when inadequate training 'reflects deliberate indifference to ... constitutional rights.' " *Okin v. Village of Cornwall–On–Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (quoting *City of Canton v. Harris*, 489 U.S. 378, 392, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989) ).

**[20]**  To prevail on a Section 1983 claim against a municipality, a plaintiff must show "that 'action pursuant to official municipal policy' caused the alleged constitutional injury." *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting *Connick v. Thompson*, 563 U.S. 51, 60, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) ); *see also Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018 ("[L]ocal governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels").

**[21]**  A plaintiff can establish the existence of a municipal policy or custom by showing:

> **\*\*9**  the existence of[ ] (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision-making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge and acquiescence **\*16** can be implied on the part of the policy making officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who

come in contact with the municipal employees.

*Moray v. City of Yonkers*, 924 F.Supp. 8, 12 (S.D.N.Y. 1996) (internal citations omitted).

**[22]**  Here, the Plaintiff argues that his *Monell* claims are premised upon an alleged failure to train. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61, 131 S.Ct. 1350. Only where a plaintiff can demonstrate that a municipality's failure to train "amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact" will a policy or custom actionable under Section 1983 be established. *Moray*, 924 F.Supp. at 12 (internal quotation marks omitted); *see also Connick*, 563 U.S. at 61–62, 131 S.Ct. 1350; *Canton*, 489 U.S. at 388, 109 S.Ct. 1197.

**[23]**  **[24]**  **[25]**  " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 1391, 137 L.Ed.2d 626 (1997). To establish deliberate indifference, a plaintiff must demonstrate that: (1) "a policymaker knows to a moral certainty that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training ... will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of N.Y.*, 974 F.2d 293, 297–98 (2d Cir. 1992) (internal quotation marks omitted). "[D]emonstration of deliberate indifference requires a showing that the official made a conscious choice, and was not merely negligent." *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012).

**[26]**  **[27]**  "[W]here ... a city has a training program, a plaintiff must ... 'identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Wray v. City of N.Y.*, 490 F.3d 189, 196 (2d Cir. 2007) (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) ). "The plaintiff must offer evidence to support the conclusion that the training program was inadequate, not '[t]hat a particular officer may be unsatisfactorily trained' or that 'an otherwise sound

program has occasionally been negligently administered,' and that a 'hypothetically well-trained officer' would have avoided the constitutional violation." *Okin*, 577 F.3d at 440–41 (quoting *Canton*, 489 U.S. at 390–91, 109 S.Ct. 1197); *see also Edrei v. City of N.Y.*, 254 F.Supp.3d 565, 581 (S.D.N.Y. 2017) (finding that the plaintiffs plausibly alleged a failure-to-train claim where the City armed police officers with powerful long-range acoustic devices and placed those officers in "expectantly volatile protests" without training them).

**[28]** "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62, 131 S.Ct. 1350 (internal citation and quotation marks omitted). This is because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen **\*17** a training program that will cause violations of constitutional rights." *Id.*

 **\*\*10** **[29]** **[30]** **[31]** At the same time, however, the Supreme Court in *Connick* reaffirmed the viability, in limited circumstances, of the "single-incident" theory of liability envisioned in the Court's prior *Canton* decision. *See id.* at 63–65, 131 S.Ct. 1350, 1359; *Canton,* 489 U.S. at 390 n.10, 109 S.Ct. 1197. Under the single-incident theory, a municipality can be found to be deliberately indifferent based on a single constitutional violation where "the unconstitutional consequences of failing to train [are] so patently obvious that a city should be liable under [Section] 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64, 131 S.Ct. 1350. Violation of constitutional rights must be a "highly predictable consequence" of the failure to train. *Id.* (internal quotation marks omitted). "Thus, deliberate indifference may be inferred where the need for more or better supervision to protect against constitutional violations was obvious, but the policymaker failed to make meaningful efforts to address the risk of harm to plaintiffs." *Cash*, 654 F.3d at 334 (internal citations, quotation marks, and alterations omitted).

### c. Section 1983 Claims for Denial of Medical Care

 **[32]** **[33]** While the Plaintiff has not named any individual defendants, the *Monell* claims are based on an alleged denial of medical care. Where a plaintiff was allegedly deprived of medical care, courts construe the rights seeking to be vindicated as arising under either the Eight Amendment

prohibition against cruel and unusual punishment, *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009), or the Fourteenth Amendment's Due Process Clause, *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). However, "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions .... [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983).

 **[34]** Instead, "[a] pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment." *Darnell*, 849 F.3d at 29; *see also Revere*, 463 U.S. at 244, 103 S.Ct. 2979 ("The Due Process Clause ... require[s] the responsible government or governmental agency to provide medical care to persons, such as Kivlin, who have been injured while being apprehended by the police."). Therefore, because the Plaintiff was merely an arrestee, and not a sentenced prisoner, his claim is properly brought as a violation of his Fourteenth Amendment rights.

Here, the Plaintiff was not a convicted prisoner, but an arrestee being held by the police. Nevertheless, "it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner." *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Revere*, 463 U.S. at 244, 103 S.Ct. 2979 ("[T]he due process rights of a ... [pretrial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner." (internal citations and footnote omitted) ).

 **[35]** A plaintiff alleging deliberate indifference to medical needs must satisfy two prongs: an "objective prong" showing that "the alleged deprivation [was] sufficiently **\*18** serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain, existed," *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ), and a " '*mens rea* prong,' or 'mental element prong'—showing that the officer acted with at least deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29. Prior to *Darnell*, the second prong was assessed subjectively in claims brought under both the Eighth and Fourteenth Amendments. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127,

138 (2d Cir. 2013) ("The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care."); *Caiozzo*, 581 F.3d at 70 ("[T]he standard for deliberate indifference is the same under the Due Process Clause of the Fourteenth Amendment as it is under the Eighth Amendment.").

**\*\*11** **[36]** However, in light of the Supreme Court's ruling in *Kingsley v. Hendrickson*, —— U.S. ——, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015), the Second Circuit held that in claims brought pursuant to the Fourteenth Amendment:

> the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety. In other words, the "subjective prong" (or "*mens rea* prong") of a deliberate indifference claim is defined objectively.

*Darnell*, 849 F.3d at 35. Therefore, the "*mens rea* prong of a deliberate indifference claim brought by a pretrial detainee is now to be assessed objectively." *Davis v. McCready*, 283 F.Supp.3d 108, 117 (S.D.N.Y. 2017) (citing *Darnell*, 849 F.3d at 35; *Lloyd v. City of N.Y.*, 246 F.Supp.3d 704, 719 (S.D.N.Y. 2017) ).

### 3. Application to the Plaintiff's Claims

#### a. As to the Claims Against the SCPD and the TSPP

The Plaintiff cannot sustain his claims against the SCPD and the TSPP because those agencies are administrative arms of the respective municipalities.

**[37]** "Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police*

*Dep't*, 224 F.Supp.2d 463, 477 (E.D.N.Y. 2002) (Spatt, J.) (citing *Hall v. City of White Plains*, 185 F.Supp.2d 293, 303 (S.D.N.Y. 2002) (dismissing claim against the police department); *Polite v. Town of Clarkstown*, 60 F.Supp.2d 214, 216 (S.D.N.Y. 1999); *Umhey v. Cty. of Orange*, 957 F.Supp. 525, 530–31 (S.D.N.Y. 1997); *Wilson v. City of N.Y.*, 800 F.Supp. 1098, 1101 (E.D.N.Y. 1992) ).

Accordingly, the Defendants' motion for summary judgment pursuant to Rule 56 dismissing the claims against those entities is granted.

#### b. As to the Claims Against Suffolk and Smithtown

Smithtown and Suffolk contend that the Plaintiff cannot establish municipal liability because there is no underlying constitutional violation. They further argue that the Plaintiff has not presented any evidence that any alleged constitutional injury was the result of a policy, practice or custom. The Court disagrees with both points, and finds that the Plaintiff has presented enough evidence for the Court **\*19** to find that there are sufficient material questions of fact as to whether he was denied medical care under Section 1983; and as to whether that denial was the result of a failure to train by Suffolk and Smithtown.

#### i. As to Whether the Plaintiff Was Denied Medical Care

#### A. The Objective Prong

**[38]** The Plaintiff told the officers that he had taken nine diazepam pills, two tabs of acid, and smoked some marijuana. He was asleep when they found him. Rangers Paterson and Sokol observed vomit on the seat. They were so concerned about him that they had him sit down. When he arrived at the Fourth Precinct, he was unsteady on his feet; had slurred speech; and was lethargic. Rangers Sokol and Paterson informed Sergeant Healy of the SCPD that the Plaintiff admitted to taking a large quantity of drugs. By the time the rangers attempted to drop him off at home, his daughter said that he looked like a zombie. Neither the TSPP rangers nor the SCPD officers ever gave him medical attention. These facts, coupled with the officers' knowledge that the Plaintiff had ingested a large quantity of drugs, indicate that the officers may not have acted reasonably in response to the Plaintiff's sufficiently serious medical situation.

**\*\*12** **[39]** While it is true that "[t]he Constitution does not require an arresting police officer or jail official to seek medical attention for every arrestee or inmate who appears to be affected by drugs or alcohol," *Burnette v. Taylor,* 533 F.3d 1325, 1333 (11th Cir. 2008); *see also Estate of Lawson ex rel. Fink v. City of Hamilton,* No. C-1-07-927, 2009 WL 1444556, at \*16 (S.D. Ohio May 21, 2009) ("The Constitution does not require an officer to provide medical assessment and care to every intoxicated person he arrests, regardless of the degree of impairment."), the officers were aware that the Plaintiff had ingested a dangerously large amount of drugs. He told them he had taken nine diazepam and two tabs of acid, and that he had smoked some marijuana. Ranger Paterson knew that the pills were not prescribed to the Plaintiff. (Paterson Dep. at 45 ("When I brought [the Plaintiff] to the precinct I had the pill bottles that he had in the vehicle that were not assigned to him.") ).

The court in *Bradway v. Town of Southampton,* 826 F.Supp.2d 458 (E.D.N.Y. 2011), faced with a factually similar situation in which the defendant officers observed the plaintiff ingest a large amount of cocaine, summarized the case law regarding denial of medical treatment where a plaintiff ingested drugs as follows:

> the Court is obviously not suggesting ... that a medical indifference claim will potentially lie simply because officers fail to take every intoxicated arrestee to the hospital at the time of the arrest for treatment. Such a rule would be absurd and, given the number of arrestees who are intoxicated at the time of arrest, would turn hospitals into arrest processing centers.... Instead, much more evidence must be present for a plausible constitutional violation to exist and for a medical indifference claim of this nature to survive summary judgment. In particular, there generally must be evidence that the officers are aware of the ingestion of large quantities of drugs or other intoxicants which, due to the quantities, pose a serious or life-threatening danger to the arrestee, and/

or there were obvious signs of distress from the ingestion.

826 F.Supp.2d at 471–72.

Here, such evidence is present for the Court to find that a plausible constitutional violation exists. Rangers Paterson and Sokol were aware of the ingestion of a **\*20** large quantity of drugs, which, due to the quantity, may have posed a serious and life-threatening danger to the Plaintiff. Furthermore, there were obvious signs of distress: the Plaintiff had fallen asleep; he had vomited in the car; his speech was slurred; he was unsteady on his feet; he was lethargic; and by the time he arrived home, he looked like a "zombie." In such situations, courts have been reluctant to grant summary judgment to defendants. *See Border v. Trumbull Cnty. Bd. of Comm'rs,* 414 F. App'x 831, 838 (6th Cir. 2011) ("In the instant case ... viewing the evidence in the light most favorable to plaintiffs, [the officer's] notation on the altered forms that [detainee] appeared to be 'under the influence of barbiturates, heroin or other drugs' and suffered a recent head injury, coupled with [the detainee's] signs of physical incapacity, severe intoxication and obvious disorientation witnessed by the inmates during the period [the officer] was interacting with [the detainee], sufficiently establish from an objective standpoint that a serious medical need existed and, in addition, that a reasonable jury could conclude that [the officer] was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed] and [he] ignored that risk.' " (quoting *Blackmore v. Kalamazoo Cnty.,* 390 F.3d 890, 899 (6th Cir. 2004) ); *Dean v. City of Fresno,* 546 F.Supp.2d 798, 814 (E.D. Cal. 2008) ("A rational[ ] jury could find the officers' conduct to be a form of inaction that amounts to deliberate indifference. Although the officers maintain that they only thought that [the detainee] had cocaine in his mouth, that they did not think that [the detainee] needed medical care, and that if [the detainee] had said he had swallowed cocaine that they would have obtained medical aid, a rationale [sic] jury could look at the totality of the circumstances and conclude that the officers had actual knowledge that [the detainee] had swallowed cocaine and were deliberately indifferent to [the detainee's] condition."); *Bradway,* 826 F.Supp.2d at 469–70 (finding that the plaintiff met the objective prong where the officers observed him ingest cocaine, and he admitted to them that he ingested up to three grams of cocaine); *see also Iacovangelo v. Correctional Medical Care, Inc.,* 624 F. App'x 10, 13 (2d Cir. 2015) (holding that, on a motion to dismiss,

the plaintiff plead sufficient facts alleging that she suffered from a serious medical condition after she acknowledged she was under the influence of drugs and had a history of drug abuse upon admission to county jail); *McConville v. Montrym*, No. 3:15-cv-00967 (MAD/DEP), 2016 WL 3212093, at *5 (N.D.N.Y. June 9, 2016) (holding that the plaintiff's complaint withstood a motion to dismiss where "the complaint alleges that Decedent swallowed a toxic amount of oxycodone, smelled strongly of alcohol, was covered in urine, and exhibited numerous presenting symptoms of overdose and intoxication, including incoherency, motor impairment, dizziness, vomiting, impaired coordination, confusion, and trouble breathing. Decedent also made repeated requests to be taken to a hospital. Construing the facts in the light most favorable to Plaintiff, such allegations plausibly plead a serious medical condition under the objective prong of the deliberate indifference analysis." (internal citations omitted) ); *Vining v. Dep't of Corr.*, No. 12 Civ. 3267 (JPO), 2013 WL 2036325, at *5 (S.D.N.Y. Apr. 5, 2013) (stating, in dicta, that a plaintiff's situation would appear urgent where the officers knew that he had ingested a dangerous amount of alcohol or drugs (citing *Bradway*, 826 F.Supp.2d at 471) ).

 **\*\*13** The Defendants rely almost entirely on the fact that the Plaintiff consistently refused medical attention. However, this fact **\*21** alone does not mean that the officers acted reasonably in response to the Plaintiff's situation. Namely, it does not change the conclusion that Rangers Sokol and Paterson were aware that the Plaintiff had placed himself in a life-threatening situation by ingesting a large quantity of drugs. *See, e.g., Bradway*, 826 F.Supp.2d at 473 (stating that "the Court has conducted independent research and carefully examined other cases that have dealt with the ingestion of drugs in the medical indifference context. In many of the cases that grant summary judgment for the defendants, the defendants were unaware of the actual amount of drugs consumed and/or the plaintiff exhibited no signs of distress." (collecting cases) ). Here, the Plaintiff told the rangers that he had taken nine diazepam that were not prescribed to him, two tabs of acid, and smoked some weed; they observed vomit in the car; and he was unsteady on his feet and slurred his speech.

Although it is true, as the County points out, that the Plaintiff did not introduce any medical evidence to support the contention that his ingestion of drugs created a sufficiently serious question, in the Court's opinion, such expert testimony is not necessary to create a question of fact. The inherent danger of ingesting a large quantity of prescription drugs mixed with other narcotics is something that is "obvious or common in everyday life," *Palmer v. Sena*, 474 F.Supp.2d 347, 350 (D. Conn. 2007), and arguably "dwells within the common knowledge of a layperson," *Gold v. Dalkon Shield Claimants Tr.*, No. B-82-383 (EBB), 1998 WL 351456, at *3 (D. Conn. June 15, 1998), aff'd, 189 F.3d 460 (2d Cir. 1999). While the Plaintiff may require such expert testimony at trial to prove his case, the Court finds that the mere ingestion of a large quantity of a mixture of narcotic drugs, coupled with the apparent signs of distress, are sufficient evidence to create a question of fact as to whether there was a sufficiently serious situation that could lead to serious injury or death.

Finally, the evidence is clear that the officers never took the Plaintiff to a hospital. The Plaintiff did not receive medical attention until his wife called 911. Therefore, there is a question of fact as to whether they acted reasonably in response to the Plaintiff's sufficiently serious situation. The evidence is clear that the Plaintiff was in a sufficiently serious situation. He was in a coma for six days, and has serious medical residuals. While there is no evidence that the delay in medical treatment caused or exacerbated his condition, the Defendants did not raise that issue, and the Court therefore declines to address it.

Therefore, the Court finds that the Plaintiff has introduced sufficient evidence to create a question of fact as to whether he suffered a medical deprivation that was sufficiently serious. The Defendants' motions for summary judgment on that basis are denied.

### B. The *Mens Rea* Prong

Similarly, the Court finds that there is a question of material fact as to whether officers from both the TSPP and the SCPD "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the [Plaintiff] even though the [officers] knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.

 **[40]** "[F]ollowing *Darnell*, the Court is called upon to determine, without the benefit of medical expertise, whether an objectively reasonable person in Defendant[s'] position would have known, or should have known, that Defendant[s'] actions or omissions posed an excessive risk of harm to [the **\*22** Plaintiff]." *Davis*, 283 F.Supp.3d at 120. Here, the Court finds that there is a question

of fact as to whether an objectively reasonable person in the officers' position would have known, or should have known, that failing to bring the Plaintiff to the hospital posed an excessive risk of harm to the Plaintiff.

**\*\*14** **[41]** As stated above, Rangers Paterson and Sokol knew that the Plaintiff had ingested a dangerous amount of narcotic drugs. Ranger Paterson knew that the prescriptions drugs he took were not prescribed to him. They told Sergeant Healy of the SCPD how much the Plaintiff claimed to have ingested. (*See* Paterson Dep. at 60 ("[W]as there any conversation about what [the Plaintiff] said he had ingested at that point? Yes, there was. I explained to the sergeant what he had told me and that's when the sergeant asked his questioning [sic] about medical to make sure that, you know, Mr. Boston was okay.") ). All three officers knew that the Plaintiff was at risk, and they asked if he needed medical attention. As At the very least, they should have known that the ingestion of a large quantity of drugs placed the Plaintiff in a serious situation.

Moreover, the Plaintiff exhibited outward signs of distress that put the officers on notice. He was asleep when Rangers Sokol and Paterson found him; there was vomit in the car; he was unsteady on his feet when he exited the car, and when he was brought into the precinct; Sergeant Healy noted that he was lethargic and had slurred speech; and Ranger Paterson testified that "he had a little bit of trouble moving ...." (Paterson Dep. at 66). Under these circumstances, coupled with the officers' knowledge of the Plaintiff's ingestion of drugs, a reasonable juror could find that the officers recklessly failed to act.

Courts have held that officers were aware of, and arguably disregarded, a substantial risk that serious harm would result where they knew that the arrestee ingested drugs and the arrestee exhibited outward signs of distress. *See Iacovangelo*, 624 F. App'x at 13 (holding, in a motion to dismiss, that the defendant was aware of detainee's drug withdrawal and intoxication during a medical screening where the defendant was aware of the detainee's drug history, a "visual assessment" of the detainee indicated that she was under the influence of drugs, and the detainee was observed vomiting); *Border*, 414 F. App'x at 838 (holding that an officer's observation of a detainee's signs of physical incapacity, severe intoxication and obvious disorientation were sufficient under the subjective prong to establish the officer's awareness of the detainee's condition); *Bradway*, 826 F.Supp.2d at 472 (finding that the officers were aware of

a detainee's medical condition and disregarded a substantial risk of harm where the officers witnessed the detainee's drug consumption, he told the officers of his drug consumption and he displayed signs of distress); *Wilson v. City of New Haven*, No. NNHCV106010876, 2017 WL 2111375, at \*4 (Conn. Super. Ct. Apr. 19, 2017) (applying *Darnell*, finding that there was a question of fact as to the plaintiff's medical indifference claim where the plaintiff "began to show signs of discomfort with crack residue coming out of the corner of his mouth. He was fainting, his speech became slurred, and he complained that he felt weak and his stomach hurt. Johnson told the officers that Wilson needed to go to the hospital," and the officers knew that the plaintiff had bags of cocaine in his mouth).

Finally, the Court cannot say as a matter of law that the officers did not act recklessly in failing to provide the Plaintiff with medical care. While it is true that the Plaintiff repeatedly declined medical treatment, **\*23** "[t]here are certainly circumstances where an intoxicated person's statement that he or she does not need medical treatment should not be honored because it is inconsistent with other objective facts indicating that hospitalization is clearly necessary." *Bradway*, 826 F.Supp.2d at 473–74.

Therefore, the Plaintiff has shown that there is a question of fact as to whether Rangers Paterson and Sokol, and Sergeant Healy "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the [Plaintiff] even though the[y] [ ]knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Accordingly, the Court finds that there is a question of fact as to whether the Plaintiff suffered a constitutional injury, and the Court turns to the Plaintiff's *Monell* claims.

### ii. As to Whether the Plaintiff's Constitutional Injury Was the Result of a Failure to Train by Suffolk and/or Smithtown

**\*\*15** **[42]** The Plaintiff argues that a question of fact remains as to whether Suffolk and Smithtown failed to adequately train their officers, and that a rational juror could find that they should be held liable for the Plaintiff's constitutional injuries. In opposition, Suffolk and Smithtown contend that the Plaintiff's complaint alleges that the municipalities' liability is premised upon a custom, policy, usage, practice, procedure, or rule, and that the Plaintiff has failed to produce any evidence that his injury was the result of

a custom, practice, or policy. The Court, in its discretion, reads the complaint broadly to include a claim for failure to train and finds that the Plaintiff has introduced sufficient evidence for the Court to submit his *Monell* claims to the jury.

As to the wording of the claim, while it is true that in the complaint, the Plaintiff bases his *Monell* claim on "customs, policies, usages, practice[s], procedures and rules" of the respective municipalities, a failure to train is in itself a type of policy. *See Connick*, 563 U.S. at 61, 131 S.Ct. 1350 ("[A] local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983."). Furthermore, in his state law claims, the Plaintiff alleges that the municipalities failed to properly train and supervise their agents. Therefore, the Court reads the Plaintiff's complaint broadly to include a *Monell* claim for failure to train, because a failure to train can amount to a municipal policy in certain circumstances.

As to the substance of the claim, the Plaintiff introduced, through deposition testimony, that Rangers Sokol and Paterson had never received any training from Smithtown on how to identify drugs; how drugs affect people; how to deal with individuals who are clearly in medical distress; or how to interact with arrestees. Sergeant Healy testified that he never received any training from Suffolk regarding how drugs affect people. He further testified that a desk officer only needed to know when a prisoner had ingested a foreign substance if the ingestion was part of a suicide attempt.

The Plaintiff has not introduced any evidence of "[a] pattern of similar constitutional violations" as is "ordinarily necessary to show deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62, 131 S.Ct. 1350 (internal citation and quotation marks omitted). However, in the Court's opinion, he has introduced sufficient evidence of deliberate indifference based on a single-incident theory.

Namely, the facts show that both Suffolk and Smithtown knew "to a moral certainty, **\*24** " *Walker,* 974 F.2d at 297, that officers would encounter arrestees who had ingested drugs and would require medical attention. Paterson and Sokol both testified that they had encountered many individuals under the influence of drugs. Paterson said that many people went to the park specifically to do drugs. Sergeant Healy testified that he had encountered individuals under the influence of narcotics. More generally, officers, including those employed by the Suffolk County

Police Department and the Town of Smithtown Park Police, encounter individuals who possess, or have recently used narcotic drugs.

The situation in this case—whether or not to bring the Plaintiff to the hospital after he ingested a large quantity of drugs but refused medical attention—"present[ed] the [officers] with a difficult choice of the sort that training ... w[ould] make less difficult ...." *Id.* That is, if Rangers Sokol and Paterson and Sergeant Healy had been trained on the effects of drugs on individuals, they would similarly not have faced a difficult choice. And a "highly predictable consequence" of officers making the wrong choice in such a situation, *Connick*, 563 U.S. at 64, 131 S.Ct. 1350, would result in violations of arrestees' constitutional rights. Said differently, if other officers responded in the same way as Rangers Sokol and Paterson and Sergeant Healy did, then other arrestees' constitutional rights would also likely be violated. Therefore, the consequences of Suffolk and Smithtown's failure to train "are so patently obvious that [a rational juror could find that they] should be liable under [Section] 1983 without proof of a pre-existing pattern of violations." *Id.*

**\*\*16** Other courts have found that similar single-incident claims survive motions for summary judgment or motions to dismiss. *See Gerskovich v. Iocco*, No. 15 CIV. 7280 (RMB), 2017 WL 3236445, at \*10 (S.D.N.Y. July 17, 2017) (denying summary judgment on the plaintiff's single-incident *Monell* claim where he alleged that his injuries were due to New York City's failure to train its police officers on the rights of protestors); *Edrei*, 254 F.Supp.3d at 581 (finding that the plaintiff's single-incident *Monell* claim withstood a motion to dismiss where the plaintiff alleged that the City of New York should have trained its police officers in the use of Long Range Acoustic Devices in crowd control situations); *Waller v. City of Middletown*, 89 F.Supp.3d 279, 284–86 (D. Conn. 2015) (finding that the plaintiff's complaint stated a claim upon which relief could be granted for a single-incident *Monell* violation where officers damaged the plaintiff's home during a search and the plaintiff alleged that the city "failed to train its Officers to understand that entry into a private home to execute an arrest warrant, but without a search warrant and without exigent circumstances, is illegal *per se*"); *Prevost v. City of N.Y.*, No. 13-CV-3760 VEC, 2014 WL 6907560, at \*7 (S.D.N.Y. Dec. 9, 2014) (denying the City's motion to dismiss based on single-incident theory where police officers allegedly received no training on the role exculpatory evidence plays in determining probable cause); *Chamberlain v. City of White Plains*, 986 F.Supp.2d 363, 393

(S.D.N.Y. 2013) (denying the City of White Plains' motion to dismiss where the complaint plausibly alleged a single-incident *Monell* violation based on the theory that the city failed to train officers of the White Plains Police Department on how to deal with emotionally disturbed persons).

While some courts have read *Connick* to define the requirements for succeeding on a single-incident theory so narrowly as to eviscerate it, other courts have read the Supreme Court ruling to permit single-incident theory under certain circumstances. *See Waller*, 89 F.Supp.3d at 285 **\*25** (collecting cases that "have not read the Supreme Court's ruling as foreclosing single-incident liability under appropriate circumstances"). This Court agrees with the logic and reasoning of those cases that have found that single-incident theory survives *Connick* under certain circumstances, such as those found here. In any event, neither Suffolk nor Smithtown move for summary judgment on the basis that the Plaintiff cannot proceed under single-incident theory.

Therefore, the Court finds that there is a material issue of disputed fact as to whether the Plaintiff's injuries were caused by Suffolk and Smithtown's failure to train their officers on the effects of drugs on individuals and how to interact with arrestees. Accordingly, the Defendants' motion for summary judgment pursuant to Rule 56 dismissing those claims is denied.

#### 4. As to the Plaintiff's State Law Claims

Suffolk and Smithtown both summarily claim that the Plaintiff failed to comply with the requirements of N.Y. GEN. MUN. LAW § 50-e(1). They do not present any case law in support of this contention, nor do they attempt to show why the Plaintiff's notice of claim was insufficient. Their respective arguments on the issue are each one sentence long. (*See* Suffolk Cty.'s Mem. of Law in Support of Mot. at 23 ("The defendants respectfully request, in light of a lack of a viable federal claim that the Court decline jurisdiction of

the plaintiffs state claims, or in the alternative, dismiss them for the plaintiff's failure to comply with the provisions of the General Municipal Law 50-e(1).")."); Smithtown Mem. of Law in Support of Mot. at 23 ("In addition ... the negligence claim is barred by non-compliance with the conditions precedent to suit provide[d] for in the New York General Municipal Law Section[s] 50-e, 50-h, and 50-i.") ). In a motion for summary judgment, the defendant bears the initial burden of showing the absence of genuine issues of material fact. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. The Plaintiff served a notice of claim on both Suffolk and Smithtown within ninety days of the date of his alleged injury, complying with the most basic requirement of N.Y. GEN. MUN. LAW 50-e. It is not clear from the Defendants' papers why the notice was insufficient, or why summary judgment should be granted on the Plaintiff's state law claims. Therefore, the Court declines to do the Defendants' work for them, and their motion to dismiss the Plaintiff's state law claims pursuant to Rule 56 is denied.

### III. CONCLUSION

 **\*\*17** For the reasons stated above, the Plaintiff's motion to amend his complaint pursuant to Rule 15 is denied; and the Defendants' motions for summary judgment are granted in part and denied in part. The motions for summary judgment are granted to the extent that the SCPD and TSPP are administrative arms that cannot be sued separate and apart from their respective municipalities and the claims against them are therefore dismissed. The motions for summary judgment are denied to the extent that the Plaintiff's *Monell* claims and state law claims against Suffolk and Smithtown shall be presented to the jury.

It is **SO ORDERED.**

### All Citations

326 F.Supp.3d 1, 2018 WL 344970

---

2019 WL 1771501
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Nyjee L. BOYD, Plaintiff,
v.
John DOE #1, et al., Defendants.

9:18-CV-1333 (TJM/ATB)
|
Signed 04/23/2019

**Attorneys and Law Firms**

NYJEE L. BOYD, Plaintiff, Pro Se, 15-B-2063, Clinton Correctional Facility, P.O. Box 2001, Dannemora, NY 12929.

**DECISION AND ORDER**

Thomas J. McAvoy, Senior, U.S. District Judge

**I. INTRODUCTION**

 **\*1** Plaintiff Nyjee L. Boyd commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") by filing a pro se civil rights complaint together with an application for leave to proceed in forma pauperis. Dkt. No. 1 ("Compl."); Dkt. No. 4 ("IFP Application"). By Decision and Order of this Court filed January 2, 2019, plaintiff's IFP Application was granted, and following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), some of plaintiff's claims and some of the named defendants were dismissed and the Court directed service and a response for the claims against the named defendants that survived sua sponte review. Dkt. No. 6 (the "January 2019 Order").

Presently before this Court is plaintiff's motion to amend his complaint, together with a proposed amended complaint. Dkt. No. 18 ("Motion to Amend"); Dkt. No. 18-1 ("Am. Compl."). At the time plaintiff submitted these documents, service was not completed on all of the defendants who remained in the action following the January 2019 Order, and none of the defendants who had been served had responded to the complaint. Thus, plaintiff was not required to obtain the Court's leave or defendants' consent before amending his complaint. As a result, the Court will consider plaintiff's proposed amended complaint as an amended complaint filed as of right in accordance with Rule 15(a)(1) of the Federal Rules of Civil Procedure. [1]

[1]  One week after plaintiff's Motion to Amend was docketed, counsel for certain of the named defendants filed a motion to dismiss portions of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 20 ("Motion to Dismiss").

**II. DISCUSSION**

**A. The Complaint and January 2019 Order**

In his original complaint, plaintiff asserted claims arising while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Clinton Correctional Facility ("Clinton C.F."). *See generally* Compl. Plaintiff named as defendants DOCCS Commissioner Anthony Annucci, Superintendent of Clinton C.F. E. Bell, as well as several corrections officials who allegedly worked at Clinton C.F. between April 2018 and August 2018. *Id.*

The complaint was construed to assert the following claims: (1) First Amendment free exercise claims against defendants C.O. John Doe #2, Baer, C.O. John Doe #3, W ood, and Sgt John Doe #1; (2) First Amendment retaliation claims against defendants C.O. John Doe #2, Baer, C.O. John Doe #3, Sgt John Doe #1, Wood, Hunt, Young, Holland, C.O. John Doe #4, and C.O. John Doe #5; (3) Eighth Amendment conditions-of-confinement claims against defendants Baer, C.O. John Doe #2, Wood, Young, and C.O. John Doe #3; (4) Eighth Amendment excessive force and failure-to-intervene claims against defendants Hunt, Baer, Sgt John Doe #1, Sgt John Doe #2, C.O. John Doe #1, and John Doe #6; (5) Fourteenth Amendment due process claims against defendants Wood and Baer based on the issuance of false misbehavior reports; (6) a Fourteenth Amendment destruction of property claim against defendant Wood; and (7) supervisory liability claims against defendants Bell and Annucci. *See* January 2019 Order at 9-10.

 **\*2** Following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the following claims were found to survive sua sponte review and require a response: (1) plaintiff's free exercise claims against defendants C.O. John Doe #2, Baer, C.O. John Doe #3, Sgt John Doe #1, Wood, Annucci, and Bell; (2) plaintiff's retaliation claims against defendants C.O. John Doe #2, Baer, C.O. John Doe #3, W ood, Hunt, Young, Holland, Annucci, and Bell; and (3) plaintiff's excessive force and failure-to-intervene claims against defendants Sgt John Doe #1, Sgt John Doe #2, C.O. John Doe #1, C.O. John Doe #6, Baer, Hunt, Annucci, and Bell. *See* January 2019 Order at 25-26.

All remaining claims were dismissed without prejudice for failure to state a claim upon which relief may be granted, and defendants John Doe #4 and John Doe #5 were dismissed as defendants from the action without prejudice. *Id.* at 26.

### B. Review of the Amended Complaint

Because plaintiff is proceeding in forma pauperis and is an inmate suing government employees, his amended complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the January 2019 Order and it will not be restated in this Decision and Order. *See* January 2019 Order at 2-4.

Plaintiff's amended complaint is substantially the same as his original complaint with a few exceptions.

First, plaintiff has withdrawn his claims against defendants John Doe #4 and John Doe #5. *See generally*, Am. Compl.

Second, plaintiff has added the following claims for relief against existing defendants based on the same allegations contained in the original complaint: (1) an Eighth Amendment failure-to-intervene claim against defendant John Doe #3 based on the alleged events that occurred on April 6, 2018; (2) an Eighth Amendment failure-to-protect claim against defendant Holland based on the alleged events that occurred on April 26, 2018; and (3) an Eighth Amendment medical indifference claim against defendant Wood based on an alleged event that occurred on May 1, 2018. *See* Am. Compl. at 13-16, 20.

Third, plaintiff has added Corrections Officer Dubrey and Corrections Officer Hill as defendants and asserted the following claims against them based on the same allegations contained in the original complaint: (1) a First Amendment free exercise claim against defendant Dubrey based on the alleged event that occurred on July 18, 2018; (2) a First Amendment retaliation claim against defendant Dubrey based on the alleged event that occurred on July 18, 2018; (3) an Eighth Amendment conditions-of-confinement claim against defendant Dubrey based on the alleged event that occurred on July 18, 2018; (4) an Eighth Amendment excessive force claim against defendant Dubrey based on the alleged event that occurred on July 18, 2018; and (5) an Eighth Amendment conditions-of-confinement claim against defendant Hill based on the alleged event that occurred on August 5, 2018. *See* Am. Compl. at 15-16.

Fourth, plaintiff has asserted new claims against defendants Baer, Bell, and Annucci, and added Corrections Officer John Doe #7 as a defendant, based on new allegations about an event that occurred on March 29, 2018. The following new facts are set forth as alleged in the amended complaint.

On March 29, 2018, at approximately 2:30 pm, plaintiff "returned from a law library call-out to Lower F-Block[.]" Am. Compl. at 8. Upon arriving at the Lower F-Block, plaintiff and another inmate were forced to wait on "two company by the A-man[,]" defendant Corrections Officer John Doe #7 ("John Doe #7"), for approximately thirty minutes before John Doe #7 gave them "a direct order" to return to their company. *Id.* Before leaving, plaintiff asked defendant John Doe #7 to place him on "the list for chow and gym[.]" *Id.* Defendant John Doe #7 cursed at plaintiff and told him to "lock in" to his cell. *Id.*

**\*3** Defendant Baer, who was standing nearby, then ordered plaintiff to "get on the ... wall." Compl. at 8. Plaintiff "obeyed" the order and defendant Baer proceeded to berate plaintiff for questioning staff. *Id.* Defendant Baer then searched plaintiff while two other unknown corrections officers stood behind him. *Id.* During the search, defendant Baer "stuck his hand in [plaintiff's] boxers" and "pulled [plaintiff's] testicles causing [him] severe pain[.]" *Id.* Plaintiff notified defendants Annucci and Bell about the events of March 29, 2018, but his complaint was "disregarded[.]" *Id.* at 10, 19.

The Court construes these allegations to assert an Eighth Amendment excessive force claim against defendant Baer, an Eighth Amendment failure-to-intervene claim against defendant John Doe #7, and supervisory liability claims against defendants Bell and Annucci.

The remainder of the amended complaint is materially similar to the original complaint, and re-asserts all of the same claims asserted in the original complaint against all of the same defendants (with the exception of defendants John Doe #4 and John Doe #5). *See generally* Am. Compl. For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

### 1. Claims Based on Events of March 29, 2018

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).[2]

[2]    In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

"The Eighth Amendment [also] requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dept. of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Law enforcement officials, including prison officials, can be held liable under § 1983 for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001); *see also Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (prison official's Eighth Amendment duty to take reasonable measures to guarantee the safety of inmates in their custody includes a duty to protect inmates from harm threatened by other officers).

**\*4** At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's excessive force claim against defendant Baer survives sua sponte review and requires a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

The Court, however, reaches a different conclusion with respect to plaintiff's claims against defendants John Doe #7, Annucci, and Bell. With respect to defendant John Doe #7, the amended complaint does not allege any facts regarding the nature or duration of defendant Baer's alleged use of force during the frisk, or where defendant John Doe #7 was physically located in relation to plaintiff, making it impossible for the Court to determine the plausibility of whether defendant John Doe #7 had a realistic opportunity to stop the alleged use of excessive force before its completion. *See Rosen v. City of New York*, 667 F. Supp. 2d 355, 360 (S.D.N.Y. 2009) ("In the context of a failure to intervene claim, an officer displays deliberate indifference when he has adequate time to assess a serious threat against an inmate and a fair opportunity to protect the inmate without risk to himself, yet fails to intervene."); *Dean v. New York City*, No. 15-CV-8825, 2017 WL 3670036, at \*4 (S.D.N.Y. July 6, 2017) (denying as futile leave to amend to add failure-to-intervene claim against corrections official where the proposed amended complaint was "devoid of any factual allegations against P.O. Myers with respect to the failure to intervene claim, such as, for example, where P.O. Myers was located and what she was doing when P.O. Baksh pepper sprayed the plaintiff's face"); *Cusamano v. Sobek*, 604 F. Supp.2d 416, 429 (N.D.N.Y. 2009) (excusing an officer from liability "despite his presence, if the assault is 'sudden and brief,' such that there is no real opportunity to prevent it"). Moreover, the amended complaint lacks any allegations which plausibly suggest that defendant John Doe #7 knew (or had a basis for knowing) prior to the alleged use of force that plaintiff was at risk of being harmed by defendant Baer. *See Blandon v. Capra*, No. 17-CV-65, 2017 WL 5624276, at \*8 (S.D.N.Y. Nov. 20, 2017) ("[A]side from a conclusory allegation that '[D]efendants[ ] w[ere] fully aware of [the] unsafe condition and refused to take any measures whatsoever to protect the safety of the most vulnerable mental health offenders,' the Complaint is devoid of any allegations that any Defendant specifically knew that Ebanks was infected with HIV or Hepatitis C, that he had a propensity to assault other inmates, or that plaintiff personally was in danger of being assaulted by Ebanks.... The Complaint therefore fails to allege that Defendants were 'aware of facts from which the inference could be drawn that' Ebanks specifically posed a substantial

risk of harm to Plaintiff, or that Defendants in fact drew such an inference.").

With respect to defendants Bell and Annucci, the Second Circuit held prior to Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)). [3]

[3] The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*);" *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citing *Grullon*, 720 F.3d at 139)). For purposes of this Decision and Order, the Court assumes that all five categories under *Colon* remain valid.

 **\*5** Here, plaintiff alleges only that he complained to defendants Bell and Annucci about the events of March 29, 2018, and his complaints were "disregarded[.]" Am. Compl. at 10, 19. Plaintiff has not alleged any facts which plausibly suggest that his complaints about the events of March 29, 2018, raised concerns about ongoing or continued misconduct. Nor has plaintiff attached to his amended complaint copies of his complaints regarding this alleged incident from which the Court could potentially draw such an inference. Thus, there is no basis for the Court to infer that, at the time defendants Bell and Annucci were made aware of the alleged events of March 29, 2018, they also became aware that plaintiff was experiencing an ongoing violation of his constitutional rights.

Moreover, a "failure to remedy" theory of liability is not available against a supervisor with respect to discrete and completed violations. *See Jackson*, 256 F.3d at 96 (citing *Blyden*, 186 F.3d at 259, 264 and *Wright*, 21 F.3d at 501); *see also Young v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. 1989) ("[T]he wrong must have been ongoing or otherwise capable of mitigation at the time the supervisory official was apprised thereof."). "If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation." *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008).

Accordingly, plaintiff's Eighth Amendment claims against defendants John Doe #7, Bell, and Annucci based on the alleged events of March 29, 2018, are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Failure-to-Intervene Claim Against Defendant John Doe #3

Plaintiff's failure-to-protect claim against defendant John Doe #3 is based on an allegation that he stood nearby while defendant Hunt subjected plaintiff to excessive force during a pat frisk. Am. Compl. at 20. Plaintiff, however, does not allege any facts regarding the nature or duration of the alleged use of force during the frisk, or defendant John Doe #3's proximity to defendant Hunt, making it impossible for the Court to determine the plausibility of whether defendant John Doe #3 had a realistic opportunity to stop the alleged use of excessive force before its completion. Moreover, the amended complaint lacks any allegations which plausibly suggest that defendant John Doe #3 knew (or had a basis for knowing) prior to the alleged use of force that plaintiff was at risk of being harmed by defendant Hunt.

Accordingly, plaintiff's Eighth Amendment failure-to-intervene claim against defendant John Doe #3 based on the alleged events of April 6, 2018, is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Failure-to-Protect Claim Against Defendant Holland

Plaintiff's failure-to-protect claim against defendant Holland is based on an allegation that he refused plaintiff's protective custody request and instead threatened plaintiff for making complaints on April 26, 2018. Am. Compl. at 13-14.

In order to establish a "failure to protect," the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, and prison officials acted with deliberate indifference to that risk and the inmate's safety. *Farmer*, 511 U.S. at 836. Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "Neither mere negligence nor a prison guard's mere failure to act reasonably is enough to state an Eighth Amendment deliberate indifference claim." *Sawyer v. New York State Depat. of Corr. Servs.*, No. 11-CV-0152, 2015 WL 6644112, at *7 (W.D.N.Y. June 30, 2015) (citing *Garcia v. Witkowski*, 988 F. Supp. 2d 360, 361 (W.D.N.Y. 2013)), *report and recommendation adopted in pertinent part by* 2015 WL 6641471 (W.D.N.Y. Oct. 28, 2015); *Shell v. Brun*, 585 F. Supp. 2d 465, 469-70 (W.D.N.Y. 2008) ("In failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety. Mere negligence (for example if a prison guard should know of a risk but does not) is not enough...."); *Jones v. Kelly*, 918 F. Supp. 74, 80 (W.D.N.Y. 1995) ("[D]efendant Morrissey's April, 1993 denial of plaintiff's transfer under the 'automatic' transfer evaluation provision of DOCS Directive No. 4948, Protective Custody Status, ¶ III(A) ... does not subject Morrissey to § 1983 liability in the absence of any proof that he deliberately, rather than negligently or inadvertently, disregarded a substantial risk to plaintiff's safety.").

 **\*6** Here, plaintiff does not allege any facts which plausibly suggest that, at the time he requested protective custody, defendant Holland was aware of a specific threat to plaintiff's safety. Moreover, plaintiff does not allege that he requested protective custody out of fear for his safety at that time. Rather, plaintiff alleges in conclusory fashion that he requested protective custody because corrections officials were "denying [him] meals and retaliating against [him]." Am. Compl. at 13. Thus, there is no basis for the Court to infer that defendant Holland deliberately disregarded an excessive risk to plaintiff's safety in denying him protective custody.

Accordingly, plaintiff's Eighth Amendment failure-to-protect claim against defendant Holland is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. [4]

[4]     To the extent plaintiff has attempted to assert an Eighth Amendment claim against defendant Holland based on alleged harassment, the law is clear that verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under Section 1983. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *see also Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (collecting cases). "While under extreme circumstances the Eighth Amendment's prohibition against cruel and unusual punishment may encompass intentionally inflicted psychological injury, necessarily excluded from this protection is conduct causing only de minimis psychological harm." *Johnson v. Brown*, No. 9:09-CV-0002 (GTS/DEP), 2010 WL 6243352, at *6 (N.D.N.Y. Sept. 3, 2010) (collecting cases), *report and recommendation adopted by* 2011 WL 1097864 (N.D.N.Y. Mar. 22, 2011); *see also Jermosen v. Coughlin*, No. 87-CV-6267, 1993 WL 267357, at *6 (S.D.N.Y. July 9, 1993), *aff'd*, 41 F.3d 1515 (2d Cir. 1994) (officers approaching inmate with nightsticks raised in a threatening position caused only de minimus psychological pain). In this case, the amended complaint fails to allege facts which plausibly suggest that the alleged comments made by defendant Holland subjected plaintiff to psychological harm which rises to the level of a constitutional violation.

### 4. Medical Indifference Claim Against Defendant Wood

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle*, 429 U.S. at 102, 104. The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain" and is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Id.*; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citing, *inter alia, Estelle*). While the Eighth Amendment does not mandate comfortable

prisons, neither does it tolerate inhumane treatment of those in confinement. *Farmer*, 511 U.S. at 832 (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.' " *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted). Addressing the objective element, to prevail a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "Second, the defendant must act with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Blyden*, 186 F.3d at 262 (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.' ").

 **\*7** Non-medical personnel may be held liable for deliberate indifference to medical needs where a plaintiff demonstrates that the prison personnel intentionally denied or delayed access to medical care or intentionally interfered with medical treatment once it was prescribed. *See Banks v. No. 8932 Corr. Officer*, No. 11-CV-8359, 2013 WL 673883, at \*4 (S.D.N.Y. Feb. 25, 2013) ("A prison guard's deliberate indifference to a serious medical need of a prisoner means intentionally denying or delaying access to medical care or intentionally interfering with medical treatment once it was prescribed."); *Davidson v. Scully*, No. 83-CV-2025, 1994 WL 669549, at \*12 (S.D.N.Y. Nov. 30, 1994) ("Evidence of deliberate indifference may be found in: a lengthy delay in arranging for medically indicated treatment for a prisoner's serious medical problem, ... deliberate interference with a prisoner's prescribed treatment, ... the refusal of prison officials to provide necessary medical care as punishment for misconduct unrelated to the prisoner's medical condition, ... and a serious failure to provide needed medical attention when prison officials are fully aware of that need...." (internal quotation marks and citations omitted)); *see also Estelle*, 429 U.S. at 104-05 (1976) (noting that deliberate indifference may be

manifested when prison guards intentionally deny or delay access to medical care).

Here, plaintiff alleges that while he was "being moved to Upper F from Lower F[,]" he informed defendant Wood, "who was transporting [plaintiff] to [his] knew [sic] location[,]" that he "couldn't carry [his] bags due to medical issues with [his] lower back and left knee[.]" Am. Compl. at 15. In response, defendant Wood stated that if plaintiff did not carry his bags, he would not receive his property. *Id.* Plaintiff then reiterated his "medical issues" and was escorted to his new cell without his bags because defendant Wood "refused" to carry them. *Id.*

Plaintiff's allegations regarding his "medical issues" are entirely conclusory. Plaintiff does not allege, for example, that a medical professional diagnosed him with an injury or condition that would worsen if he lifted objects over a certain weight. Nor does he allege that he was medically excused from lifting objects over a certain weight. Thus, there is no basis for inferring either that plaintiff suffered from a sufficiently serious medical condition at the time he requested assistance from defendant Wood, or that defendant Wood, in not agreeing to carry plaintiff's property, acted with deliberate indifference to plaintiff's serious medical needs.

Accordingly, plaintiff's Eighth Amendment medical indifference claim against defendant Wood is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. [5]

Analyzing plaintiff's allegations as a conditions-of-confinement claim would fare no better for plaintiff because depriving him of unidentified personal property does not constitute a per se deprivation of a basic human need, and there are no allegations in the amended complaint that defendant Wood refused to carry plaintiff's property despite knowing that plaintiff would be deprived of a basic human need. *See Bowens v. Smith*, No. 9:11-CV-784 (GLS/ATB), 2013 WL 103575, at \*10 (N.D.N.Y. Jan. 8, 2013) ("In order to show that conditions of confinement violate the Eighth Amendment, the plaintiff must demonstrate that the conditions result in an 'unquestioned and serious deprivation of basic human needs,' and that defendants imposed those conditions with deliberate indifference.") (quoting *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996)), *report and recommendation adopted by* 2013 WL 103596 (N.D.N.Y. Jan. 8, 2013). Furthermore, plaintiff

alleges that he received his property the next day. Am. Compl. at 15. While he also alleges that his property was "damaged[,]" plaintiff does not identify what property was "damaged," or how it was "damaged." Nor does plaintiff allege any facts from which an inference could be drawn that the "damage" occurred out of deliberate indifference to one of his basic human needs.

### 5. Excessive Force Claim Against Defendant Dubrey

**\*8** Plaintiff's excessive force claim against defendant Dubrey is based on an allegation that defendant Dubrey placed "mechanical restraints on [him] tight." Am. Compl. at 15.

Placing an inmate in handcuffs is not a per se constitutional violation. Rather, courts have held that tight handcuffing gives rise to a Eighth Amendment claim when "1) the handcuffs were unreasonably tight; 2) the defendants ignored the [plaintiff's] pleas that the handcuffs were too tight; and 3) [there is a] degree of injury to the wrists." *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) (internal quotation marks and citations omitted); *see also Benitez v. Locastro*, No. 9:04-CV-423 (NAM/RFT), 2010 WL 419999, at \*1, \*12 (N.D.N.Y. Jan. 29, 2010) (dismissing Eighth Amendment claim based on tight handcuffing where plaintiff failed to "allege for how long the handcuffs and shackles were applied, [ ]or the circumstances of their application").

Here, the amended complaint lacks any allegations which plausibly suggest that defendant Dubrey applied handcuffs maliciously and sadistically to cause harm. Moreover, plaintiff does not allege that he experienced any pain or injury as a result of the "tight" restraints. Nor does he allege that he complained to defendant Dubrey about the tightness after the restraints were placed on him.

Accordingly, plaintiff's Eighth Amendment excessive force claim against defendant Dubrey is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 6. Free Exercise and Retaliation Claims Against Defendant Dubrey

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's free exercise and retaliation claims against defendant Dubrey survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 7. Conditions-of-Confinement Claims Against Defendants Dubrey and Hill

Plaintiff's conditions-of-confinement claims against defendants Dubrey and Hill are based on allegations that on one occasion, defendant Dubrey denied him access to the gym, and on a separate occasion, defendant Hill denied him access to a meal. Am. Compl. at 15-16. As noted in the January 2019 Order, such limited deprivations are insufficient to state an Eighth Amendment violation. See January 2019 Order at 17-19.

Accordingly, plaintiff's Eighth Amendment conditions-of-confinement claims against defendants Dubrey and Hill are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 8. Remaining Claims

In addition to the claims discussed above, plaintiff also reasserts the following claims in the amended complaint that he set forth in the original complaint: (1) First Amendment free exercise claims against defendants C.O. John Doe #2, Baer, C.O. John Doe #3, W ood, and Sgt John Doe #1; (2) First Amendment retaliation claims against defendants C.O. John Doe #2, Baer, C.O. John Doe #3, Sgt John Doe #1, Wood, Hunt, Young, Holland; (3) Eighth Amendment conditions-of-confinement claims against defendants Baer, C.O. John Doe #2, Wood, Young, and C.O. John Doe #3; (4) Eighth Amendment excessive force and failure-to-intervene claims against defendants Hunt, Baer, Sgt John Doe #1, Sgt John Doe #2, C.O. John Doe #1, and John Doe #6; (5) Fourteenth Amendment due process claims against defendants Wood and Baer based on the issuance of false misbehavior reports; (6) a Fourteenth Amendment destruction of property claim against defendant Wood; and (7) supervisory liability claims against defendants Bell and Annucci based on the alleged wrongdoing that occurred between April 2018 and August 2018. *See generally* Am. Compl.

**\*9** The Court found in the January 2019 Order that the following claims survived sua sponte review and required a response: (1) plaintiff's free exercise claims against defendants C.O. John Doe #2, Baer, C.O. John Doe #3, Sgt John Doe #1, Wood, Annucci, and Bell; (2) plaintiff's retaliation claims against defendants C.O. John Doe #2, Baer, C.O. John Doe #3, Wood, Hunt, Young, Holland, Annucci, and Bell; and (3) plaintiff's excessive force and failure-to-intervene claims against defendants Sgt John Doe #1, Sgt John Doe #2, C.O. John Doe #1, C.O. John Doe #6, Baer, Hunt, Annucci, and Bell. *See* January 2019 Order at 25-26. For the reasons set forth in the January 2019 Order, these claims once again survive sua sponte review and require a response.

Upon review, and with due regard for plaintiff's status as a pro se litigant, the Court finds that plaintiff's remaining claims are subject to dismissal for the same reasons set forth in the January 2019 Order. *See generally*, January 2019 Order.

### C. Defendants' Motion to Dismiss

In light of the Court's decision to treat the proposed amended complaint as an amended complaint filed as of right, and because certain claims in the amended complaint that were not pled in the original complaint have survived initial review, defendants' Motion to Dismiss portions of the original complaint is denied without prejudice and with leave to renew upon the completion of service on all of the named defendants who remain in this action.

The deadline for the defendants who have already been served to respond to the amended complaint is stayed pending the completion of service on all of the named defendants who remain in this action. Upon the completion of service on all of the named defendants who remain in this action, the deadline for all of the named defendants to respond to the amended complaint shall be reset in accordance with the Federal Rules of Civil Procedure.

### III. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the Clerk shall docket plaintiff's proposed amended complaint (Dkt. No. 18-1) as the amended complaint, which is accepted for filing and is the operative pleading; and it is further

**ORDERED** that the Clerk shall update the docket to add the following parties as defendants: (1) Corrections Officer Dubrey; (2) Corrections Officer Hill; and (3) Corrections Officer John Doe #7; and it is further

**ORDERED** that the following claims **SURVIVE** sua sponte review and require a response: (1) plaintiff's free exercise claims against defendants Dubrey, C.O. John Doe #2, Baer, C.O. John Doe #3, Sgt John Doe #1, Wood, Annucci, and Bell; (2) plaintiff's retaliation claims against defendants Dubrey, C.O. John Doe #2, Baer, C.O. John Doe #3, W ood, Hunt, Young, Holland, Annucci, and Bell; and (3) plaintiff's excessive force and failure-to-intervene claims against defendants Sgt John Doe #1, Sgt John Doe #2, C.O. John Doe #1, C.O. John Doe #6, Baer, Hunt, Annucci, and Bell; and it is further

**ORDERED** that all remaining claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted;[6] and it is further

[6] Generally, when a district court dismisses a *pro se* action *sua sponte*, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend. *See Shuler v. Brown*, No. 9:07-CV-0937 (TJM/GHL), 2009 WL 790973, at \*5 & n.25 (N.D.N.Y. March 23, 2009) ("Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint."), *accord, Smith v. Fischer*, No. 9:07-CV-1264 (DNH/GHL), 2009 WL 632890, at \*5 & n.20 (N.D.N.Y. March 9, 2009); *Abascal v. Hilton*, No. 9:04-CV-1401 (LEK/GHL), 2008 WL 268366, at \*8 (N.D.N.Y. Jan. 13, 2008); *see also Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at \*2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.*, 16 F. Supp. 2d 375, 384 (S.D.N.Y. 1998) (denying leave to amend where plaintiff had already amended complaint once); *cf. Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial of leave to amend not abuse of discretion movant has repeatedly failed to cure deficiencies in pleading).

**\*10** **ORDERED** that the Clerk shall issue summonses and forward them, along with copies of the amended complaint, to the United States Marshal for service upon defendants Dubrey and Holland;[7] and it is further

7     Because David A. Rosenberg, on behalf of the Office of the New York State Attorney General, has appeared in this action as counsel for defendants Annucci, Baer, Bell, Hunt, Wood, and Young, the Clerk need not issue summonses for these defendants.

**ORDERED** that the deadline for defendants Annucci, Baer, Bell, Hunt, Wood, and Young to respond to the amended complaint is **STAYED** pending the completion of service on defendants Dubrey and Holland. Upon the completion of service on defendants Dubrey and Holland, defendants Annucci, Baer, Bell, Hunt, Wood, Young, Holland, and Dubrey must respond to the amended complaint in accordance with the Federal Rules of Civil Procedure; and it is further

**ORDERED** that plaintiff take reasonable steps to ascertain the identity of the "Doe" defendants, and when identified, seek to amend the complaint to add the individuals as defendants in this action pursuant to Federal Rule of Civil Procedure 15(a); [8] and it is further

8     Summonses will not issue for the "Doe" defendants because the U.S. Marshal cannot effect service on an individual who has not been identified by name.

**ORDERED** that the Motion to Dismiss (Dkt. No. 20) is **DENIED without prejudice and with leave to renew** upon the completion of service on defendants Holland and Dubrey; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do so may result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff and counsel for the defendants who have appeared in this action.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2019 WL 1771501

---

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag - Negative Treatment

Distinguished by Hogan v. County of Lewis, N.Y., N.D.N.Y., March 8, 2013

2010 WL 335581
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
E.D. New York.

Erwin JACKSON, Plaintiff,
v.
COUNTY OF NASSAU, Nassau County
Police Department, and Office of the Nassau
County District Attorney, Defendants.

No. 07-CV-245 (JFB)(AKT).
|
Jan. 22, 2010.

**Attorneys and Law Firms**

Erwin Jackson, pro se.

Ralph J. Reissman and Sara A. Wells of the Nassau County
Attorney's Office, Mineola, NY, for defendants.

**MEMORANDUM AND ORDER**

JOSEPH F. BIANCO, District Judge.

**\*1** On January 17, 2007, pursuant to 42 U.S.C. § 1983, *pro se*
plaintiff Erwin Jackson ("plaintiff" or "Jackson") brought this
action against defendants County of Nassau ("the County"),
Nassau County Police Department, and the Office of the Nassau
County District Attorney alleging that defendants
violated plaintiff's rights under the First, Fourth, and
Fourteenth Amendments of the United States Constitution.
Specifically, Jackson claims that his constitutional rights
were violated during his pretrial proceedings when police
officers allegedly withheld exculpatory evidence, made
perjurous statements, and falsely verified felony complaints
against plaintiff when they had no personal knowledge of the
underlying facts. Jackson further contends that the County
of Nassau has a policy of committing these constitutional
violations. Jackson also alleges that the County of Nassau
has a policy of failing to investigate criminal complaints

regarding these types of violations if they are filed by pretrial
detainees or criminal defendants. The defendants now move,
jointly, for summary judgment pursuant to Rule 56 of the
Federal Rules of Civil Procedure. For the reasons set forth
below, defendants' motion is granted.

I. FACTS

The Court has taken the facts set forth below from the
parties' depositions, affidavits, and exhibits, and from the
defendants' respective Rule 56.1 statements of facts. [1] Upon
consideration of a motion for summary judgment, the Court
shall construe the facts in the light most favorable to the
non-moving party-here, the plaintiff. *See Capobianco v. City
of New York,* 422 F.3d 47, 50 n. 1 (2d Cir.2001). Unless
otherwise noted, where a party's 56.1 statement or deposition
is cited, that fact is undisputed or the opposing party has
pointed to no evidence in the record to contradict it. [2]

[1] The Court notes that plaintiff failed to file and serve a
response to defendant's Local Rule 56.1 Statement of
Facts in violation of Local Civil Rule 56.1. Generally,
a "plaintiff['s] failure to respond or contest the facts
set forth by the defendants in their Rule 56.1 statement
as being undisputed constitutes an admission of those
facts, and those facts are accepted as being undisputed."
*Jessamy v. City of New Rochelle,* 292 F.Supp.2d
498, 504 (S.D.N.Y.2003) (quoting *NAS Elecs., Inc. v.
Transtech Elecs. PTE Ltd.,* 262 F.Supp.2d 134, 139
(S.D.N.Y.2003)). However, "[a] district court has broad
discretion to determine whether to overlook a party's
failure to comply with local court rules." *Holtz v.
Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir.2001)
(citations omitted); *see also Gilani v. GNOC Corp.,* No.
04 Civ. 2935(ILG), 2006 WL 1120602, at \*2 (E.D.N.Y.
Apr. 26, 2006) (exercising court's discretion to overlook
the parties' failure to submit statements pursuant to Local
Civil Rule 56.1). In plaintiff's opposition papers, he
specifically identified those paragraphs of defendants'
Rule 56.1 statement with which he agreed that there were
no material disputed issues of fact. The Court, in its
discretion, thus relies on those paragraphs as equivalent
to plaintiff's Rule 56.1 statement of facts for the purposes
of this opinion. In the exercise of its broad discretion
and given plaintiff's *pro se* status, the Court will also
only deem admitted those facts in defendant's Rule 56.1
statement that are supported by admissible evidence and
not controverted by other admissible evidence in the
record. *See Jessamy,* 292 F.Supp.2d at 504-05.

2  Because plaintiff is *pro se,* the Court has independently reviewed plaintiff's deposition testimony. Plaintiff's deposition contains no additional evidence other than plaintiff's speculation and conclusory allegations.

### A. The Underlying Prosecution

On November 22, 2005, plaintiff Erwin Jackson was arrested by Nassau County police officers for attempted robbery of the Bank of America located in Baldwin, New York, on November 21, 2005. (Defs.' 56.1 Statement ¶ 4.) Plaintiff was brought to the Bellmore police station, where he was questioned about the November 21, 2005 robbery. (Deposition of Irwin Jackson, Defs.' Ex. E (hereinafter "Pl.'s Dep.") at 32-33.) At the station, Jackson was also questioned about other bank robberies. (*Id.* at 34-35.) Plaintiff was arrested and arraigned on November 23, 2005. He was charged for the November 21 robbery and four additional robberies that had occurred in Nassau County on November 13, 2005, October 1, 2005, September 2, 2005, and July 23, 2005. (*Id.* at 40-41; Defs.' 56.1 Statement ¶ 5.) Plaintiff was indicted by a grand jury on thirteen counts on December 19, 2005. (Pl.'s Dep. at 44-45.) In June 2006, a pretrial suppression hearing was held, at which Police Officer Joseph Hughes testified. (*Id.* at 45-46.) Plaintiff proceeded to trial on the charges and, on February 6, 2007, was found guilty on nine counts of Robbery in the First Degree (New York Penal Law 160.15) and one count of Conspiracy in the Fourth Degree (New York Penal Law 105.10). (*Id.* at 53-54.) On July 30, 2008, Jackson was sentenced to fifteen years for each of the nine counts of Robbery in the First Degree, plus one year and four months for Conspiracy in the Fourth Degree. (Defs.' 56.1 ¶ 8.) Jackson's minimum aggregate sentence was set at twenty-five years, eight months and sixteen days. (*Id.* ¶ 9.)

### B. Officer Hughes

*2  By letter dated September 17, 2006, while a pretrial detainee, Jackson filed three criminal complaints against Police Officer Joseph Hughes with the Nassau County District Attorney's Criminal Complaint Unit. (*Id.* ¶ 10.) The complaints were based on Officer Hughes's allegedly inconsistent testimony at a pretrial suppression hearing. Jackson alleges that while testifying before the Grand Jury in December 2005, Officer Hughes stated that he observed five black males fleeing a four-door Buick wearing face masks. During a subsequent pretrial hearing on July 10, 2006, plaintiff cross-examined Officer Hughes. At that hearing,

Officer Hughes stated that only some of the males he observed were wearing face masks. The testimony at the July 10 pretrial hearing was as follows:

Q: This individual jumps out of the car. This is the individual that you pursued after?

A: Correct. * * *

Q: Did he have mask on? A: No mask.

Q: No mask. You testified in the grand jury that all five of the occupants of that car that fled had masks on?

A: I was incorrect about that. I stated that before.

Q: That information wasn't true?

A: It was incorrect. * * *

Q: You testified they all had masks on. Now, you're saying, you take the mask off one-

A: I believe in that statement. I was describing all the occupants. I said, they all had masks on. I was incorrect. I should have said, some had masks on.

(*Id.* ¶ 12 (citing Ex. AB at 485-86).)

Jackson also claims Officer Hughes made a "punishable false written statement" and committed the crime of "offering a false instrument for filing" by verifying and signing five felony complaints against plaintiff, although Officer Hughes had no personal knowledge of the information contained in those complaints and relied on information provided by other officers. (*Id.* ¶¶ 13-14.) According to Jackson, during the pretrial hearing and trial of his co-defendant Paul Henry, Officer Hughes testified that it was police procedure for officers to verify and swear to felony complaints even though they lacked knowledge of the underlying facts or crimes alleged therein. (Pl.'s Dep. at 61.) Jackson also alleges that Hughes testified to this at Jackson's own trial on cross-examination. (*Id.* at 61-62.)

On September 21, 2006, Assistant District Attorney ("ADA") Thurer transferred plaintiff's perjury complaint against Officer Hughes to ADA Barbara Kornblau, Chief of the Public Corruption Bureau. (*Id.* ¶ 15.) ADA Kornblau reviewed plaintiff's complaint against Officer Hughes. Because plaintiff's case was still pending and "the issues alleged by plaintiff all pertained to credibility," (Defs.' Ex. K ¶ 6), ADA Kornblau notified Daniel Looney, the

WESTLAW  © 2019 Thomson Reuters. No claim to original U.S. Government Works.

ADA prosecuting plaintiff, and plaintiff's attorney, Jeffrey Groder, of plaintiff's claims. The District Attorney's Office later informed Jackson that it also forwarded the case to the Internal Affairs Bureau of the Nassau County Police Department for administrative action at their discretion. (Pl.'s Dep. at 56; Defs.' 56.1 ¶ 16.) After receiving plaintiff's complaint from the District Attorney's Office, the Nassau County Police Department's Internal Affairs Bureau "determined that plaintiff's complaint against Officer Hughes for perjury was unfounded, since plaintiff had been convicted in a jury trial on February 6, 2007." (Defs.' 56.1 ¶ 18.)

C. Detective Comiskey

**\*3** Jackson also filed criminal complaints against Detective Joseph Comiskey with the Nassau County District Court. (Pl.'s Dep. at 58-59.) According to Jackson, Detective Comiskey committed "official misconduct" and perjury for allegedly failing to provide plaintiff with "exculpatory material" in July 2006 at a pretrial hearing, and for advising the court that he had turned over all of his notes when, according to Jackson, he had not done so. (Defs.' 56.1 ¶ 19.) ADA Steven L. Schwartz, Chief of the Nassau County District Attorney's District Court Bureau, investigated these two complaints against Detective Comiskey, and found the claims in them unfounded. (*Id.* ¶ 20.) Plaintiff was subsequently informed that the District Attorney's Office declined to prosecute these complaints. (*Id.*) These complaints were also reviewed by ADA Kornblau, who determined that Detective Comiskey's actions were not a crime. (*Id.* ¶ 22.) Subsequently, as she had done with the complaint against Officer Hughes, she forwarded the complaints to the Nassau County Police Department Internal Affairs Bureau. (*Id.* ¶ 22.) ADA Kornblau also sent a letter to Jeffrey Groder, plaintiff's trial counsel, informing him of plaintiff's allegations, since they pertained to an incident in which Groder was involved. (*Id.*)

D. The Instant Complaint

Jackson alleges eleven causes of action against the County of Nassau and two of its administrative arms, the Nassau County District Attorney's Office and the Nassau County Police Department, arguing that these entities had unconstitutional policies, practices, and customs that infringed his constitutional rights. Jackson asserts three claims specifically against the County of Nassau. First, he

alleges that the County had a policy of failing to discipline its employees for any alleged perjury or cover-ups with respect to evidence. (Compl. at 5; Pl.'s Dep. at 93.) Jackson's second cause of action claims that the County has a policy, practice, procedure and custom of failing to take steps to terminate the unconstitutional practices of "its legal subordinates," defendants Nassau County Police Department and the Nassau County District Attorney's Office. (Compl. at 5; Pl.'s Dep. at 93-94.) Jackson's third cause of action alleges that the County has failed to properly train and supervise its employees with regard to "the proper constitutional and statutory requirements in the exercise of their authority." (Compl. at 5; Pl.'s Dep. at 94.)

Jackson asserts four claims against the Nassau County Police Department. The fourth cause of action in Jackson's complaint alleges that the Nassau County Police Department has a policy that authorizes subordinates to falsely verify and file criminal felony complaints without "knowledge of or knowledge based upon belief" of the underlying facts. (Compl. at 5; Pl.'s Dep. at 95.) The fifth cause of action alleges that the Nassau County Police Department failed to properly train and supervise its employees in the processing of arrestees. (Compl. at 5-6.) Specifically, Jackson contends that, due to inadequate training, employees of the Nassau County Police Department do not realize "that they are not authorized to swear or fill out a felony complaint that they have absolutely no knowledge of." (Pl.'s Dep. at 96.) The sixth cause of action in Jackson's complaint claims that the Nassau County Police Department has an illegal practice or custom that condones and sanctions its employees who commit perjury, which is demonstrated by the fact that plaintiff, a pretrial criminal defendant, attempted to file criminal charges against the defendants' subordinates, but the defendants took no corrective actions. (*Id.* at 96-97; Compl. at 6.) Jackson's seventh cause of action alleges that the Nassau County Police Department, as a policy maker, has a defective and illegal policy whereby it does not correct or punish wrongdoings, such as those alleged in causes of action numbers four, five, and six. (Compl. at 6; Pl.'s Dep. at 97-98.)

**\*4** Jackson asserts his four final claims against the Nassau County District Attorney's Office. Jackson's eighth cause of action alleges that the Nassau County District Attorney's Office has a history and practice of ignoring criminal defendants' and arrestees' complaints, ignoring evidence of police misconduct, and shielding police officers and other assistant district attorneys from prosecution. (Compl. at 6.) Jackson's ninth cause of action alleges that the Nassau

County District Attorney's Office does not give "any credence to pretrial criminal defendants who seek to file and give any credence to pretrial criminal defendants that seek to commence criminal actions in the court against public officials." (*Id.* at 130.) Specifically, plaintiff contends that the Nassau County District Attorney's Office declines to investigate, arrest, and/or prosecute public officials when illegal conduct is alleged by pretrial or criminal defendants. (Compl. at 6-7.) Jackson's tenth cause of action alleges that the Nassau County District Attorney's Office has failed to punish the illegal practices and wrongdoings of their employees and the Nassau County Police Department. (Compl. at 7.) Jackson's eleventh and final cause of action contends that the Nassau County District Attorney's Office has a policy and procedure whereby the district court clerk does not submit or file any claims or complaints against a public official made by criminal defendants. (Compl. at 7.)

## II. PROCEDURAL HISTORY

Jackson filed the complaint in this action on January 17, 2007. The Court granted plaintiff leave to proceed *in forma pauperis* on January 31, 2007. Defendants filed an answer to the complaint on May 23, 2007. On March 14, 2008, plaintiff filed a motion to amend the complaint. This Court denied that motion on February 13, 2009. On May 15, 2009, defendants submitted their motion for summary judgment and provided *pro se* plaintiff with the notice required by Local Civil Rule 56.2. Defendant submitted supplemental papers to their motion on June 5, 2009. Plaintiff submitted opposition papers on May 28, 2009. [3] Defendants filed their reply to plaintiff's opposition on June 5, 2009. Plaintiff also submitted a motion for sanctions against defendants on June 10, 2009. Defendants submitted their opposition to the motion for sanctions on June 11, 2009. This matter is fully submitted.

[3]     Due to delay, it appears that plaintiff's response was not filed with the Court until June 11, 2009.

## III. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170 (2d Cir.2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones,* 396 F.3d 53, 69 (2d Cir.2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir.2004); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

**\*5** Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*' " *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson,* "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth " 'concrete particulars' " showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)). Accordingly, it is insufficient for a party opposing summary judgment " 'merely to assert a conclusion without supplying supporting arguments or facts.' " *BellSouth Telecomms., Inc. v. W.R. Grace & Co.,* 77 F.3d 603, 615 (2d Cir.1996) (quoting *Research Automation Corp.,* 585 F.2d at 33).

Where the plaintiff is proceeding *pro se,* the Court must "construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s]." *Weixel v. Bd. of Educ. of the City of N.Y.,* 287 F.3d 138, 145-46 (2d Cir.2002) (alterations in original) (quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000)). Though a *pro se* litigant's pleadings and other submissions are afforded wide latitude, a *pro se* party's

conclusory assertions, completely unsupported by evidence, are not sufficient to defeat a motion for summary judgment. *Shah v. Kuwait Airways Corp.,* --- F.Supp.2d ----, No. 08 Civ. 7371(GEL), 2009 WL 2877604, at *2 (S.D.N.Y. Sept. 9, 2009) ("Even a *pro se* party, however, 'may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful.' " (quoting *Auguste v. N.Y. Presbyterian Med. Ctr.,* 593 F.Supp.2d 659, 663 (S.D.N.Y.2009))).

## IV. DISCUSSION

### A. Proper Defendants

Plaintiff alleges specific causes of action against the Nassau County Police Department and Nassau County District Attorney's Office as defendants. However, "under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *See Davis v. Lynbrook Police Dep't,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002) (dismissing claim against Lynbrook Police Department); *see also Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002) ("Because plaintiff has named the City of White Plains as a defendant, any claims against the [White Plains Department of Public Safety] are redundant. WPDPS does not have its own legal identity, and therefore the claims against it are dismissed."); *Polite v. Town of Clarkstown,* 60 F.Supp.2d 214, 216 (S.D.N.Y.1999) ("[M]unicipal departments in this State-such as the Clarkstown Police Department-are not amenable to suit, and no claims can lie directly against them."); *Wilson v. City of New York,* 800 F.Supp. 1098, 1101 (E.D.N.Y.1992) ("The court also dismisses the claims against the New York City Police Department, which cannot be sued independently because it is an agency of the City of New York." (citations omitted)). Plaintiff's allegations against the Police Department are more properly raised in claims against Nassau County, which plaintiff has also brought in his first, second, and third causes of action. Accordingly, the Nassau County Police Department is dismissed as a defendant.

**\*6** For the same reason, plaintiff cannot bring claims against the Nassau County District Attorney's Office. *See Conte v. County of Nassau,* No. 06-CV-4746 (JFB)(ETB), 2008 WL 905879, at *1 n. 2 (E.D .N.Y. Mar. 31, 2008) (dismissing Section 1983 claims against the Nassau County District

Attorneys Office because the entity is an " 'administrative arm[ ]' of the same municipal entity-the County ... and thus lack[s] the capacity to be sued"). Plaintiff's allegations against the District Attorneys Office are more properly brought as claims against Nassau County. Plaintiff has brought substantially the same claims against the District Attorney's Office as he has brought against the County of Nassau. Accordingly, the Nassau Count District Attorney's Office is dismissed as a defendant in this case. [4] Because the plaintiff is proceeding *pro se,* the Court, in its discretion, does not dismiss plaintiff's fourth through eleventh causes of action in their entirety, but rather construes those claims, which are largely duplicative of causes of action one through three, as against the County of Nassau.

[4]     The Court further notes that it has previously denied plaintiff's attempt to amend his complaint to state claims against Lawrence Mulvey, the Commissioner of the Nassau County Police Department, and Kathleen Rice, the Nassau County District Attorney. *See Jackson v. County of Nassau,* No. 07-CV-0245 (JFB)(AKT), 2009 WL 393640 (E.D.N.Y. Feb. 13, 2009).

### B. Section 1983 Liability

As stated *supra,* Jackson has brought his claims pursuant to Section 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan,* 443 U.S. 137, 145 n. 3 (1979). [5] For claims under Section 1983, a plaintiff must prove that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999) (citation omitted). Here, the parties do not dispute that defendants were acting under color of state law. The question presented, therefore, is whether defendants' conduct deprived Jackson of the rights he asserts.

[5]     Specifically, Section 1983 provides as follows:
          Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

shall be liable to the party injured in an action at law....

42 U.S.C. § 1983.

Although *pro se* plaintiff alleges eleven separate causes of action against the County of Nassau and its administrative arms, at core, the claims alleged by plaintiff in his complaint are as follows: (1) the County of Nassau has a policy or practice of permitting its employees (or employees of its administrative arms) to commit perjury and a policy or practice of failing to discipline its employees who do commit perjury; (2) the County of Nassau has a policy or practice of permitting its police officers to falsely verify criminal complaints; and (3) the County of Nassau has a policy of not investigating, responding to, or prosecuting complaints or cross-criminal complaints of pretrial detainees and criminal defendants that allege crimes and misconduct against police officers and assistant district attorneys. (Plaintiff's Opposition (hereinafter "Opp.") at 14.)

Defendants argue that they are entitled to summary judgment on the grounds that Jackson has failed to provide any evidence that would raise a genuine issue of fact as to municipal liability for any of these claims. As set forth below, the Court agrees. First, plaintiff has failed to provide any evidence that there was an underlying constitutional violation with respect to his arrest and conviction, which would be a necessary element of any municipal liability claim. In fact, under well-settled Supreme Court and Second Circuit precedent, plaintiff's valid conviction precludes him from litigating any of his claims in the instant case because success on such claims (that is, demonstrating his constitutional rights were violated in connection with the investigation and prosecution of his case) would necessarily implicate the unconstitutionality of his conviction. Second, plaintiff has provided absolutely no evidence of an unconstitutional policy or custom of the County of Nassau and, thus, his municipal liability claims against the County cannot survive summary judgment.

### (1) Plaintiff Cannot Demonstrate Violation of His Constitutional Rights

**\*7** To bring a successful Section 1983 claim, plaintiff must first demonstrate that he was injured as a result of a constitutional violation. In the instant case, plaintiff cannot do so. First, Supreme Court precedent prevents a prisoner, like Jackson, from bringing a Section 1983 claim where success on the claim necessarily would implicate the

unconstitutionality of the prisoner's conviction or sentence. Second, even assuming this rule did not apply, plaintiff has presented no evidence of any constitutional violations relating to his conviction.

#### a. *Heck v. Humphrey*

As a threshold matter, although not explicitly raised by defendants, plaintiff's claims fail as a matter of law, by virtue of his conviction. Specifically, the Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477 (1994), entitles defendants to a decision in their favor as a matter of law with respect to these claims.

#### i. The *Heck* Rule

In *Heck v. Humphrey,* the Supreme Court "confronted the question of whether, given the overlap between § 1983 and the federal habeas corpus statute, a prisoner seeking civil damages may proceed with a § 1983 claim where success on the claim necessarily would implicate the unconstitutionality of the prisoner's conviction or sentence." *Amaker v. Weiner,* 179 F.3d 48, 51 (2d Cir.1999) (citing *Heck,* 512 U.S. at 480-90). The Supreme Court in that case explained:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in

favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 486-87 (footnote omitted) (emphasis in original); *see also Wilkinson v. Dotson,* 544 U.S. 74, 81 (2005) ("Heck specifies that a prisoner cannot use § 1983 to obtain damages where success *would* necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence." (emphasis in original)).

Thus, pursuant to *Heck,* courts routinely dismiss claims brought under Section 1983 when such claims bear on the validity of an underlying conviction or sentence. *See, e.g., Guerrero v. Gates,* 442 F.3d 697, 703-04 (9th Cir.2006) (holding that Heck bars plaintiff's § 1983 claims of wrongful arrest, malicious prosecution, and conspiracy); *Amaker,* 179 F.3d at 51-52 (holding that *Heck* applies to Section 1983 conspiracy); *Perez v. Cuomo,* No. 09 Civ. 1109(SLT), 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 17, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction.... Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, and must be dismissed as to all defendants[.]") (internal quotation marks and citations omitted); *Younger v. City of N.Y.,* 480 F.Supp.2d 723, 730 (S.D.N.Y.2007) (holding that plaintiff's claims for false arrest/imprisonment and malicious prosecution were barred by his plea of guilty pursuant to *Heck); cf. Jovanovic v. City of N.Y.,* No. 04 Civ. 8437, 2006 WL 2411541, at * 12 (S.D.N.Y. Aug. 17, 2006) (applying *Heck* to a Section 1983 claim for denial of the right to a fair trial in the context of a statute of limitations issue).

### ii. Application

**\*8** Here, as stated *supra,* Jackson was convicted after a trial in state court of nine counts of Robbery in the First Degree and one count of Conspiracy in the Fourth Degree on July 30, 2008. It is apparent that Jackson is still incarcerated for this conviction and, to date, has been unsuccessful in challenging his conviction or has not even attempted to do so. Under these circumstances, the Supreme Court's

holding in *Heck* precludes plaintiff from bringing claims in this Court under Section 1983 for municipal liability, because a plaintiff bringing such claims must demonstrate a constitutional violation in connection with his conviction, and a successful result in this case on any one of plaintiff's claims would bear on the validity of that underlying conviction.

Indeed, *Heck'*s application to the instant matter is straightforward. Plaintiff's complaint claims that he was "subsequently indicted based upon officer Hughes['s] 'inaccurate' testimony." (Compl.¶ 9.) Plaintiff also contends that during his pretrial hearings there was extensive "late disclosure of [exculpatory] material." (*Id.* ¶ 11.) Although it is true that not all claims brought under Section 1983 necessarily implicate the validity of the underlying conviction, in this case, plaintiff's assertions of perjury, withheld evidence, and falsely sworn documents during his trial by police officers do necessarily implicate the validity of his conviction and are thus barred by the *Heck* rule. [6] *See, e.g., McCloud v. Jackson,* 4 F. App'x 7, 10 (2d Cir.2001) ("[Plaintiff] could not assert [municipal liability] claims under § 1983 against the county defendants for holding him in jail because any claim for money damages which, as here, necessarily imputes the invalidity of a conviction, is barred under *Heck v. Humphrey,* 512 U.S. 477, 484, 486-87 (1994), until such time as the conviction is vacated or otherwise invalidated."); *Channer v. Mitchell,* 43 F.3d 786, 787-88 (2d Cir.1994) (per curiam) (affirming *Heck*-based dismissal of claim that police officers committed perjury and coerced witnesses to identify plaintiff wrongfully); *Williams v. Schario,* 93 F.3d 527, 529 (8th Cir.1996) ("[A] judgment in Williams's favor on his damages claim that defendants engaged in malicious prosecution and presented perjured testimony would 'necessarily imply the invalidity of his conviction or sentence' " (quoting *Heck,* 512 U.S. at 487)); *Smithart v. Towery,* 79 F.3d 951, 952-53 (9th Cir.1996) (per curiam) (affirming *Heck*-based dismissal of § 1983 claim of conspiracy to "bring unfounded criminal charges" against plaintiff; *Jasper v. Fourth Court of Appeals,* No. 08 Civ. 7472(LAP), 2009 WL 1383529, at *1 (S.D.N.Y. May 18, 2009) ("The Court liberally construes this complaint as asserting that plaintiff was denied his constitutional right to a fair trial. [However, s]ince plaintiff's conviction remains valid, plaintiff's fair trial claim is not cognizable under § 1983, and it must be dismissed as to all defendants[.]"); *Perez,* 2009 WL 1046137, at *7 ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction.... Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under

§ 1983, and must be dismissed as to all defendants[ .]") (internal quotation marks and citations omitted); *Fernandez v. Holzbach,* No. 3:04 Civ. 1664(RNC), 2007 WL 1467182, at *1 (D.Conn. May 15, 2007) (holding that plaintiff's allegations that his convictions were based on perjury and fabricated evidence pursuant to a conspiracy to violate his federal rights "necessarily impl[ied] that he was wrongly convicted" and could not be litigated "until he show[ed] that the convictions have been invalidated"); *Duamutef v. Morris,* 956 F.Supp. 1112, 1115-16 (S.D.N.Y.1997) (dismissing § 1983 claims for, *inter alia,* malicious prosecution, false arrest, and perjury during trial due to a failure to state a claim under *Heck* because of the valid underlying criminal conviction). Thus, in order to bring a cognizable Section 1983 claim in this Court for the harms alleged, plaintiff must first establish the invalidity of his state court conviction.

6      With respect to plaintiff's claim that the County of Nassau has a policy of declining to investigate criminal complaints filed by pretrial detainees and criminal defendants, as discussed *infra,* plaintiff has failed to present any evidence that his claim was not investigated, whereas the County has presented substantial evidence demonstrating that plaintiff's claim was, in fact, investigated. Moreover, the prosecution of plaintiff's criminal complaints against Officer Hughes and Detective Comiskey would have implicated the validity of his underlying conviction, in contravention of the *Heck* rule. Accordingly, *Heck* can be construed to preclude all of plaintiff's Section 1983 claims.

**\*9** The fact that plaintiff is seeking to assert municipal liability claims against the County of Nassau, rather than against individual defendants, does not vitiate the application of the *Heck* rule to plaintiff's claims. To prevail against the County of Nassau in his Section 1983 action under any of these theories, a plaintiff must plead and prove: (1) there was an official municipal policy or custom; and (2) that policy or custom caused him to be subjected to a denial of a constitutional right. *See Monell v. Dep't Soc. Servs.,* 436 U.S. 658, 690-91 (1978). There must be a "direct causal link" between the alleged municipal action and the deprivation of the plaintiff's constitutional rights. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989); *Vippolis v. Vill. of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985); *see also Lynch v. Suffolk County Police Dep't,* No. 07-3684-cv, 2009 WL 3287565, at *2 (2d Cir. Oct. 14, 2009) ("In order to prevail on a claim against a municipality under *Monell,* a plaintiff must allege, among other things, that a 'municipal policy of some nature caused a constitutional tort.' " (citations omitted)). In the instant case, because the Court finds as a matter of

law on summary judgment that *Heck v. Humphrey* prevents a finding that a constitutional violation was committed against plaintiff by any of the defendants, *see supra,* no *Monell* claim can lie against the County of Nassau pursuant to § 1983.[7] *See, e.g., Lynch,* 2009 WL 3287565, at *2 ("Insofar as plaintiff alleges that a municipal policy caused prosecutorial misconduct in the trial that led to his felony convictions, plaintiff's claim seeks to 'recover damages for [an] allegedly unconstitutional conviction or imprisonment' and is barred by *Heck,* 51 U.S. at 486." (alteration in original)); *Segal v. City of N.Y.,* 459 F.3d 207, 219 (2d Cir.2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."); *accord Vippolis,* 768 F.2d at 44 ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that the municipality was, in the language of the statute, the 'person who ... subjected, or cause[d][him] to be subjected,' to the deprivation of his constitutional rights." (citing 42 U.S.C. § 1983)); *see also Ewolski v. City of Brunswick,* 287 F.3d 492, 516 (6th Cir.2002) ("Having concluded that the Appellant has not shown a genuine issue of material fact as to any of the asserted constitutional claims, we therefore conclude that the district court correctly dismissed the Appellant's municipal liability claims.").

7      In any event, summary judgment would also be warranted in favor of the County of Nassau because, as discussed *infra,* plaintiff has failed to proffer any evidence of a policy, custom, or failure to train, that led to any alleged constitutional violation.

In sum, even accepting plaintiff's allegations as true and drawing all reasonable inferences in plaintiff's favor, the Court finds that plaintiff cannot successfully bring a claim because the *Heck* rule, as a matter of law, prevents plaintiff from demonstrating a violation of his constitutional rights, which is a necessary predicate to any municipal liability claim pursuant to Section 1983.

### b. No Evidence of Violation of Plaintiff's Constitutional Rights

**\*10** Moreover, even assuming that the validity of plaintiff's underlying conviction was not implicated by his claim that the County of Nassau had a policy of ignoring criminal complaints filed by pretrial detainees and criminal defendants, he has presented no evidence to support his contention that the County did not investigate his claims.

Thus, because there is no evidence from which a rational jury could find a violation of his constitutional rights, there is no predicate for his municipal liability claim.

The only forms of evidence offered by plaintiff on this issue are his bald assertions and the fact that the County did not prosecute Officer Hughes or Detective Comiskey for their alleged misconduct in relation to plaintiff's trial. Plaintiff's exhibits consist merely of copies of the letters and complaints that he filed with Nassau County entities. Plaintiff presents no evidence to contradict the evidence put forth by defendants, which demonstrates that plaintiff's complaints were investigated. In two affidavits submitted by ADA Kornblau, former Bureau Chief of the District Attorney's Public Corruption Bureau, she asserts that she personally investigated plaintiff's complaints against the officers. (*See* Defs.' Exs. K, X.) According to ADA Kornblau's affidavit, upon investigating Jackson's complaints, "[it] was clear from the minutes that [Jackson's] criminal attorney raised the issue of the failure to turn over *Rosario* material to the trial court, which is the proper venue for such an allegation." (Defs.' Ex. K ¶ 4.) Subsequently, ADA Kornblau determined that the remainder of plaintiff's claims were unfounded, and declined to prosecute the matter. (*See id.* ¶ 4 ("Subsequent to reviewing Jackson's complaint and after determining that the [complaint] did not allege conduct which constituted a crime, I referred the matter to the Internal Affairs Bureau of the Nassau County Police Department ...."); *id.* ¶ 6 ("In view of the fact that the trial of this case was still pending, and the issues alleged by [Jackson] all pertained to credibility, I notified Daniel Looney, the Assistant District Attorney assigned to Jackson's prosecution, as well as defense counsel, Jeffrey Groder, of Jackson's claims. I also forwarded Jackson's complaint to the Internal Affairs Bureau of the Nassau County Police Department for whatever administrative action they deemed necessary.").) In a separate affidavit, ADA Steven L. Schwartz, Bureau Chief of the District Court Trial Bureau in the Nassau County District Attorney's Office, states that he personally investigated plaintiff's proposed accusatory instruments and found them to be unfounded; accordingly, they were not prosecuted. (Defs.' Ex. Q ¶ 9.) [8]

8    The Court further notes that in the absence of any evidence that the Nassau County District Attorney's Office failed to investigate Jackson's complaints, the decision not to prosecute those complaints is protected by prosecutorial immunity. *See, e.g., Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990) ("[U]nless a prosecutor

proceeds in the clear absence of all jurisdiction, absolute immunity exists for those prosecutorial activities intimately associated with the judicial phase of the criminal process.... This protection extends to the decision to prosecute as well as the decision not to prosecute." (internal quotations and citations omitted)).

Here, as in *Staley v. Grady,* 371 F.Supp.2d 411 (S.D.N.Y.2005), "[s]imply because defendants disagreed with plaintiff as to the merits of the proposed [complaint] and chose not to prosecute the same, does not give rise to an equal protection violation." *Id.* at 417. Here, too, the Nassau County District Attorney's Office received Jackson's criminal complaints, reviewed and investigated them, and declined to prosecute them based upon the conclusion that the complaints were without merit. (*See* Defs.' Exs. K, Q.)

**\*11**  In short, due to plaintiff's inability to set forth any evidence from which a rational jury could find a deprivation of his constitutional rights, plaintiff's *Monell* claims against the County of Nassau cannot survive summary judgment.

### (2) Plaintiff Has Set Forth No Evidence to Support a *Monell* Claim

Even assuming *arguendo* that plaintiff had put forth evidence to create a genuine issue of fact on whether his constitutional rights were violated, his municipal liability claims still cannot survive summary judgment because there is no evidence of a policy, practice or custom to support a finding by a rational jury of municipal liability under *Monell*.

### i. Applicable Standard

Municipalities cannot be held vicariously liable for the actions of an employee under § 1983. *Monell,* 463 U.S. at 691 ("[A] municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a muncipality cannot be held liable under § 1983 on a respondeat superior theory."). Thus, "[a] municipality will not be held liable under Section 1983 unless the plaintiff can demonstrate that the allegedly unconstitutional action of an individual law enforcement official was taken pursuant to a policy or custom 'officially adopted and promulgated by that [municipality's] officers.' " *Abreu v. City of N.Y.,* No. 04-CV-1721 (JBW), 2006 U.S. Dist. LEXIS 6505, at \*11 (E.D.N.Y. Feb. 22, 2006) (quoting *Monell,* 436 U.S. at 690) (alteration in original). " '[M]unicipal liability under

§ 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers ." *City of Canton,* 489 U.S. at 389 (quoting *Pembaur v. Cincinnati,* 475 U.S. 469, 483-84 (1986)). Thus, an individual's misconduct will not result in *respondeat superior* liability for his supervisors absent specific allegations that he acted pursuant to an official policy or custom. *Ricciuti v. N.Y.C. Transit A uth .,* 941 F.2d 119, 123 (2d Cir.1991). However, "[a] court may draw the inference of the existence of a policy or custom 'when a plaintiff presents evidence that a municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.' " *Caidor v. M & T Bank,* No. 05-CV-297 (FSJ), 2006 U.S. Dist. LEXIS 22980, at *35-36 (N.D.N.Y. Mar. 27, 2006) (quoting *Grifin-Nolan v. Providence Wash. Ins. Co.,* No. 04-CV-1453 (FJS), 2005 U.S. Dist. LEXIS 12902, at *10 (N.D.N.Y. June 20, 2005) (quotation omitted)). But, " 'the mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.' " *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995) (quoting *Dwares v. City of N.Y.,* 985 F.2d 94, 100 (2d Cir.1993)).

### ii. Application

Even if plaintiff could prove that his constitutional rights were violated, whether at trial or by the subsequent failure to prosecute his criminal complaint for the actions by municipal actors at his trial, this is not sufficient to demonstrate a policy or custom by the County of Nassau. "[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti,* 941 F.2d at 123; *see also Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *McAllister v. N.Y.C. Police Dep't,* 49 F.Supp.2d 688, 706 (S.D.N.Y.1999) (same); *Palmer v. City of Yonkers,* 22 F.Supp.2d 283, 290 (S.D.N.Y.1998) ("[T]he court will not infer the existence of a municipal policy from a single incident."). As discussed *supra,* " 'the mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact to support, at least circumstantially, such an

inference.' " *Zahra,* 48 F.3d at 685 (quoting *Dwares,* 985 F.2d at 100). [9]

[9]  Plaintiff contends that the persons who violated his constitutional rights were policymakers. (Opp. at 14 ("All of plaintiff's claims were made against the 'policy makers' and not against employees below the policy making level.").) First, as discussed *supra,* plaintiff's claims regarding alleged perjury, withholding of evidence, or falsely verified complaints relating to his trial are barred by *Heck.* In addition, however, plaintiff presents no evidence in support of this argument. Moreover, for purposes of plaintiff's causes of action regarding the failure to investigate his criminal complaints against those persons, plaintiff would need to allege that the persons who allegedly failed to investigate his accusations were policymakers. Plaintiff does not do so. Instead, he acknowledges that the policy maker is District Attorney Kathleen Rice, and the individuals who submitted the defendants' supporting affidavits-those who investigated plaintiff's allegations-are subordinates to the policy maker. (Opp. at 15.) For the reasons contained in our earlier opinion, this Court declines to add District Attorney Rice as a defendant in this action. *See Jackson,* 2009 WL 393640, at *3-5. In light of Jackson's repeated argument that the actions of the Nassau County District Attorney's Office's and Nassau County Police Department's actions were part of a policy, procedure, or custom, the Court interprets his complaint and opposition papers to argue municipal liability based only on a theory of municipal policy, procedure, or custom, and not on a theory of unconstitutional action by a policymaker.

**\*12** Plaintiff's complaint, statements at his deposition, and opposition papers to defendants' motion for summary judgment contain vague allegations regarding the existence of a policy or procedure by the County of Nassau of refusing to investigate criminal complaints of pretrial detainees and criminal defendants. (*E.g.,* Opp. at 5-6 ("Plaintiff also stated that he never received any response or letters of acknowledgment from either office though he wrote numerous letters inquiring about the status of his complaints and criminal charges."); Opp. at 6 ("The complaints were never investigated and plaintiff never received any response."); Opp. at 7 ("During the deposition plaintiff continuously testified to the fact that no one ever investigated nor responded to his complaints and grievances.").) These conclusory allegations as to the existence of a policy or custom are insufficient to withstand summary judgment. *See Bishop v. Toys "R" Us-NY, LLC,* No. 04 Civ. 9403(PKC), 2009 WL 440434, at *4 (S.D.N.Y.

Feb. 19, 2009) ("[P]roceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." (quoting *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1995)). Indeed, mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Id* . (citing *Matsushita,* 475 U.S. 574, 587 (1986)); Order, *McCrary v. County of Nassau,* No. 06 CV 4982(SJF)(ARL) (E.D.N.Y. Sept. 22, 2008) ("Magistrate Judge Lindsay properly found that [p]laintiff had proffered no evidence to support his assertion that a custom, policy and/or practice, which precludes the consideration of criminal charges brought by an accused against police officers and assistant district attorneys, existed" when plaintiff merely asserted that a police officer was "aware of alleged police misconduct regarding Plaintiff's apprehension, [the] affidavits in support of County Defendants' summary judgment motion were not sufficiently detailed, and that there was no record of any investigation having been conducted by [County Defendants] in regards to the [complaints]"). Plaintiff has presented no actual evidence of a policy or custom whereby the County would decline to review the criminal complaints of pretrial detainees or criminal defendants.

The County of Nassau, however, has put forward extensive evidence regarding the policies that it has in place to review criminal complaints filed by all citizens. In two separate affidavits, ADA Kornblau affirms that the County does investigate criminal complaints against police officers and ADAs-including those made by pretrial and criminal defendants: "[M]any of the [District Attorney's Public Corruptions Bureau's] cases are referred from members of the public, including direct complaints of police misconduct that the Bureau receives from defendants and/or their attorneys." (Defs.' Ex. X. ¶ 5.) Similarly, "[t]o facilitate the investigation into complaints by incarcerated individuals including pretrial detainees, the Public Corruption Bureau maintains a hotline in the Nassau County Correctional Center for the purpose of allowing inmates to file complaints directly with the Public Corruption Bureau, without having to have their complaints reviewed first by any other entity, agency, or person." (*Id.*) Moreover, ADA Kornblau's affidavit states that "[e]ach criminal complaint is afforded individual attention and investigation ... [and if] after investigation, it is determined that a complaint is supported by credible evidence, the Nassau County District Attorney's Public

Corruption Bureau will recommend prosecution, after which those cases will be prosecuted in criminal court." (*Id.* ¶¶ 6-7.)

**\*13** The County of Nassau has also submitted evidence that the system utilized by the Nassau County District Attorney's Office for examining criminal complaints filed by private citizens does not differentiate between complaints based on the individual who files the complaint. ADA Kornblau explains that:

> Complaints are retrieved from within the computerized complaint system in one of three ways: (1) a complainant's name; (2) a defendant's name; or, (3) a complaint number. Therefore, there is no way to retrieve criminal complaints made specifically by pretrial detainees from within the computer complaint system since complaints are placed into the system without complainant classification (e.g., civilian, pretrial detainee, police officer, etc.).

(*Id.* ¶ 8; *see also* Defs.' 56.1 ¶ 47; Defs.' Ex. W ¶ 11.) In plaintiff's opposition papers, he stated that he did not dispute these facts. (Opp. at 12.)

The County of Nassau also submitted an affidavit from ADA Warren Thurer, the Bureau Chief of the Nassau County Criminal Complaint Unit. According to ADA Thurer, "[s]pecifically with respect to allegations of an assistant district attorney's or police officer's criminal conduct, such allegations will be individually investigated and if appropriate, will be forwarded to the Public Corruption Bureau of the Nassau County District Attorney's Office." (Defs.' Ex. W ¶ 10; *see also* Defs' Ex. Q ¶ 10 ("There is no policy, practice, or custom within the Nassau County District Attorney's Office that precludes the consideration, investigation, and/or acceptance of criminal cross-complaints brought by an accused against police officers and/or assistant district attorneys based upon the status of the complainant as a pretrial detainee").) An affidavit provided by ADA Steven L. Schwartz, Bureau Chief of the District Court Trial Bureau in the Nassau County District Attorney's Office, states that:

All proposed accusatory instruments are given individual attention and investigation. There is no distinction made for the status of the complainant and pretrial detainees are not treated any differently than other individuals proposing accusatory instruments to be filed. Each proposed accusatory instrument is investigated for possible criminalityand, if appropriate, any case may be forwarded and assigned to one of the investigative bureaus within the District Attorney's Office, or prosecuted within the District Attorney's District Court Bureau. If the allegations in a proposed accusatory instrument are determined to be unfounded, I send a letter to the Associate Court Clerk stating that the District Attorney's Office has declined to prosecute the matter.... Specifically, with respect to allegations of an assistant district attorney's or police officer's criminal conduct, such allegations are individually investigated and if appropriate, are forwarded to the Nassau County District Attorney's Office Public Corruption Bureau.

**\*14** (Defs.' Ex. Q ¶¶ 7-8.) Plaintiff has presented no evidence to contradict the information contained in these affidavits or to suggest otherwise.

Nor has plaintiff presented evidence of a policy or custom of committing perjury, withholding evidence, or falsely verifying criminal complaints. Plaintiff has merely asserted that "he can testify based upon personal knowledge to the undisputed facts and that he has credible witnesses and documental evidence to support said factual claims." (Opp. at 11.) Plaintiff has not alleged with specificity other instances of perjury, withheld evidence, or falsified complaints, nor has he presented any other evidence of police officers' commission of perjury, withholding of evidence, or filing of falsely sworn complaints. The County of Nassau, by contrast, has put forward evidence regarding its arrest processing

procedures and arrest records. (*See* Defs.' Ex. Z.) Nowhere in the County's arrest policies is false verification of criminal complaints, withholding of evidence, or perjury authorized. Furthermore, the "collective knowledge doctrine" or "fellow officer rule" permits arresting officers to rely upon other law enforcement officers' knowledge to justify probable cause to arrest. *See Savino v. City of New York,* 331 F.3d 63, 74 (2d Cir.2003) ( [F]or the purpose of determining whether an arresting officer had probable cause to arrest, 'where law enforcement authorities are cooperating in an investigation, ... the knowledge of one is presumed shared by all.' "); *Stokes v. City of New York,* No 05-CV-0007 (JFB) (MDG), 2007 U.S. Dist. LEXIS 32787, at \*17 (E.D.N.Y. May 3, 2007) ("[U]nder the collective knowledge doctrine, defendant Buskey is permitted to rely on knowledge obtained by any other officers during the investigation"); *Phelps v. City of New York,* No. 04 CIV. 8570(DLC), 2006 U.S. Dist. LEXIS 42926, at \*9-10 (S.D.N.Y. June 29, 2006) ("The rationale behind the [collective knowledge] doctrine is that in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates. Although the doctrine is typically used to establish probable cause for the purpose of admitting evidence at trial, it is equally applicable here. As the Supreme Court has recognized, police officers called upon to aid other officers in making an arrest are entitled to assume that the officers requesting aid have acted properly." (internal quotations and citations omitted)). Accordingly, it is not improper for an officer to verify a criminal complaint based upon facts learned from another officer and plaintiff has put forth no evidence of a policy, practice, or custom of Nassau County police officers falsifying information in criminal complaints or committing perjury.

Moreover, the County of Nassau has put forward an affidavit from a former Nassau County ADA, who investigated and prosecuted a complaint against a Nassau County Police Officer in an unrelated matter that alleged that the officer had committed perjury by falsely testifying before the grand jury. (Defs.' Ex. Y ¶¶ 2-5.) That police officer was prosecuted and convicted of perjury in the third degree. (*Id.* ¶ 8.) In the face of this undisputed evidence of the County prosecuting perjury when it is uncovered, plaintiff has not identified any specific instances of police officers' commission of perjury that were not prosecuted.

**\*15** In sum, the undisputed facts demonstrate the following: (1) plaintiff's conviction prevents him from disputing any alleged constitutional violations relating to his trial; (2) defendants did investigate plaintiff's criminal complaints regarding Officer Hughes's and Detective Comiskey's alleged behavior; (3) defendants do have in place policies and procedures whereby criminal complaints filed by private citizens are investigated-even if those citizens are pretrial detainees or criminal defendants; and (4) the County of Nassau does not have a policy or procedure of permitting its employees to commit perjury, to falsely verify criminal complaints, or to withhold exculpatory evidence at trial. In short, plaintiff has failed to provide any factual support for his conclusory allegations that the defendants have engaged in unconstitutional policies or procedures. Accordingly, defendant's motion for summary judgment is granted.

### C. Motion for Sanctions

The Court has also reviewed plaintiff's motion for sanctions and, for the reasons stated throughout this opinion, finds plaintiff's claims to be without merit. Accordingly, plaintiff's motion for sanctions is also denied. *See S.E. C. v. Shainberg,* 316 F. App'x 1, 2 (2d Cir.2008).

### V. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment in its entirety. Because the Court grants defendants' motion for summary judgment in its entirety, it also denies plaintiff's motion for sanctions against defendant.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45 (1962).

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2010 WL 335581

---

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 2868231
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Quentin LA GRANDE, Plaintiff,
v.
TOWN OF BETHLEHEM POLICE
DEPARTMENT, et al., Defendants.

No. 1:08–CV–0738 (LEK/DRH).
|
Sept. 1, 2009.

**Attorneys and Law Firms**

Quentin La Grande, Albany, NY, pro se.

Nannette R. Kelleher, Bailey, Kelleher Law Firm, Albany, NY, for Defendants.

***DECISION AND ORDER***

LAWRENCE E. KAHN, District Judge.

**\*1** Plaintiff *pro se* Quentin La Grande ("Plaintiff" or "La Grande") commenced the instant action against Defendants Robert Helligrass [1], Stephen Kraz [2] and the Town of Bethlehem Police Department (collectively, "Defendants") pursuant to 42 U.S.C. § 1983. Complaint (Dkt. No. 1). Presently before this Court is Defendants' Motion to dismiss (Dkt. No. 13) and Plaintiff's Motion for summary judgment (Dkt. No. 12). For the following reasons, Defendants' Motion to dismiss is granted and Plaintiff's Motion for summary judgment is denied.

[1]    Incorrectly named in the Complaint as "R.J. Helliergrass." *See generally* Complaint (Dkt. No. 1).

[2]    Incorrectly named in the Complaint as "William Craz." *See generally* Complaint.

**I. BACKGROUND**

According to Plaintiff, "[o]n April 1, 2008 I was threaten by Patrol Officer William Craz. Patrol Officer called me a 'Nigger,' and also threaten to cause bodily harm to me. On April 2, 2008 I met with Seargent R.J. Helliergrass and was interogated, and racial harrassed. On or about April 5, 10, 15,

May 6, 8, 10, 15, and June 6, 2008, I have been followed by the Bethlehem Police Department." Compl. at 2. Plaintiff's jurisdictional statement asserts that the Complaint is being brought pursuant to 42 U.S.C. § 1983. *Id.* at 1.

In lieu of filing an answer, on March 11, 2009, Defendants filed the Motion to dismiss presently before the Court. Mot. to Dismiss (Dkt. No. 13). Plaintiff also filed a Motion for summary judgment on February 24, 2009, which is now before the Court. Mot. for Sum. Judg. (Dkt. No. 12).

**II. DISCUSSION**

**A. Defendants' Motion to Dismiss**

**a. Standard of Review**

In order to withstand a motion to dismiss, "a [pleading] must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A party must plead with such factual detail so as to sufficiently " 'nudge [ ][its] claims ... across the line from conceivable to plausible.' " *Iqbal,* 129 S.Ct. at 1950–51 (quoting *Twombly,* 550 U.S. at 570). While stating a claim does not require the recitation of detailed factual allegations, it does, however, require facts sufficient to state a claim to relief that is *prima facie* plausible. *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 555). The Court must accept the allegations in the well-pleaded complaint as true, *Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and draw all inferences in favor of the non-moving party. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1973); *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 154 (2d Cir.2006); *King v. Am. Airlines, Inc.,* 284 F.3d 352, 356 (2d Cir.2002).

In assessing the legal sufficiency of the Complaint, the Court is mindful that La Grande is a *pro se* litigant and his submissions are subject to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). The Court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments they suggest.' " *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999); *see Hemphill v. New York,* 380 F.3d 680, 687 (2d Cir.2004) (" "It is well-established that 'when a

plaintiff proceeds *pro se* the court is obligated to construe his pleadings liberally, particularly when they allege civil rights violations' ") (quoting *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004)). However, a plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983).

### b. Analysis

**\*2** Defendants move to dismiss Plaintiff's Complaint in its entirety pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure.[3] Mot. to Dismiss (Dkt. No. 13) at 1. Defendants specifically argue that all causes of action against the Town of Bethlehem Police Department must be dismissed as it is not a legal entity subject to suit under 42 U.S.C. § 1983 and further that Plaintiff's entire Complaint should be dismissed for failing to state a cause of action. *Id.* at 4.

[3]   Defendants argue, alternatively, that Plaintiff's Complaint should be dismissed pursuant to 28 U.S.C. § 1915(e) and for failing to adhere to Rule 8(a) of the Federal Rules of Civil Procedure. The Court need not address these arguments as it is dismissing Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

### i. Town of Bethlehem Police Department

The Town of Bethlehem moves to dismiss Plaintiff's Complaint on the ground that it is not susceptible to suit under 42 U.S.C. § 1983. While a municipality may be susceptible to suit under 42 U.S.C. § 1983, a municipal police department is not. *See Walker v. Waterbury Police Dep't.,* 08–cv–959 (JG)(AKT), 2009 U.S. Dist. LEXIS 7933, at \*5, 2009 WL 261527 (E.D.N.Y. Feb. 4, 2009). "Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Id.* (citing *Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002)). Accordingly, claims asserted under 42 U.S.C. § 1983 will be dismissed against a municipality's police department. *See Walker,* 2009 U.S. Dist. LEXIS 7933, at \*5, 2009 WL 261527 (internal citation omitted); *see also Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999).

Here, Plaintiff has sued the Town of Bethlehem Police Department along with two individual officers of the department. *See generally* Compl. Plaintiff's Complaint asserts that it is brought pursuant to 42 U.S.C. § 1983 and does

not provide any other basis for the claims. *Id.* at 1. Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, Plaintiff's Complaint is dismissed as against the Town of Bethlehem Police Department.

Even assuming *arguendo* that Plaintiff's claims against the Town of Bethlehem Police Department can be construed as a claim against the Town of Bethlehem, Plaintiff's Complaint would still be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

In order to state a cause of action for municipal liability under 42 U.S.C. § 1983, "a plaintiff must allege that the municipality has adopted a custom or policy which is the moving force behind the [alleged constitutional violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 649 (N.D.N.Y.1997). A municipality cannot be held liable on the basis of *respondeat superior* and "a single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Campanaro v. City of Rome,* 999 F.Supp. 277, 281 (N.D.N.Y.1998); *see also Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993).

Plaintiff's Complaint is devoid of any allegations that the Town of Bethlehem had a policy or custom of violating constitutional rights, nor does plaintiff allege or even allude that the Town was deliberately indifferent to his constitutional rights. The complete failure to plead such warrants dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as the Complaint fails to state a cause of action for which relief can be granted under 42 U.S.C. § 1983. *See Campanaro,* 999 F.Supp. at 281; *Dwares,* 985 F.2d at 100.

### ii. Defendants Kraz and Helligrass

**\*3** La Grande's Complaint alleges that between April and June 2008, he was "racially harassed," "threatened" and "interrogated" by Defendants Kraz and Helligrass, two officers of the Bethlehem Police Department. Compl. at 2. Specifically, La Grande alleges that on multiple occasions the officers addressed him with a racial epithet and followed him through town. *Id.* It is well settled in this Circuit that "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Murray v. Pataki,* No. 9:03–cv–1263, 2007 U.S. Dist. LEXIS 26959, at \*22, 2007 WL 956941 (N.D.N.Y. Mar. 29, 2007) (Kahn, J.) (quoting *Gill v. Hoadley,* 261 F.Supp.2d 113, 129 (N.D.N.Y.2003)) (collecting cases). "[V]erbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or

reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Murray,* 2007 U.S. Dist. LEXIS, at * 22 (quoting *Moncrieffe v. Witbeck,* 2000 U.S. Dist. LEXIS, at *3, 2000 WL 949457 (N.D.N.Y. June 29, 2000)); *see also Zeno v. Cropper,* 650 F.Supp. 138, 141 (S.D.N.Y.1986) ("vile and abusive language ... no matter how abhorrent or reprehensible cannot form the basis for a § 1983 claim) (internal citation and quotation omitted). Further, "threats do not amount to violations of constitutional rights." *Murray,* 2007 U.S. Dist. LEXIS, at *23 (quoting *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995)).

In this case, Plaintiff's claim for verbal harassment in the form of racial slurs and threats is not actionable under § 1983 and, therefore, fails to state a claim entitled to relief. Compl. at 2.

### B. Plaintiff's Motion for Summary Judgment

Even assuming *arguendo* that this Court did not grant Defendants' Motion to dismiss, Plaintiff's Motion for summary judgment would still be denied. Under the Local Rules, *"all* motions ... require a memorandum of law, supporting affidavit, and proof of service on all the parties." N.D.N.Y. L.R. 7.1(a) (emphasis added). "All memoranda of law shall contain a table of contents and, wherever possible, parallel citations." *Id.* at 7 .1(a)(1). Further "[a]ny motion for summary judgment shall contain a Statement of Material Facts ... *Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." Id.* at 7 .1(a)(3) (emphasis in original).

Here, not only did the Plaintiff fail to submit a memoranda of law in support of his Motion for summary judgment and an affidavit but he also failed to submit a Statement of Material Facts. In fact, in his Motion for summary judgment filed on February 24, 2009, Plaintiff explicitly stated, "I will provide this Court with a 'Law Memorandum' in support of my motion; such will contain applicable law, and case law. I will submit this to the Court on or before March 6, 2009." Mot. for Sum. Judg. at 1. To date, this Court has nor received said memorandum of law. While this Court recognizes Plaintiff's *pro se* status, he has failed to comply with *all* of the Local Rules. *See Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983) (a plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law"). Accordingly, Plaintiff's Motion for summary judgment is denied for failing to comply with the relevant rules of procedure. *See, e.g.,* N.D.N.Y. L.R. 7.1(a), 7.1(a)(3).

### C. Amended Complaint

**\*4** Plaintiff also moves to amend his Complaint. Response (Dkt. No. 27). While *pro se* litigants are generally afforded wide latitude and an opportunity to amend, a District Court need not permit an amendment to a Complaint where it would be futile. *See Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (holding that although leave to amend should be freely given where justice so requires, a district court need not grant leave if amendment would be futile); *Acito v. Imcera Group, Inc.,* 47 F.3d 47, 55 (2d Cir.1995).

Here, Plaintiff's Complaint does not state any viable causes of action under 42 U.S.C. § 1983. Further, Plaintiffs Complaint does not state which, if any, of his constitutional rights were violated by Defendants nor does it plead any facts to establish municipal liability. Plaintiff's Complaint also does not plead any facts supporting his allegations that he was "racially harassed," "threatened" or "interrogated." Since, as the Court discussed above, none of the complained of actions provides the basis for a cognizable cause of action, leave to cure these defects would be futile. These deficiencies may have been excusable, albeit not cureable, had this Court not previously informed Plaintiff of the requirements for pleading a cause of action under 42 U.S.C. § 1983 against a municipality. *See La Grande v. Albany Police Dep't,* 1:07–CV–757 (Dkt. No. 4). [4] Given that leave to amend would be futile, this Court denies Plaintiff's request.

[4]     Notably, Plaintiff has also filed numerous Complaints in the Northern District, many of which include assertions of civil rights violations and racial discrimination or harassment, wherein Plaintiff has been granted leave to amend his complaints. Plaintiff has filed eleven suits in the Northern District since 2000, including the instant matter. In fact, on May 12, 2008, Chief United States District Judge Norman A. Mordue entered an order enjoining Plaintiff from filing any further actions or pleadings in this district without the prior permission of the Chief Judge. Dkt. No. 6. This Order was entered based on a record of vexatious and frivolous pleadings previously filed by La Grande.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that Defendants' Motion to dismiss (Dkt. No. 13) is **GRANTED in its entirety;** and it is further

**ORDERED,** that Plaintiff's request to amend his Complaint (Dkt. No. 27) is **DENIED;** and it is further

**ORDERED,** that Plaintiff's Motion for summary judgment (Dkt. No. 12) is **DENIED in its entirety;** and it is further

**ORDERED,** that the Clerk serve a copy of this Decision and Order on all parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 2868231

---

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW** © 2019 Thomson Reuters. No claim to original U.S. Government Works. 4

2012 WL 4052286
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Sylvia JENKINS, Plaintiff,
v.
Mr. LIADKA, Syracuse Police Officer; Mr. Sands,
Syracuse Police Officer; John Doe, Syracuse Police
Officer; and Syracuse Police Dep't, Defendants.

No. 5:10–CV–1223 (GTS/DEP).
|
Sept. 13, 2012.

**Attorneys and Law Firms**

Sylvia Jenkins, Syracuse, NY, pro se.

Hon. Mary Anne Dougherty, Corporation Counsel for
City of Syracuse, Catherine Ena Carnrike, Esq., Assistant
Corporation Counsel, of Counsel, Syracuse, NY, for
Defendants.

***MEMORANDUM–DECISION and ORDER***

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Sylvia Jenkins ("Plaintiff") against Mr. Liadka,
Mr. Sands, John Doe, and Syracuse Police Department
("Defendants"), is Defendants' motion to dismiss Plaintiff's
Complaint for insufficient service of process pursuant to
Fed.R.Civ.P. 12(b)(5) and/or for failure to state a claim
pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 13.) For the
reasons set forth below, Defendants' motion is granted in part
and denied in part.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

Generally, construed with the utmost of special liberality,
Plaintiff's Complaint asserts three claims against Defendants
arising from an investigatory stop in September 2010, in
Syracuse, New York: (1) a claim that three Syracuse Police
Officers unreasonably searched her in violation of the Fourth
Amendment; (2) a claim that they unlawfully seized, and
failed to return, her personal property in violation of the

Fourth, Fifth, and/or Fourteenth Amendments; and (3) a claim
that they subjected her to excessive force in violation of
the Fourth Amendment. (*See generally* Dkt. No. 1 [Plf.'s
Compl].)

Generally, in support of these claims, Plaintiff alleges as
follows: (1) on the evening of September 9, 2010, she was
stopped on Butternut Street in the City of Syracuse by
two officers, who questioned her regarding a call they had
received; (2) when she told the two police officers that she
did not know what they were talking about and "attempted
to go on about [her] business," the officers became "uptight,
rude, [and] abnormal in their conversations [and] behavior,"
and threatened her; (3) the officers then proceeded to conduct
a search of "all [of Plaintiff and her] personal property,"
and, in the process of doing so, twisted her arm and forced
her onto the front of their police vehicle; (4) a third police
officer arrived, and she was assaulted by all three officers
(hereinafter "Defendants"), who hit her on the back and threw
her onto the police vehicle; (5) following the deprivation on
September 9, 2010, Defendants denied her a post-deprivation
remedy through a combination of threats, intimidation and/
or nonresponsiveness; and (6) Defendants took these actions
against her intentionally because they did not personally like
her, given her previous interactions with the Syracuse Police
Department. (*Id.*)

Plaintiff further alleges that, as a result of this incident,
she suffered various injuries and losses, including (1) a
"tremendous setback in already trying to recover in an [sic]
grave overall manner of my life [and] lifestyle involving
officials internally [and] externally," (2) head and back pain,
and mental suffering, (3) loss of personal property, and, (4)
loss of employment. (*Id.*) As relief, Plaintiff requests an award
of twelve thousand dollars ($12,000) in damages. (*Id.* at ¶ 6.)

Familiarity with the remaining factual allegations supporting
Plaintiff's three claims is assumed in this Decision and Order,
which is intended primarily for review by the parties. (*See
generally* Dkt. No. 1.)

### B. Defendants' Motion
**\*2** On May 6, 2011, Defendants filed a motion to dismiss.
(Dkt. No. 13, Attach 2.) Generally, in support of their motion,
Defendants assert the following two arguments: (1) because
the Complaint was not served within the time allowed by
Fed.R.Civ.P. 4 or Local Rule 4.1 of the Local Rules of Practice
for this Court, the Court lacks jurisdiction over Defendants in
accordance with Fed.R.Civ.P. 4; and (2) the Complaint fails

to state a claim upon which relief can be granted, because (a) the Complaint fails to identify what constitutional rights Plaintiff is attempting to vindicate, (b) even if the Complaint has sufficiently identified a constitutional violation, the Complaint fails to allege facts plausibly suggesting the personal involvement of the individual Defendants in any such constitutional violation, (c) the City of Syracuse Police Department does not have the legal capacity to be sued, (d) even if Plaintiff's Complaint can be liberally construed as attempting to assert a claim against the City of Syracuse, the Complaint fails to allege facts plausibly suggesting that the individual Defendants' actions the result of a city policy or custom sufficient to confer municipal liability upon the City, (e) the Fifth Amendment does not govern a plaintiff's deprivation-of-property claim against state actors, (f) the Complaint fails to allege facts plausibly suggesting that force was used or that if force was used it was excessive for purposes of a Fourth Amendment claim, and (g) based on Plaintiff's factual allegations, Defendants Liadka and Sands are protected from liability as a matter of law by the doctrine of qualified immunity. (*See generally* Dkt. No. 13, Attach. 2.)

On June 2, 2011, Plaintiff filed a response to Defendants' motion. Generally, Plaintiff's response, which is handwritten and three pages in length, states that she "definitely oppose[s] [Defendants'] request" for the dismissal of her Complaint. (*See generally* Dkt. No. 17.) However, Plaintiff's response does not address the legal arguments asserted by Defendants for the dismissal of Plaintiff's Complaint. (*Compare* Dkt. No. 17 *with* Dkt. No. 13, Attach. 2.) Although Plaintiff's response was submitted two days after the expiration of the responsedeadline, the Court has accepted it, out of an extension of special solicitude to her as a *pro se* civil rights litigant.

In addition, Plaintiff has filed three letters to the Court on the following dates: July 6, 2011, August 22, 2011, and January 13, 2012. (Dkt. No. 18–20.) Generally, these letters contain assertions that Plaintiff believes that the police are treating her, treating her negatively, and responding unsatisfactorily to her telephone calls. (*Id.*) To the extent that these three letters are intended to constitute papers in opposition to Defendants' motion, the Court will not consider them, because (1) they are not responsive to the motion, and/or (2) they were not submitted in a timely manner. Moreover, to the extent that these three letters are intended to constitute a request for relief, the Court will not consider them, because do not state the relief sought, state with particularity the grounds for seeking the order, and attach a memorandum of law and

affidavit, as required by Fed.R.Civ.P. 7(b) and Local Rule 7.1 of the Local Rules of Practice for this Court.

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions to Dismiss for Insufficient Service of Process

**\*3** Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court-on motion or its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

The Local Rules of Practice for this Court shorten the service requirements under Fed.R.Civ.P. 4. Specifically, Local Rule 4.1(b) requires "service of process upon all defendants within sixty (60) days of the filing of the complaint. This expedited service is necessary to ensure adequate time for pretrial discovery and motion practice. In no event shall service of process be completed after the time specified in Fed.R.Civ.P. 4." N.D.N.Y. L.R. 4.1(b).

### B. Legal Standard Governing Motions to Dismiss for Failure to State Claim

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading

contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n. 17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

**\*4** Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turning on the *conceivability* of an actionable claim,

the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id* . at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* [1]

[1]     It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[2] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[3] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28.

[2]  *See Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N . Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

[3]  *See Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

**\*5** Finally, a few words are appropriate regarding what documents are considered on a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). The court may consider the following documents without triggering the summary judgment standard: "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference into the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." *Planck v. Schenectady Cnty.,* 12–CV–0336, 2012 WL 1977972, at \*5 (N.D.N.Y. June 1, 2012) (Suddaby, J.). Moreover, "a pro se plaintiff's papers in response to a

defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of [her] complaint-to the extent those papers are consistent with the allegations in the complaint." *Planck,* 2012 WL 1977972, at \*5.

### C. Legal Standard Governing Unopposed Motions

In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b) (3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *Rusyniak v. Gensini,* 07–CV–0279, 2009 WL 3672105, at \*1, n. 1 (N.D.N.Y.Oct.30, 2009) (Suddaby, J.) (collecting cases); *Este–Green v. Astrue,* 09–CV–0722, 2009 WL 2473509, at \*2 & n. 3 (N.D.N.Y. Aug.7, 2009) (Suddaby, J.) (collecting cases).

### D. Legal Standards Governing Plaintiff's Claims

Because the Court has, in its Decision and Order of March 7, 2011, addressed the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not again recite, in their entirety, those legal standards in this Decision and Order, 9 which is intended primarily for review by the parties. (*See generally* Dkt. No. 5 [Decision and Order].)

### E. Legal Standards Governing Defendants' Defenses

#### 1. Defense of Lack of Separate Identity

"Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dept.,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002). "Pursuant to Fed.R.Civ.P. 17, New York governs the capacity of a police department to sue or be sued. In New York, police departments like the defendant, which are merely administrative arms of a municipal corporation, do not have a legal identity separate and apart from the town." *Loria v. Irondequoit* 775 F.Supp. 599, 606 (W.D.N.Y.1990). While a municipality can sue or be sued, the police department, which

does not exist separate from that municipality, can not. *Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999).

### 2. Defense of Limited Municipal Liability

**\*6** It is well established that "[a] municipality may not be held liable in a Section 1983 action for the conduct of a lower-echelon employee solely on the basis of *respondeat superior.*"[4] "Rather, to establish municipal liability under § 1983 for unconstitutional acts by a municipality's employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy."[5] "Thus, to hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to ... prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."[6]

[4]   *Powell v. Bucci,* 04–CV–1192, 2005 WL 3244193, at *5 (N.D.N.Y. Nov.30, 2005) (McAvoy, J.); *see also Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("[A] [municipality] may not be held for the actions of its employees or agents under a theory of *respondeat superior.*").

[5]   *Powell,* 2005 WL 3244193, at *5; *Monell,* 436 U.S. at 690–691 ("[L]ocal governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."); *Batista,* 702 F.2d at 397 ("[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision."); *Smith v. City of New York,* 290 F.Supp.2d 317, 321 (S.D.N.Y.2003) ("In order to establish the liability of [municipal] defendants in an action under § 1983 for unconstitutional acts by [its] employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy.").

[6]   *Batista,* 702 F.2d at 397, *accord, Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995), *McKeon v. Daley,* 101 F.Supp.2d 79, 92 (N.D.N.Y.2000) (Hurd, J.), *Merriman v. Town of Colonie, NY,* 934 F.Supp. 501, 508 (N.D.N.Y.1996) (Homer, M.J.); *Douglas v. Cnty. of Tompkins,* 90–CV–0841, 1995 WL 105993, at *12

(N.D.N.Y. March 2, 1995) (McCurn, J.); *Keyes v. Cnty. of Albany,* 594 F.Supp. 1147, 1156 (N.D.N.Y.1984) (Miner, J.).

With regard to the first element (the existence of a policy or custom), a "[p]laintiff may establish the 'policy, custom or practice' requirement by demonstrating: (1) a formal policy officially endorsed by the municipality ...; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question ...; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge to the practice of policymaking officials ...; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees...."[7] With regard to the second element (causation), a plaintiff must show "a direct causal link" or "an affirmative link" between the municipal policy or custom and the alleged constitutional deprivation (i.e., that the policy or custom was the "moving force" behind the deprivation).[8]

[7]   *Dorsett–Felicelli, Inc.,* 371 F.Supp.2d 183, 194 (N.D.N.Y.2005) (Kahn, J.) (citing three Supreme Court cases for these four ways), *accord, Dunbar v. Cnty. of Saratoga,* 358 F.Supp.2d 115, 133–134 (N.D.N.Y.2005) (Munson, J.); *see also Clayton v. City of Kingston,* 44 F.Supp.2d 177, 183 (N.D.N.Y.1999) (McAvoy, J.) (transposing order of second and third ways, and citing five more Supreme Court cases).

[8]   *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823, n. 8, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("The fact that municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell'* s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between [for example] the training inadequacies alleged, and the particular constitutional violation at issue."); *Monell,* 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983. Since this case unquestionably involves official policy as the moving force of the constitutional violation [at issue] ... we must reverse the judgment

below."); *Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that ... an official policy or custom [was] the cause of the deprivation of constitutional rights.... [T]he plaintiff must establish a causal connection-an affirmative link-between the policy and the deprivation of his constitutional rights.") [internal quotation marks and citation omitted]; *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiff's injury, *Monell* prohibits a finding of liability against the City."); *Powell,* 2005 WL 3244193, at *5 ("Ultimately, the plaintiff must demonstrate a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation.") [internal quotation marks and citation omitted].

### 3. Defense of Qualified Immunity

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 [1982] ). As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted." *Sira v. Morton,* 380 F.3d 57, 68–69 (2d Cir.2004) [citations omitted], *accord, Higazy v. Templeton,* 505 F.3d 161, 169, n. 8 (2d Cir.2007) [citations omitted].

In determining the second issue (i.e., whether it would be clear to a reasonable official that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would

have understood that his or her acts were unlawful.

**\*7** *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) [citations omitted], *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). [9] "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir.2007) [citations omitted]. [10] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). [11] As the Supreme Court has explained,

[9]      *See also Pena v. DePrisco,* 432 F.3d 98, 115 (2d Cir.2005); *Clue v. Johnson,* 179 F.3d 57, 61 (2d Cir.1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *Prue v. City of Syracuse,* 26 F.3d 14, 17–18 (2d Cir.1994); *Calhoun v. New York State Division of Parole,* 999 F.2d 647, 654 (2d Cir.1993).

[10]     *See also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' ") [citation omitted]; *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

[11]     *See also Malsh v. Correctional Officer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) [citing cases]; *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

[T]he qualified immunity defense ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law.... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley,* 475 U.S. at 341. [12]

[12]    *See also Hunter v. Bryant,* 502 U.S. 224, 299, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks and citation omitted].

### III. ANALYSIS

#### A. Whether Plaintiff's Complaint Should Be Dismissed for Failure to Serve Process in Timely Manner

After carefully considering the matter, the Court must answer this question in the negative. By Defendants' own calculations, Plaintiff's Complaint was served on April 18, 2011–a mere 42 days after the Court granted Plaintiff's motion to proceed *in forma pauperis,* approved the filing of her Complaint, and directed the Clerk of the Court to issue summonses and forward them with the Complaint to the United States Marshal's Service, for service on Defendants. (Dkt. No. 5 [Decision and Order filed March 7, 2011].) Indeed, Defendants acknowledge that Plaintiff completed the Civil Summonses and USM285 form, and returned them to the Clerk's Office (so that the Clerk's Office could forward them to the U.S. Marshal's Service for service of Plaintiff's Complaint) less than eight days after receiving them from the Clerk's Office. (Dkt. No. 13, Attach. 1, at ¶¶ 6–7; Dkt. No. 13, Attach. 2, at 9 [attaching page "8" of Defs.' Memo. of Law]; *see also* Dkt. Nos. 6, 8.) After that point in time, service was largely if not entirely outside of Plaintiff's control.

Under the circumstances, the Court finds that good cause exists to extend the deadline for service by 42 days. The Court notes that a contrary conclusion (e.g., a conclusion that Plaintiff had to serve her Complaint by December 13, 2010 pursuant to Local Rule 4.1, or even February 11, 2011 pursuant to Fed.R.Civ.P. 4) would render meaningless the Court's directive to the Clerk of the Court, on March 5, 2011, to take sufficient action to enable the United States Marshal's Service to effect service for Plaintiff.

#### B. Whether Plaintiff's Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

##### 1. Whether Plaintiff's Complaint Should Be Dismissed for Failing to Sufficiently Identify What Constitutional Rights She Is Attempting to Vindicate

**\*8**    After carefully considering the matter, the Court must answer this question also in the negative. In construing the pleadings of a *pro se* civil rights litigant in this Circuit, a district court's imagination should be limited only by the plaintiff's factual allegations, not by the legal claims set out in his or her pleadings. *See Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir.2005) ("We leave it for the district court to determine what other claims, if any, Phillips has raised. In so doing, the court's imagination should be limited only by Phillips' factual allegations, not by the legal claims set out in his pleadings.").

Here, based on Plaintiff's (albeit scant and confused) factual allegations, the Court can imagine that she is attempting to assert the following three claims: (1) a claim of an unreasonable search under the Fourth Amendment; (2) a claim of an unlawful seizure of, and failure to return, her personal property under the Fourth, Fifth and/or Fourteenth Amendments; and (3) a claim of excessive force under the Fourth Amendment.

##### 2. Whether Plaintiff's Claims Against the Individual Defendants Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Their Personal Involvement in the Constitutional Violations Alleged

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 13 [attaching page "12" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. *See, supra,* Part III.C. of this Decision and Order. [13]   Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, and finally, even when construed with the utmost of special liberality, the Complaint does not identify the precise location of the incident, which officers

were responsible for violating her rights, how she suffered the head injury she alleges, what property was taken from her, and how Defendants frustrated her efforts to recover that property. *See Vogeler v. Colbath,* 04–CV–6071, 2005 U.S. Dist. LEXIS 44658, at *29, 2005 WL 2482549 (S.D.N.Y. Oct. 6, 2005) ("Plaintiffs must also allege ... the personal involvement of the Defendant in the actions underlying their claim."). [14]

[13] Under the circumstances, the Court finds that Plaintiff had sufficient notice of the consequences of failing to respond to the arguments asserted in Defendants' motion. For example, on October 14, 2010, Plaintiff was given a courtesy copy of the District's *Pro Se* Handbook and a courtesy copy of the Local Rules of Practice for the Northern District of New York. (Dkt. No. 4.) In addition, on May 6, 2011, Defendants advised Plaintiff of her need to respond to their arguments. (Dkt. No. 15.) Also, Plaintiff had extensive experience as a *pro se* civil rights litigant in this District, before responding to the motion in question. *See, infra,* Part III.D. of this Decision and Order.

[14] Indeed, the Court notes that one of the officers that Plaintiff lists in her Complaint has not been identified. In a prior decision by the Court, Plaintiff was ordered to take reasonable steps to ascertain the identity of the unnamed officer, immediately notify the Court, amend her complaint to include the identity of the third Defendant, and also to have that officer served. (Dkt. No. 5, at 14.) Because Plaintiff has not done so, her alleged physical injuries remain attributable to an unidentified person.

For all of these alternative reasons, Plaintiff's claims against the individual Defendants are dismissed.

### 3. Whether the Syracuse Police Department Should Be Dismissed as a Defendant

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach 2, at 13.) The Court would add only the following three brief points.

**\*9** First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, and finally, "as Plaintiff has been told several times, under New

York State law, departments, like the Onondaga County Sheriff's Department, that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality and may not sue or be sued." *Jenkins v. Onondaga Cnty. Sheriff's Dep't,* 12–CV–0855, Report–Recommendation, at 5 (N.D.N.Y. filed June 28, 2012) (Baxter, J.) (citing *Hayes v. Cnty. of Sullivan,* 07–CV–0667, 2012 WL 1129373, at *24 [S.D.N.Y. March 30, 2012] ). Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant in this case. The real party in interest is the City of Syracuse itself.

For all of these alternative reasons, the Syracuse Police Department dismissed as a Defendant.

### 4. Whether, Even if the City of Syracuse Were Substituted for the Police Department, Plaintiff's Claims Against the City Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Municipal Liability

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 14–15 [attaching pages "13" and "14" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, even when it is construed with the utmost of special liberality, Plaintiff's Complaint has not alleged facts plausibly suggesting a widespread policy or custom promulgated by the municipal policy maker necessary to hold the City liable for her injuries. As indicated above in Part II.E.2. of this Decision and Order, Plaintiff must allege facts plausibly suggesting that the municipality "has adopted a 'custom' or 'policy' which is the 'moving force' behind [the violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 639 (N.D.N.Y.1997) (Scullin, J.) (citing, *inter alia, Monell v. Dept. of Soc. Servs. of City of New York,* 436 U.S. 658, 689 [1978] ). However, Plaintiff has not alleged *any* official policy or custom adopted by the City of Syracuse or its Police Department, [15] let alone one responsible for the alleged injuries she received. Because *Monell* prohibits the finding

of liability against a City when there is no causal connection between a municipal policy and a resulting injury, Syracuse City Police Department cannot be responsible for Plaintiff's alleged injuries. *Monell,* 436 U.S. at 692. As a result, the City of Syracuse cannot be maintained as a Defendant in this action, and Plaintiff's Section 1983 claims against it are dismissed.

15   In addition to not alleging facts plausibly suggesting the existence of a department-wide policy or custom, Plaintiff has not alleged facts plausibly suggesting that Officers Liadka, Sands, and the unnamed officer created or promulgated that policy, or even that they were final policymakers. "A municipal official that exercises discretion, whether it be in a constitutional or unconstitutional manner, in an area of which that official is not the final policymaker, cannot, by itself, establish municipal liability." *Clayton v. City of Kingston,* 44 F.Supp.2d 177, 184 (N.D.N.Y.1999) (McAvoy, C.J.).

**\*10**   For all of these reasons, Plaintiff's claims against the City of Syracuse Police Department and/or the City of Syracuse are dismissed on this alternative ground.

### 5. Whether, in the Alternative, Plaintiff's Deprivation–of–Property Claim Should Be Dismissed to the Extent It Is Grounded on the Fifth Amendment

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 16–17 [attaching pages "15" and "16" of Defs.' Memo. of Law].) The Court would add only the following four brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, a takings claim is not ripe where a state remedy is potentially available. *Vandor Inc. v. Militello,* 301 F.3d 37, 39 (2d Cir.2002). As the Supreme Court has explained,

> An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

*Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Police are not required to provide the owner with notice for state-law remedies, which are "established by published, generally available state statutes and case law." *City of W. Covina v. Perkins,* 525 U.S. 234, 240–241, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999). "Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures that are available to him. The City need not take other steps to inform him of his options." *City of W. Covina,* 525 U.S. at 241. Here, Plaintiff has not alleged facts plausibly suggesting that she attempted to recover her property in the proper manner (or even what property was taken). Fourth, and finally, Plaintiff does not allege facts suggesting that her property was taken for public use in an unconstitutional manner that would require her to be paid just compensation. Instead, Plaintiff alleges that, after she attempted to escape from their investigation and was restrained by officers, she was searched and had property taken from her.

For all of these alternative reasons, Plaintiff's deprivation-of-property claim is dismissed to the extent that it is grounded on the Fifth Amendment.

### 6. Whether, in the Alternative, Plaintiff's Excessive Force Claim Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Either that Force Was Used or that Any Such Force Was Excessive

**\*11**   After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 17–18 [attaching pages "16" and "17" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as stated in the Court's Decision and Order of March 7, 2011, in evaluating a Fourth Amendment excessive-force claim, "courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." (Dkt. No. 5, at 13.) [16] Here, Plaintiff alleges the following facts, which could be construed as plausibly suggesting that, at the time the incident occurred, she had given Defendants probable cause to use the force at issue against her: (1) Defendants were dispatched to that location regarding a problem; (2) Defendants specifically chose to question Plaintiff about the incident; (3) Plaintiff was attempting to get away from Defendant when they were attempting to question her; (4) she acted in such a way as to cause Defendants to become "worked up"; (5) it became necessary for a third unnamed officer to step in and assist Defendants Sands and Liadka in controlling Plaintiff. (Dkt. No. 1, at ¶ 4 & Attachment.) Simply stated, it is plausible, based on Plaintiff's factual allegations, that the amount of force used by the officers to pull her hands behind her back and detain her was necessary to keep her from getting away and "going about [her] business." (*Id.* at ¶ 4.) It is important to note that Plaintiff does not allege facts plausibly suggesting any physical injury other than vague "head & back pains." (*Id.* at ¶ 5.) [17]

[16]    More specifically, the standard governing constitutional excessive-force claims against government officials in "the course of making an arrest, investigatory stop, or other seizure" of a person is the Fourth Amendment's objective reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 388, 391, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Pursuant to this standard, three elements must be objectively examined to determine whether excessive force was used for Fourth Amendment violations: "(1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; and (3) the extent of the injury inflicted." *Graham,* 490 U.S. at 390, 397. It is essential to look at surrounding circumstances in each case, and analyze "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The "extent of intrusion on the suspect's rights" must be balanced against the "importance of governmental

interests." *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

[17]    More specifically, Plaintiff's Complaint does not allege facts plausibly suggesting that her injuries were significant, how long the pain lasted, or that medical treatment was necessary (or even sought) following the incident. *See Smith v. City of New York,* 04–CV–3286, 2010 U.S. Dist. LEXIS 88774, at *27, 2010 WL 3397683 (S.D.N.Y. Aug. 27, 2010) ("Courts in this Circuit have consistently held that an injury is de minimis when it is temporary and/or minor in severity.") (collecting cases).

For all of these reasons, Plaintiff's excessive force claim is dismissed on this alternative ground.

### 7. Whether, in the Alternative, Plaintiff's Claims Against the Individual Defendants Should Be Dismissed Because, Based on the Factual Allegations of the Complaint, Defendants Are Protected from Liability as a Matter of Law by the Doctrine of Qualified Immunity

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 19–20 [attaching pages "18" and "19" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would the reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as indicated above in Part I.E.3. of this Decision and Order, "[u]nder federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York,* 478 F.3d 76, 87 (2d Cir.2007) (internal quotations and other citations omitted). Here, based on Plaintiff's own factual allegations, it is plausible that police officers of reasonable competence could disagree as to whether Defendants' actions were unlawful (e.g., given their need to question her, and her attempt to flee the scene).

**\*12** For all of these reasons, Plaintiff's claims against the individual Defendants are dismissed on this alternative ground.

### C. Whether the Court Should Give Plaintiff an Opportunity to File an Amended Complaint Before Dismissing This Action

Generally, when a district court dismisses a *pro se* action, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (citations omitted), *accord, Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("[W]here ... there is no merit in the proposed amendments, leave to amend should be denied").

This rule applies even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103; *Brown,* 1997 WL 599355, at \*1. As explained above in Part II.B. of this Decision and Order, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12; rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.

Here, the Court has some difficulty finding that the referenced defect in Plaintiff's Complaint is merely formal. Nor is the Court confident that granting Plaintiff an opportunity to amend her Complaint will be productive. The Court notes that the errors made by Plaintiff in this action were previously made by her, and not corrected, on many occasions. Plaintiff has been ordered numerous times to file amended complaints at risk of dismissal of her case. [18] Of the seven times an amended complaint was required, Plaintiff submitted an amended complaint only three times. [19] Two of these were one page documents which did not state a claim upon which relief could be granted and were rejected by the Court, and the other did not correct the deficiencies of the original complaint. [20] Plaintiff did not comply with the Court's order to amend her complaint at all on four occasions. [21] In one case, Plaintiff was given an additional thirty day period to file her amended complaint after she failed to do so within the first 30 day period granted to her. *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006). Similarly, in a separate case, Plaintiff did not follow up on her original claim because she failed to appear for three hearings the Court rescheduled despite warnings of her need to comply with the Court Orders. *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005). All seven of these cases resulted in dismissal, most for failure to prosecute, failure to comply with Court Orders, or failure to state a claim. Five of Plaintiff's cases were not given leave to amend because granting such leniency would have been futile. [22]

[18]    *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012).

[19]    *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007).

[20]    *Id.*

[21]    *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012)

[22]    *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. USA,* 09–CV0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011).

**\*13** However, the Court is mindful of the special solicitude that should be afforded to *pro se* civil rights litigants. For these reasons, before the Court dismisses Plaintiff's action, the Court will afford her an opportunity to file an Amended Complaint correcting the above-described pleading defects within thirty (30) days from the date of the filing of this Decision and Order.

If Plaintiff submits an Amended Complaint, she is encouraged to describe the acts of misconduct alleged therein and identify each individual who participated in the misconduct. Moreover, Plaintiff is advised that her Amended Complaint must be a complete pleading that will replace and supersede her original Complaint in its entirety. Finally, Plaintiff is cautioned that, if she fails to file, in a timely fashion, an Amended Complaint that successfully states a claim upon which relief can be granted, her action will be dismissed with prejudice without further Order of the Court.

### D. Whether This Case Should Be Forwarded to the Chief Judge with a Recommendation that an Anti–Filing Injunction Order Be Issued Against Plaintiff

A review of Plaintiff's litigation history on Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service reveals that, before filing the current action on October 13, 2010, she filed thirteen *pro se* civil actions in this District alone-twelve of which have been dismissed and the thirteen of which is being considered for dismissal. [23]

A review of Plaintiff's litigation history has caused the undersigned to believe that (1) Plaintiff lacks a good-faith expectation in prevailing in her lawsuits, (2) she is vexatious and indeed incorrigible when proceeding pro se, (3) she has caused needless expense to other parties and placed an unnecessary burden on the Court and its personnel, and (4)

no lesser sanctions (e.g., such as dismissal or chastisement) would be adequate to protect the Court and other parties.

[23]    *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. City of Syracuse,* 06–CV–1005 (N.D.N.Y. filed Aug. 21, 2006); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. City of Syracuse,* 07–CV–0930 (N.D.N.Y. filed Sept. 7, 2007); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. USA,* 09–CV–0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

For example, eight of Plaintiff's actions have resulted in a dismissal for failure to state a claim or frivolousness, another has resulted in the pending recommendation of a dismissal on that ground, three others have resulted in a dismissal for lack of subject-matter jurisdiction, and another has resulted in a dismissal for failure to prosecute. [24]

[24]    *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457, Decision and Order (N.D.N.Y. filed Apr. 25, 2006) (Scullin, J.); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059, Decision and Order (N.D.N.Y. filed March 29, 2007) (Hurd, J.); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060, Memorandum–Decision and Order (N.D.N.Y. filed April 14, 2006) (Scullin, J.); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. City of Syracuse,* 06–CV–1005, Order (N.D.N.Y. filed Oct. 5, 2006) (Mordue, C.J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Decision and Order, (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167, Decision and Order (N.D.N.Y. filed Oct. 12, 2006) (Mordue, C.J.); *Jenkins v. City of Syracuse,* 07–CV–0930, Decision and Order (N.D.N.Y. filed Oct. 7, 2007) (Mordue, C.J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Murphy,* 08–CV–0921, Order (N.D.N.Y. filed Oct. 14, 2008) (McCurn, J.); *Jenkins v. USA,* 09–CV–0603, Decision and Order (N.D.N.Y. filed May 28, 2009)

(McAvoy, J.); *Jenkins v. Rice,* 11–CV–1037, Decision and Order (N.D.N.Y. filed Oct. 11, 2011) (Kahn, J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation (N.D.N.Y filed June 28, 2012) (Baxter, M.J.).

Moreover, Plaintiff has sued the Onondaga County Sheriff's Department four times. [25] As a result, she has been repeatedly instructed on the legal standard for suing a municipality. For example, the need to establish a custom or policy which is the moving force behind a resulting injury. *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 06–CV–1092, Decision and Order, at 4 (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.). However, despite receiving that specific information, she has *repeatedly* continued to file improper claims against the Onondaga County Sheriff's Department. [26]

[25]     *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

[26]     *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 3 (N.D.N.Y. filed Oct. 2, 2007) (Hurd, J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 2 (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV0855, Decision and Order, at 4–5 (N.D.N.Y filed May 24, 2012) (Baxter, M.J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation, at 5–6 (N.D.N.Y filed June 28, 2012) (Baxter, M.J.); *see also, supra,* Part III.B.4. of this Decision and Order.

Finally, Plaintiff has repeatedly had to be ordered to comply with the Local Rules, and reminded that all factual allegations should be contained in the complaint itself, that paragraphs ought to be numbered, and that the individuals who she alleges violated her rights must be identified. *See, e.g., Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Order (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.).

**\*14** Under such circumstances, a federal district court may impose reasonable filing restrictions on a *pro se* litigant in that particular court, pursuant to 28 U.S.C. § 1651(a) and its inherent authority to control and manage its own docket so as to prevent abuse in its proceedings. For example, a federal district court may, after providing an appropriate opportunity to be heard, prohibit a vexatious litigant from filing, in that particular court, any action *pro se* (that is, without counsel), without prior leave of that court. *See Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system.") [internal quotations and citations omitted]; *In re Sassower,* 20 F.3d 42, 44 (2d Cir.1994) (where a *pro se* plaintiff has demonstrated a "clear pattern of abusing the litigation process by filing vexatious and frivolous complaints," a "leave to file" requirement may be instituted by the court as an appropriate sanction); *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) ( "[T]he district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."); *Azubuko v. Unknown Boston Police Officers,* 08–CV–0330, 2008 WL 1767067, at *1 (N.D.N.Y. Apr.16, 2008) (McCurn, J.).

For all of these reasons, this case is forwarded to Chief United States District Judge Gary L. Sharpe with a recommendation that an Anti–Filing Injunction Order be issued against Plaintiff.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 13) is ***GRANTED* in part** and ***DENIED* in part;** and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is conditionally ***DISMISSED;*** and it is further

**ORDERED** that Plaintiff is permitted to file an Amended Complaint within **THIRTY (30) DAYS** of the filing date of this Order; and it is further

**ORDERED** that, *if Plaintiff fails to timely file an Amended Complaint, the Clerk shall enter judgment dismissing this action without further Order of this Court;* and it is further

**ORDERED** that, upon filing of the Amended Complaint, this file in this matter be returned to the Court for further review; and it is further

**ORDERED** that the Clerk of the Court is directed to forward this case to Chief United States District Judge Gary L. Sharpe with the recommendation of the undersigned that an AntiFiling Injunction Order be issued against Plaintiff.

*The Court hereby certifies, for purposes of 28 U.S.C. § 1915(a) (3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.*

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4052286

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag - Negative Treatment

Opinion Clarified on Denial of Reconsideration by Blond v. City of Schenectady, N.D.N.Y., December 15, 2010

2010 WL 4316810
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Mark W. BLOND, Jr., Plaintiff,
v.
The CITY OF SCHENECTADY, Mayor Brian Stratton, SPD Chief Chaires, SPD Officer Daniel McDonald, SPD Officer St. Onge (Phonetic Spelling), SPD Det. Sherri Barnes, Individually, and in Their Official Capacities, Defendants.

No. 10–CV–0598.
|
Oct. 26, 2010.

Attorneys and Law Firms

Mark W. Blond, Jr., Romulus, NY, pro se.

Alaina K. Laferriere, Carter, Conboy Law Firm, Albany, NY,

Luke C. Davignon, Carter, Conboy Law Firm, Albany, NY, for Defendants.

## DECISION and ORDER

THOMAS J. McAVOY, Senior District Judge.

**\*1** Plaintiff commenced the instant action under 42 U.S.C. § 1983 against officials and employees of the City of Schenectady alleging his constitutional rights were violated while he was arrested and interrogated by the police. Defendants now move to dismiss pursuant to Fed.R.Civ.P. 12(c). Plaintiff cross-moves to amend his Complaint.

## I. FACTS

For purposes of the instant motion, the following factual allegations are deemed to be true and all reasonable inferences are drawn in Plaintiff's favor.

On May 4, 2008, Plaintiff walked out the back door of his house. Defendant City of Schenectady Police Officer McDonald approached Plaintiff in an aggressive manner and

"nearly broke the plaintiff's arm" before placing him in handcuffs. Plaintiff did not resist Officer McDonald. Without being informed of his Miranda warnings or advised of the charges against him, Plaintiff was placed in the back of McDonald's car so McDonald could question third parties. While in the car, Plaintiff asked Officer St. Onge to "disable his car that was parked in the back yard of the apartment." Officer St. Onge slammed the door shut in Plaintiff's face. "[T]he plaintiff made a second attempt to have his property protected with the same result of officer St. Onge slamming the police car door shut on the plaintiff." "This made the already alcohol induced plaintiff angry, in which he began hitting his head against the police car window (rear passenger side)." Officer St. Onge observed Plaintiff hitting his head against the window, but did nothing. Plaintiff hit his head against the police car window 4–5 times, after which the window shattered.

Plaintiff was not bleeding and did not sustain any cuts from having broken the car window. McDonald "ran from the backyard to the front and tried to rip the plaintiff out of the window that was broken." McDonald "then decided to open the police car door, where he and officer St. Onge tried to push [Plaintiff] into a[f]ire [h]ydrant." "[P]laintiff was instead pushed by both officer's [sic] to the ground where the glass was, [where] both officer's [sic] began kneeing the plaintiff in his lower back and the back side of his neck." Plaintiff's face was "pressed into the glass on the ground." McDonald sprayed a can of pepper spray in Plaintiff's face.

Plaintiff was left "on the ground with his face burning in pain" for approximately 30 minutes until another vehicle arrived to transport him to the police station. During this time, Plaintiff asked if he could use the hose to rinse the pepper spray from his eyes and face. The officers did not respond to Plaintiff's request.

Plaintiff was transported to the police station where pictures were taken of his face. After the pictures were taken, Plaintiff was permitted to rinse his face and eyes. Plaintiff believed he had glass in his eyes "from the oficer's [sic] pressing his face into the glass on the ground." An ambulance was called and Plaintiff was taken to the hospital. "The nurse flushed out the plaintiff's eyes and found no glass." "The plaintiff was released from the hospital feeling dizzy back into the custody of the Schenectady police, where Defendant Detective Sherri Barnes question[ed] the plaintiff without his attorney and after his head injury."

## II. STANDARD OF REVIEW

### a. *Motion for Judgment on the Pleadings*

**\*2** Defendants move for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). A Rule 12(c) motion is "designed to provide a means of disposing of cases when the material facts are not in dispute between the parties." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed.2010). A motion under Rule 12(c) is only useful if "all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." *Id.*

The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as for a Rule 12(b)(6) motion to dismiss. *Cleveland v. Caplaw Enter.,* 448 F.3d 518, 521 (2d Cir.2006); *Sharpe v. Taylor,* 2009 WL 1743987 at \*6 (N.D.N.Y. June 18, 2009). The Court must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." *Rosner v. Bank of China,* 349 F. App'x 637, 638 (2d Cir.2009). To survive a motion to dismiss, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

The Court recognizes Plaintiff is proceeding pro se and, accordingly, his pleadings are held to a "less stringent standard than formal pleadings drafted by lawyers." *Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir.1993) (quoting *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). Plaintiff's pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006); *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir.2006); *Brownell v. Krom,* 446 F.3d 305, 310 (2d Cir.2006); *Forsyth v. Fed'n Employment & Guidance Serv.,* 409 F.3d 565, 569 (2d Cir.2005). However, *pro se* litigants are not exempt "from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983).

### b. *Motion to Amend the Complaint*

Plaintiff cross-moves to file an amended complaint. A party seeking to amend a pleading more than 21 days after the filing of a responsive pleading may do so with the consent of all parties or with leave from the Court. Fed.R.Civ.P. 15(a)(2). Plaintiff was previously advised that:

> Plaintiff may only amend his Complaint by motion that is in compliance with Local Rule 7.1., including a notice of motion and a supporting affidavit. Also, any motion to amend or supplement must be accompanied by an affidavit (*see* L.R. 7.1(a)(2)). Furthermore, "[a]n unsigned copy of the proposed amended pleading must be attached to a motion brought under Fed.R.Civ.P. 14, 15, 19–22." L.R. 7.1(a)(4). This proposed amended pleading must be a complete pleading, which will supersede the original pleading in all respects. *Id.* Plaintiff's proposed amended pleading shall not incorporate by reference any portion of any prior pleading. *Id.*

**\*3** Dkt. No. 9. Although Plaintiff has moved for leave to amend, he has not attached an unsigned copy of the proposed amended pleading to his motion papers and his motion does not "set forth specifically the proposed amendments and identify the amendments in the proposed pleading." Local Rule 7.1(a)(4). Because Plaintiff has not complied with the requirements of Local Rule 7.1, his motion is DENIED with leave to renew.

## III. DISCUSSION

Defendants move to dismiss the Complaint in its entirety. For Plaintiff to succeed on a claim under 42 U.S.C. § 1983 claim, he must prove that the defendant, while acting under color of state law, deprived him of his rights, privileges, or immunities secured by the Constitution or laws of the United States. *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010); *see* 42 U.S.C. § 1983. A civil rights complaint "must contain specific allegations of fact which indicate a deprivation of constitutional [or federal statutory] rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987). A defendant's personal involvement in a § 1983 claim is a prerequisite to an award of damages. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). A plaintiff must allege specific facts to demonstrate that a particular defendant was personally or directly involved in the violation. *Provost v. City of Newburgh,* 262 F.3d 146, 155 (2d Cir.2001). The requirement of personal involvement may be satisfied by showing that the defendant: (1) personally participated in the violation; (2) was grossly negligent in supervising subordinates who committed the wrongful acts; or (3) exhibited deliberate indifference by

failing to act on information indicating the unconstitutional acts were occurring. *Provost,* 262 F.3d at 154; *see also Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citing *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)).

### a. *The City of Schenectady*

The City of Schenectady moves to dismiss the claims against it on the ground that Plaintiff has failed to demonstrate a violation of any rights caused by municipal policy or custom. A municipality may not be held liable under Section 1983 solely on the doctrine of *respondeat superior. Monell v. Dep't of Soc. Services of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To be held liable for a constitutional violation, a municipality must have adopted a policy or custom that caused a deprivation of constitutional rights, or it must have directly caused an employee to violate another's constitutional rights. *Monell,* 436 U.S. at 692; *see Ximines v. George Winqate High Sch.,* 516 F.3d 156, 160 (2d Cir.2008). Here, Plaintiff fails to allege sufficient facts to support a reasonable inference that a municipal policy or custom resulted in a deprivation of his rights. Accordingly, Plaintiff's claims against the City of Schenectady must be DISMISSED.

### b. *The Mayor and the Chief of Police*

**\*4** The Mayor and the Chief of Police move to dismiss the claims against them on the ground that Plaintiff failed to plead any personal involvement by them. As previously noted, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006). Here, Plaintiff does not allege any facts plausibly indicating that either the Mayor or the Chief of Police Chief were personally involved in any alleged constitutional violations arising from his arrest, incarceration, or prosecution. Plaintiff similarly fails to plead sufficient facts to state a claim under the standards for supervisory liability applicable to § 1983 claims. Accordingly, Plaintiff's claims against the Mayor and the Chief of Police must be DISMISSED.

### c. *False Arrest, Malicious Prosecution, Failure to Provide Miranda Warnings, and Coercive Questioning*

Defendants move to dismiss any false arrest and malicious prosecution claims on the ground that Plaintiff does not allege that the criminal charges were disposed of in his favor. Plaintiff does not allege in his Complaint that any criminal actions against him were disposed of in his favor. While the Complaint does allege facts suggesting that Plaintiff was arrested, it makes no claim that the arrest was without probable cause. Accordingly, any malicious prosecution and false arrest claims must be DISMISSED.

Defendants move to dismiss any claim concerning the failure to administer Miranda warnings on the ground that it does not give rise to a private cause of action for damages. A Section 1983 claim cannot stand solely on the basis of an alleged failure to administer Miranda warnings. *Deshawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 346 (2d Cir.1998) ("[P]laintiffs cannot base a § 1983 claim solely on a law enforcement officer's failure to administer Miranda warnings...."); *Neighbor v. Covert,* 68 F.3d 1508, 1510–1511 (2d Cir.1995) ( "[E]ven if we were to assume that [the plaintiff's] Miranda rights had been violated, that violation, standing alone, would not form a basis for liability under § 1983."). There is no allegation that coercion was applied to obtain a waiver of Plaintiff's rights against self-incrimination and/or to obtain a inculpatory statements or that any such statements were then used against Plaintiff in criminal proceedings. Accordingly, Plaintiff fails to state a claim upon which relief can be granted. *Id.* Further, because it appears that Plaintiff is currently incarcerated for crimes for which he was arrested in May 2008, any such claims may run afoul of the rule set forth in *Heck v. Humphrey,* 512 U.S. 477, 486–89, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (a Section 1983 suit for damages that "would necessarily imply the invalidity of [the plaintiff's] conviction or sentence" is not cognizable, unless the plaintiff can show that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.").

### d. *Inadequate Medical Care*

**\*5** To the extent Plaintiff asserts a Fourteenth or Eighth Amendment claim of inadequate medical care, any such claim must be dismissed because he failed to allege facts plausibly suggesting an unconstitutional deprivation of medical treatment. To establish such a claim, Plaintiff must show that defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Harrison v. Barkley,* 219 F.3d 132, 136 (2d Cir.2000); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). The deliberate indifference standard contains both an objective element and a subjective element. The former requires that the alleged deprivation of care be sufficiently serious in objective terms: the plaintiff's condition

must present a "condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway,* 37 F.3d at 66. The subjective element requires a showing that the defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm. *Id.*

Here, Plaintiff's allegations against Defendants are insufficient to establish a constitutional deprivation. Plaintiff fails to allege a serious medical condition for which he sought and was denied treatment. Although Plaintiff was sprayed with pepper spray and he was not permitting to rinse his eyes for thirty to sixty minutes, this is insufficient to state a claim. *See Strassner v. O'Flynn,* 2006 WL 839411, at *8 (W.D.N.Y.2006) (and cases cited therein) (exposure to temporary discomfort of pepper spray is not a serious medical need). Plaintiff similarly fails to allege what harm, if any, resulted from the delay in treatment. Moreover, there are insufficient allegations of deliberate indifference to any medical need. Once he was brought to the police station and pictures were taken, Plaintiff was permitted to rinse his face. To the extent Plaintiff complained of glass in his eye (which could constitute a serious medical need), an ambulance was called and Plaintiff was taken to the hospital where a nurse rinsed his eye and did not find any glass. Accordingly, Plaintiff's claim of inadequate medical care must be DISMISSED.

#### e. *Excessive Force and Failure to Intervene*

Defendants next move to dismiss the excess force and failure to intervene claims. When evaluating an excessive use of force claim under the Fourth Amendment, "courts should examine whether the use of force is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to [the officers'] underlying intent or motivation.' " *Jones v. Parmley,* 465 F.3d 46, 61 (2d Cir.2006) (quoting *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Courts measure the reasonableness of the use of force by considering "the facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest." *Parmley,* 465 F.3d at 61 (quoting *Thomas v. Roach,* 165 F.3d 137, 143 (2d Cir.1999)).

**\*6** A police officer may use some degree of force when making an arrest, but the amount of force "must be reasonably related to the nature of [the] resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Sullivan v. Gagnier,* 225 F.3d 161, 166

(2d Cir.2000). The court must examine the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Id.* Dismissing an excessive force claim is appropriate where "no reasonable fact finder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of West Hartford,* 361 F.3d 113, 123 (2d Cir.2004). For a plaintiff to prevail on a motion to dismiss, he must show that "no rational jury could [find] that the force used was so excessive that no reasonable officer would have made the same choice." *Lennon v. Miller,* 66 F.3d 416, 426 (2d Cir.1995).

Defendants contend that the use of pepper spray by an arresting officer does not by itself rise to the level of excessive use of force. In some cases, an unconstitutional act or injury may be so *de minimis* that the act cannot rise to the level of a constitutional violation as a matter of law. *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993) ("[A] *de minimis* use of force will rarely suffice to state a constitutional claim."). The Second Circuit has noted, however, that "infliction of pepper spray on an arrestee has a variety of incapacitating and painful effects ... and, as such, its use constitutes a significant degree of force." *Tracy v. Freshwater,* —— F.3d ——, ——, 2010 WL 4008747 at *7 (2d Cir. Oct.14, 2010). "Accordingly, a number of our sister circuits have made clear that it should not be used lightly or gratuitously against an arrestee who is complying with police commands or otherwise poses no immediate threat to the arresting officer." *Id.* In *Tracy,* the Second Circuit held that the use of pepper spray on an individual who was handcuffed and was not offering physical resistance could be unreasonable under the circumstances. *Id.* Although Plaintiff admits to being drunk and angry and to having broken out the window of the police car, he also claims to have been handcuffed and placed on the ground with two police officers on top of him at the time he was pepper sprayed. These allegations are sufficient to plausible state a claim for the use of excessive force against the officer using the pepper spray and for a failure to intervene against the officer who was present but failed to intercede. *O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir.1988).

## IV. CONCLUSION

**\*7**  For the foregoing reasons, Defendants' motion to dismiss is GRANTED as follows:

a. the claims against the City of Schenectady, the Mayor, and the Chief of Police are DISMISSED IN THEIR ENTIRETY; and

b. and claims alleging malicious prosecution, false arrest, the failure to provide medical care, or arising out of the failure to administer Miranda warnings are DISMISSED.

In all other regards, the motion to dismiss is DENIED. Plaintiff's motion to for leave to amend his original complaint is DENIED WITH LEAVE TO RENEW UPON PROPER PAPERS.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 4316810

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 607341
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Paul CIPRIANI, Plaintiff,

v.

Harry C. BUFFARDI, Sheriff; Schenectady
County Jail; Cheryl Clark, M.D.;
Kevin J. O'Connor, Defendants.

No. 9:06-CV-0889(LEK/DRH).
|
Feb. 20, 2007.

**Attorneys and Law Firms**

Paul Cipriani, Plaintiff, pro se.

### DECISION and ORDER

LAWRENCE E. KAHN, U.S. District Judge.

**\*1** Presently before the Court is an amended complaint filed by Plaintiff Paul Cipriani ("Plaintiff"). Amended Compl. (Dkt. No. 10). This amended complaint was submitted in compliance with the Memorandum-Decision and Order issued by this Court on November 27, 2006 ("November Order"). Mem.-Decision and Order (Dkt. No. 7).

In its November Order, the Court advised plaintiff that he must set forth facts demonstrating that Defendants were personally involved in a violation of Plaintiff's rights. *Id.* at 4. Plaintiff was also advised that in order to establish the liability of a municipality, he must allege a custom or policy which is the moving force behind the violation. *Id.*

In his amended complaint, Plaintiff names thirteen defendants and asserts numerous claims against them arising from his confinement at Schenectady County Jail. Amended Compl. (Dkt. No. 10).

The Court notes that plaintiff has not named "Schenectady County Jail," "Cheryl Clark," or "Kevin J. O'Connor" in his amended Complaint. Therefore, "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are hereby dismissed as defendants in this action.

The Court also notes that Plaintiff's amended Complaint mentions "Mr. Booth" and "Mr. Purdy" only in the caption, and fails to allege any act or omission by these individuals. Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff. *Gonzalez v. City of New York,* No. 97 CIV. 2246(MGC), 1998 WL 382055, at \*2 (S.D.N.Y. July 9, 1998) (citing *Crown v. Wagenstein,* No. 96 CIV. 3895(MGC), 1998 WL 118169, at \*1 (S.D.N.Y.Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement) and *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997)). Because plaintiff has failed to allege any personal involvement on the part of defendants "Mr. Booth" and "Mr. Purdy", they are hereby dismissed as defendants in this action.

In his amended Complaint, Plaintiff alleges that the remaining Defendants committed various violations of his constitutional rights, including inadequate medical care, breach of doctor-patient confidentiality, excessive force, denial of due process in a disciplinary proceeding, and interference with the grievance process. Amended Compl. (Dkt. No. 10).

Based on the foregoing, Plaintiff's amended complaint as against the remaining Defendants is accepted for filing.

Plaintiff is advised, however, that the U.S. Marshals cannot effect service on a "John Doe" defendant. In the event that plaintiff wishes to pursue this claim against the "John Doe" defendants named in the amended Complaint, he must take reasonable steps to ascertain their identities. Plaintiff may then file a Motion to amend his complaint and seek leave of the Court to add such individuals, by name, as defendants to this lawsuit. Plaintiff is further advised that if these individuals are not timely served, the action will be against them will be dismissed.

**\*2** WHEREFORE, it is hereby

**ORDERED,** that "Mr. Booth," "Mr. Purdy," "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are **DISMISSED** as defendants in this action, and it is further

**ORDERED,** that the Clerk revise the docket to add "Schenectady County," "Mr. Burns," "Mr. Jones," "Mr. Adams," "Ms. Jones," "Ms. Hull," "John Doe # 1," "John Doe # 7," "John Doe # 10," and "Loraine Walker" as defendants in this action, and it is further

**ORDERED,** that the Clerk issue summonses naming the remaining defendants and forward them, along with copies of the amended Complaint (Dkt. No. 10), to the United States Marshal for service upon the defendants, together with a copy of this Order. [1] The Clerk shall also forward a copy of the summons and amended Complaint by mail to the County Attorney for Schenectady County, together with a copy of this Order, and it is further

[1] Plaintiff was granted leave to proceed with this action *in forma pauperis.* Mem.-Decision and Order (Dkt. No. 7).

**ORDERED,** that a formal response to Plaintiff's amended Complaint be filed by Defendants or their counsel as provided for in Rule 12 of *the Federal Rules of Civil Procedure* subsequent to service of process on Defendants, and it is further

**ORDERED,** that Plaintiff take reasonable steps to ascertain the identities of any other individual(s) that purportedly violated Plaintiff's civil and/or constitutional rights and, if appropriate, file a Motion to amend his complaint and add such individuals, by name, as defendants to this lawsuit, and it is further

**ORDERED,** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. *Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be returned, without processing.* Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions, which must be returnable before the assigned Magistrate Judge with proper allowance for notice as required by the Rules. *Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; his failure to do so will result in the dismissal of this action.* All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 607341

---

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Gonzalez v. City of New York, Not Reported in F.Supp. (1998)

1998 WL 382055

1998 WL 382055
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Angel GONZALEZ, Plaintiff,

v.

THE CITY OF NEW YORK; New York City
Department of Correction; Warden, Otis
Bantum Correctional Center; Corrections
Officer Summer, Shield No. 11856, Defendants.

No. 97 CIV. 2246(MGC).
|
July 9, 1998.

MEMORANDUM OPINION AND ORDER

CEDARBAUM, J.

**\*1** Plaintiff *pro se,* Angel Gonzalez, brings this action under 42 U.S.C. § 1983. He alleges that while in the custody of the New York City Department of Correction ("NYC DOC"), he was beaten by Correction Officer Summer. This is a motion to dismiss the complaint as against the City of New York, Warden of Otis Bantum Correctional Center (the "Warden") and NYC DOC pursuant to Fed.R.Civ.P. 12(b)(6).

On April 22, 1998, a letter was sent to Gonzalez directing him to respond to this motion by June 22, 1998. The letter advised Gonzalez that if he did not respond by June 22, the motion would be decided on the basis of the existing record, and the City of New York, New York City Department of Correction and Warden of Otis Bantum Correctional Facility might be dismissed from the action. Gonzalez has not responded. For the reasons that follow, the motion to dismiss is granted.

BACKGROUND

The complaint alleges that plaintiff was assaulted by Correction Officer Summer while he was incarcerated at Otis Bantum Correctional Center on Rikers Island, New York City. According to the complaint, as plaintiff was coming into the facility's recreation area from the "yard," he passed through a metal detector which registered that he had a metal object on his person. Defendant Summer then swore at plaintiff and told him to hurry up. As plaintiff passed through the

metal detector a second time, he said to Summer, "You don't have to act like that!" Summer then struck plaintiff in the face repeatedly until he lost consciousness. According to the complaint, when plaintiff regained consciousness, he found Summer "still abusing" him and swearing at him. Plaintiff left, found his way back to the housing area and felt as if he "had been hit with a bat to the face ." Plaintiff alleges that he suffered a cut under his left eye, serious swelling of his face and head, and lacerations of his scalp. He alleges that black and blue shadows still show under his eyes, and that he suffers from headaches. He seeks damages in the amount of three million dollars.

DISCUSSION

On a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations of the complaint must be accepted as true, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), and all reasonable inferences must be drawn in favor of the plaintiff, *Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

1. NYC DOC and the City of New York

Defendants argue that Gonzalez cannot assert a claim against NYC DOC based on any legal theory because it is not a suable entity. They also contend that the complaint fails to state a claim against the City of New York because it does not allege that the actions complained of were the result of an official policy, custom or practice of the City of New York.

**\*2** In addition to the defect that NYC DOC is an agency of the City of New York that is not a suable entity,[1] the complaint fails to state a claim upon which relief can be granted against either NYC DOC or the City. To state a claim under § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right, privilege or immunity guaranteed by federal law. To state a claim against a municipality, a plaintiff must also plead that the wrongful action alleged was the result of an official policy, custom or practice of the municipality, and that that policy caused plaintiff's injury. *Monell v. Department of Social Services,* 436 U.S. 658, 690–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Gonzalez v. City of New York, Not Reported in F.Supp. (1998)

1998 WL 382055

The complaint, however, alleges no official policy, custom or practice resulting in injury to Gonzalez. Indeed, the complaint does not even mention the City of New York or NYC DOC, except to the extent that they are listed as parties.

[1]   Defendants correctly point out that New York City agencies, such as NYC DOC, are organizational subdivisions of the City of New York lacking independent legal existence and are not themselves subject to suit. *See, e.g., Adams v. Galletta,* 966 F.Supp. 210, 212 (S.D.N.Y.1997) ("where a plaintiff has named the Department of Corrections as a defendant, he has sued a non-suable entity").

2. Warden of Otis Bantum Correctional Center

Defendants also urge dismissal of the complaint against the Warden, on the ground that there are no allegations in the complaint concerning that defendant. When an individual defendant is sued under § 1983, that defendant's personal involvement in the alleged constitutional deprivation is a prerequisite to an award of damages. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). For a claim under § 1983, a complaint sufficiently alleges personal involvement of a supervisory official if it alleges one of the following: (a) direct participation in the alleged wrong; (b) failure to remedy a violation after receiving notice of it; (c) creation of a policy or custom under which unconstitutional practices occur; or, (d) grossly negligent management of subordinates who cause the constitutional violation. *See Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996).

A § 1983 claim against a municipal official in his official capacity is treated as a claim against the municipality itself. *Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). As noted above, § 1983 imposes liability on a municipality only when the action that is alleged to be unconstitutional implements or executes an official policy or custom. *See Monell,* 436 U.S. at 690–91.

From the complaint, it is unclear whether the warden is being sued in his personal or official capacity. However, *pro se*

complaints, if possible, should be construed as asserting both claims. *Jackson v. Dinkins,* 1995 WL 657075, at *1 (S.D.N.Y. Nov.8, 1995) (citing *Frank v. Relin,* 1 F.3d 1317, 1326 (2d Cir.), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993)).

The complaint does not allege the personal involvement of the Warden. The complaint mentions the Warden only in the caption, and fails to allege any act or omission by that party. *See Crown v. Wagenstein,* 1998 WL 118169, at *1 (S.D.N.Y. Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997) (same).

**\*3** Finally, to the extent that the complaint asserts an official-capacity claim against the Warden, the claim fails for the same reason that the claims against the City of New York and NYC DOC fail. There are no allegations of any municipal policy or custom that the Warden was executing, or that such a policy or custom caused the alleged violation of the plaintiff's constitutional rights, as required by *Monell.* The absence of any such allegation precludes a finding of liability against the Warden in his official capacity.

Accordingly, the complaint fails to the state a claim against the Warden upon which relief can be granted.

CONCLUSION

For the foregoing reasons, the motion to dismiss the complaint as against defendants the City of New York, New York City Department of Correction, and Warden of Otis Bantum Correctional Facility is granted.

SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1998 WL 382055

---

Crown v. Wagenstein, Not Reported in F.Supp. (1998)

1998 WL 118169

1998 WL 118169
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Lakim CROWN, Plaintiff,

v.

Warden WAGENSTEIN; Parker T. # 10639 of
Emergency Response Unit, et al., Defendants.

No. 96 CIV. 3895(MGC).
|
March 16, 1998.

**Attorneys and Law Firms**

Lakim Crown, Brooklyn, for Plaintiff, Pro Se.

Paul A. Crotty, Esq., Corporation Counsel of the City of New
York, Attorney for Defendants Wangenstein and Parker, New
York, By Renee R. Nebens, Esq.

OPINION AND ORDER

CEDARBAUM, J.

**\*1** This is an action for damages brought by a pro se plaintiff
pursuant to 42 U.S.C. § 1983. Defendant Wangenstein moves,
pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the complaint
for failure to state a claim upon which relief can be granted
against him in either his personal or official capacity. For the
reasons discussed below, defendant's motion is granted.

The complaint alleges that on November 28, 1995, while
plaintiff was incarcerated at New York City's Otis Bantum
Correctional Center ("OBCC"), plaintiff was assaulted by a
number of correction officers. (Compl. at 3–4). As a result,
plaintiff alleges that he sustained injuries to his head, neck,
back, and right leg. (Compl. at 4). In addition to the officers
involved in the assault, plaintiff sues Wangenstein, the warden
of OBCC at the time of the alleged assault.

Discussion

A motion to dismiss for failure to state a claim must be granted
if, when viewed in the light most favorable to the plaintiff
and when all allegations of the complaint are accepted as true,
it appears beyond doubt that the plaintiff can prove no set
of facts in support of the claim which would entitle him to
relief. *Bolt Electric, Inc. v. City of New York,* 53 F.3d 465,
469 (2d Cir.1995). In addition, a complaint and supporting
papers prepared by a pro se plaintiff must be read liberally and
interpreted to "raise the strongest arguments they suggest."
*Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995).

When an individual defendant is sued under § 1983, that
defendant's personal involvement in the alleged constitutional
deprivation is a prerequisite to an award of damages. *See
Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). For a
claim under § 1983, a complaint sufficiently alleges personal
involvement of a supervisory official if it alleges one of the
following: (a) direct participation in the alleged wrong; (b)
failure to remedy a violation after receiving notice of it; (c)
creation of a policy or custom under which unconstitutional
practices occur; or (d) grossly negligent management of
subordinates who cause the constitutional violation. *See Black
v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996).

A § 1983 claim against a municipal official in his official
capacity is treated as a claim against the municipality itself.
*Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873,
83 L.Ed.2d 878 (1985). Section 1983 imposes liability on
municipalities only when the action that is alleged to be
unconstitutional implements or executes an official policy or
custom. *See Monell v. Department of Social Services,* 436
U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

From the complaint, it is unclear whether Wangenstein is
being sued in his personal or official capacity. However, pro
se complaints, if possible, should be construed as asserting
both claims. *Jackson v. Dinkins,* 1995 WL 657075 at \*1
(S.D.N.Y. Nov.8, 1995)(citing *Frank v. Relin,* 1 F.3d 1317,
1326 (2d Cir.)("a plaintiff who has not clearly identified in her
complaint the capacity in which the defendant is sued should
not have the complaint automatically construed as focusing
on one capacity to the exclusion of the other"), *cert. denied,*
510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993)).

**\*2** The complaint does allege an assault by certain members
of the OBCC Emergency Response Unit. (Compl. at 3–4). It
alleges that while the plaintiff was making a telephone call,
members of the Emergency Response Unit entered housing
area 1N and defendant Parker verbally harassed the plaintiff,
and with the assistance of other members of the Emergency
Response Unit, assaulted him. (Compl. at 3–4). However,
the complaint does not allege the personal involvement
of Warden Wangenstein. The complaint mentions Warden

**Crown v. Wagenstein, Not Reported in F.Supp. (1998)**

1998 WL 118169

Wangenstein only in the caption, and fails to allege any act or omission by Wangenstein. *See Taylor v. City of New York, 953 F.Supp. 95, 99 (S.D.N.Y.1997)*(Edelstein, J.)(finding mere inclusion of warden's name in a complaint insufficient to allege personal involvement).

As for Warden Wangenstein's liability in his official capacity, the complaint fails to allege a municipal policy or custom that defendant was executing, or that such a policy or custom caused the alleged violation of the plaintiff's constitutional rights, as required by *Monell.* The absence of any such allegation prevents a finding of liability for defendant Wangenstein in his official capacity. *See Monell,* 436 U.S. at 694.

Conclusion

Because the complaint fails to state a claim against Warden Wangenstein upon which relief can be granted, the motion to dismiss defendant Wangenstein is granted.

SO ORDERED

**All Citations**

Not Reported in F.Supp., 1998 WL 118169

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

**Hasan v. Onondaga County, Not Reported in Fed. Supp. (2018)**

2018 WL 4055296

2018 WL 4055296
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Haithem HASAN, Plaintiff,

v.

ONONDAGA COUNTY, et al., Defendants.

5:18-CV-806 (GLS/ATB)
|
Signed 08/02/2018

**Attorneys and Law Firms**

HAITHEM HASAN, pro se.

### ORDER and REPORT-RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** The Clerk has sent to the court an amended [1] civil rights complaint ("AC"), together with an application to proceed in forma pauperis ("IFP"), filed by pro se plaintiff, Haithem Hasan. (Dkt. Nos. 3, 4).

[1] The court notes that plaintiff's "Amended Complaint" is a copy of his original complaint attached to a form-civil rights complaint. The defendants, facts, and claims are identical in both complaints. (Dkt. Nos. 1, 3).

### I. IFP Application

A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. [2] (Dkt. No. 4). This court agrees, and finds that plaintiff is financially eligible for IFP status.

[2] Plaintiff filed his original complaint on July 9, 2018. (Dkt. No. 1). Plaintiff's action was administratively closed due to his failure to comply with the filing fee requirement. (Dkt. No. 2). Plaintiff was given the opportunity to file the appropriate documents for IFP or pay the filing fee. (*Id.*) On July 11, 2018, plaintiff filed his amended complaint with a new motion for IFP status. (Dkt. Nos. 4, 4, 5). Although plaintiff's motion for IFP was still incomplete, plaintiff argued that the facility in which he is incarcerated refused to provide him with the information necessary for him to properly complete his motion. (Dkt. No. 4). On July 11, 2018, the Honorable

Gary L. Sharpe, Senior District Court Judge reopened the action, and on July 19, 2018, he issued a Text Order, excusing plaintiff from the certification requirement and determining that the motion for IFP was complete and ready for my review. (Dkt. No. 8).

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

**\*2** To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

### II. <u>Complaint</u>

In this civil rights amended complaint, plaintiff has sued Onondaga County; William Fitzpatrick, the District Attorney of Onondaga County; Michael Manfredi, an Assistant District Attorney; seventeen Syracuse Police Officers/Detectives; a "P.I./ex-Detective, and Frank Fowler, the City of Syracuse

**Hasan v. Onondaga County, Not Reported in Fed. Supp. (2018)**

2018 WL 4055296

Chief of Police. (Dkt. No. 3). Plaintiff's amended complaint is a statement of facts ("SOF") which describes encounters with police officers, detectives, and prosecutors, occurring on July 10, 2015, December 26, 2015, May 18, 2016, August 7, 2016, and February 2017.[3] (SOF ¶¶ 1-5) (Dkt. No. 3).

[3]     Plaintiff has numbered the paragraphs of his SOF, and he has numbered the pages of his amended complaint at the bottom of the page. Thus, the court will cite to the SOF paragraph number as well as the page number on which the relevant fact appears.

### 1. July 15, 2015

Plaintiff alleges that on July 15, 2015, apparently as the result of an incident in Armory Square in the city of Syracuse, he was charged with second degree assault, third degree criminal possession of a weapon, second degree harassment, and second degree menacing. (SOF ¶ 1 at 3). Plaintiff claims that defendant Police Officer ("PO") Szekecs arrived on the scene and arrested plaintiff. Shortly thereafter, several officers arrived "with witnesses" for a "show-up" identification. Plaintiff alleges that he was removed from the police vehicle in which he had been seated by defendant Szekecs so that defendants PO Robert Jones, PO David Ciciriello, PO Jason Springer, and PO Ryan Blake could have their "witnesses" identify the plaintiff. Plaintiff alleges that the show-up witnesses all identified plaintiff as the perpetrator, but when defendant Detective Tara Kelil and PO J.M. Giarusso conducted photo arrays with "other" witnesses, those individuals were unable to identify the plaintiff. (Id.)

Plaintiff claims that defendant ADA Manfredi continued to prosecute plaintiff even though Keila Carrasquillo admitted to the assault for which plaintiff was being prosecuted. Plaintiff states that Ms. Carasquillo "through sworn statements, grand jury, and trial testimony" tried to take responsibility for the crimes. Plaintiff claims that, when ADA Manfredi heard about this, he threatened Ms. Carasquillo with perjury if she testified on plaintiff's behalf. Based on this threat, Ms. Carasquillo "pled the Fifth" on all matters, and plaintiff was convicted of the charges. Plaintiff also alleges that after his conviction, but prior to sentencing, Ms. Carasquillo again attempted to take the blame for the crimes, but defendant Manfredi told her that he was asking for a lengthy prison sentence for the plaintiff because the Syracuse Police Department had numerous interactions with plaintiff that did not result in convictions. Plaintiff was sentenced to 25 years incarceration.[4] (SOF ¶ 1 at p.4). Plaintiff states that

the defendants' actions were "the direct cause of plaintiff's injuries." (Id.)

[4]     Plaintiff is currently incarcerated.

### 2. December 26, 2015

**\*3**  Plaintiff states that on December 26, 2015, he was charged with second degree criminal possession of a weapon, resisting arrest, and first degree reckless endangerment as the result of an incident at the Mobile Gas Station on South Geddes Street in Syracuse, New York. (SOF ¶ 5 at 4). Plaintiff states that defendants PO J.M. Giarusso and Ryan Blake "charged" plaintiff, even though plaintiff did not have a weapon. Plaintiff states that the officers told him that they had an eyewitness, but that individual never provided a "statement." Plaintiff claims that defendant Manfredi still proceeded to present the case to a grand jury. Although the grand jury returned a "no bill," defendant Manfredi stated that plaintiff should have been indicted because he was well-known to the Syracuse police. (Id.)

### 3. May 18, 2016

On May 18, 2016, plaintiff states that he was charged with criminal possession of a controlled substance in the fifth and seventh degrees. (SOF ¶ 3 at 4). Plaintiff claims that defendants Detectives Scott Henderson and J. Ballagh of the Syracuse Police Department were investigating the residents of 303 Merriman Avenue in Syracuse, New York, and plaintiff was arrested when he walked by this location, while the defendants were getting out of their vehicles, "in the process of their raid," even though plaintiff was not "named in the investigation. (Id.) Plaintiff claims that "John Doe[s] 1-10 [and] Jane Doe[s] 1-10,[5] Detective Scott Henderson and Detective J. Ballagh" arrested plaintiff "as part of their investigation." (SOF ¶ 3 at 4-5).

[5]     The John and Jane Does are not named defendants in this action.

Plaintiff claims that while arresting the plaintiff "the officers" proceeded to "beat" him, causing visible bruises on plaintiff's face "and other parts of his body." (SOF ¶ 3 at 5). Plaintiff states that, while he was being arraigned on May 19, 2016, he was charged with the additional crimes of resisting arrest and obstructing governmental administration. (Id.) Plaintiff states that after six months, the grand jury returned a "no-bill." (Id.)

### 4. August 7, 2016

Hasan v. Onondaga County, Not Reported in Fed. Supp. (2018)

2018 WL 4055296

On August 7, 2016, plaintiff was arrested at the Mobile gas station at 631 South Geddes Street in Syracuse, New York. (SOF ¶ 4 at 5). Plaintiff was charged with criminal possession of a weapon, second degree. Plaintiff states that defendants PO Chad King; PO Ryan Blake; PO Chad Picotte; PO Jacob Green; PO Joseph Taylor; PO Sean Ryan; and PO John Tassani were "involved with the incident." (Id.) Plaintiff claims that he was on a "different street" when the "shots fired" incident occurred. PO King was the first to respond, and when he found "nothing of significance," he began to "roam around." He found plaintiff in a "driveway," where he and other individuals were sitting in a vehicle. Plaintiff states that he and two other individuals ran away as defendant King approached the car. Defendant King radioed for help, and defendants Picotta and Blake ultimately arrested the plaintiff. Plaintiff claims that, after he sat in the police vehicle for two hours, "they" came back and told plaintiff that he "beat [them]" when he was arrested at the same location the last time, but he would not get away "this time," because they had a gun in evidence. (Id.)

Plaintiff claims that one of the other two occupants of the car claimed ownership of the gun, but defendant Blake "coerced" him into stating that the gun belonged to plaintiff. Plaintiff claims that when he appeared before the grand jury on August 12, 2016, defendants ADA Manfredi and Private Investigator James Quatrone "guarantee[ed]" plaintiff that he would be indicted, and he would be put in prison where he belonged. (Id.) Plaintiff was later indicted for second degree criminal possession of a weapon. Plaintiff states that he had a "suppression hearing" on June 19, 2017, at which defendant King testified. (SOF ¶ 4 at 6). The court denied suppression.[6] Plaintiff states that, since he was already incarcerated on the first degree assault charge, he offered to plead guilty to an unidentified charge. Defendant Manfredi turned down plaintiff's offer because he believed that plaintiff was "public enemy #1." (Id.) Plaintiff states that he was acquitted of the charges by a jury on November 15, 2017. (Id.)

[6]    Plaintiff did not exactly state what evidence he moved to suppress. The court assumes that he may have moved to suppress the gun, and there is no indication if any other evidence or statements were obtained that may have been included in the motion to suppress.

### 5. February 2017

**\*4** Finally, plaintiff alleges that he filed a notice of appeal in the "July 2015 conviction" in February of 2017. (SOF ¶ 5 at 6). Plaintiff states that defendant District Attorney William

Fitzpatrick was "put on notice through the direct appeal about the actions of the Syracuse Police Department," defendant Manfredi, and defendant Quatrone. (Id.) Plaintiff claims that, "through his office," defendant Fitzpatrick "vigorously" defended the appeal and the actions of defendants Manfredi and Quatrone. Plaintiff claims that "defendants [sic] actions was [sic] the direct cause of plaintiff's injuries." (Id.)

In a section, entitled "Injuries," plaintiff states that he lives "in constant fear to walk the streets," because he will be "constantly harassed and arrested by defendants." (SOF ¶ IV(e) at 6). Plaintiff claims that he has "lost his liberty interest," his job, and his ability to provide for his children, due to the defendants' unconstitutional actions. (Id. at 6-7). Plaintiff seeks substantial compensatory and punitive damages.

### III. Proscutorial Immunity

#### A. Legal Standards

Prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the grand jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

#### B. Application

Plaintiff has named ADA Manfredi and DA William Fitzpatrick as defendants in this action. However, the only actions that plaintiff attributes to ADA Manfredi deal with his prosecution of plaintiff's criminal charges. Absolute immunity protect him from suit under the facts stated by

**Hasan v. Onondaga County, Not Reported in Fed. Supp. (2018)**

2018 WL 4055296

plaintiff, regardless of whether ADA Manfredi called plaintiff "public enemy #1," and even if he refused to accept plaintiff's offer of a plea to some unidentified charge. This immunity applies whether plaintiff was convicted or acquitted of the charges. Thus, the case must be dismissed with prejudice as against defendant Manfredi.

The same is true for District Attorney Fitzpatrick. The only facts alleged against defendant Fitzpatrick are that he "vigorously," "through his office," defended plaintiff's appeal. The district attorney is protected by absolute immunity. In addition, plaintiff has failed to allege that defendant Fitzpatrick was personally involved in any constitutional violation. Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). Simply alleging that defendant Fitzpatrick vigorously defended the appeal "through his office" is insufficient to allege personal involvement even if the prosecutor were not already protected by absolute immunity. Thus, the complaint may be dismissed with prejudice as against District Attorney Fitzpatrick.

### IV. Plaintiff's Claims

#### A. Legal Standards

**\*5** A civil lawsuit may not be used to collaterally attack a criminal conviction. *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. *Id.* at 486-87.

#### B. Application

#### 1. July 2015 (SOF ¶ 1)

Plaintiff states that he is still incarcerated on the July 2015 conviction for first degree assault.[7] He also states that he filed a notice of appeal in February of 2017. Plaintiff does not indicate that there has been any decision on the appeal, and if he is still incarcerated, either the appeal has not been decided, or the appeal was denied. Because plaintiff's conviction has not been overturned by a state appellate court nor called

into question by a federal habeas action, plaintiff may not sue defendants at this time if the resolution of the claim in plaintiff's favor would necessarily invalidate that conviction.

[7]     In the SOF, plaintiff alleges that in November of 2017 (after the August 7, 2016 incident), he was already incarcerated on "an assault 1st" conviction. (SOF ¶ 4 at 6). However, at the beginning of the complaint, he states that, in July of 2015, he was arrested for, inter alia, *second degree* assault, and that he was convicted and sentenced to 25 years. (SOF ¶ 1 at 3-4). A check of the Department of Corrections and Community Supervision ("DOCCS") "inmate lookup" shows that plaintiff is currently incarcerated for a conviction of *first degree assault*. for which he was sentenced to 25 years incarceration. http://nysdoccslookup.doccs.ny.gov/ GCA00P00/WIQ1/WINQ000. He was received by DOCCS on February 23, 2017. (*Id.*) Plaintiff states that he was convicted of the 2015 charges, and there is no indication that they were reversed. Thus, it is possible that the amended complaint may contain a typographical error in the first paragraph of the SOF, and that the July 2015 arrest involved first degree assault, not second degree assault.

Thus, in this case, plaintiff may not sue any defendants who were involved in the 2015 conviction if a decision in plaintiff's favor would render the 2015 conviction invalid. Plaintiff alleges that he was forced to stand in handcuffs next to defendant Szakecs, while defendants Jones, Ciciriello, Springer, and Black conducted a "show-up" identification of plaintiff, during which all of the eyewitnesses identified him, while defendants Giarusso and Kalil subsequently conducted unsuccessful photo arrays. Plaintiff seems to be arguing that the show-up identification violated his constitutional rights, evidenced by the fact that two other witnesses did not identify plaintiff in a photo array.

Plaintiff also claims that another individual, who initially confessed to the crime, asserted the Fifth Amendment, after being threatened with perjury by defendant Manfredi. (SOF ¶ 1 at 3). As stated above, ADA Manfredi would be entitled to absolute immunity. In addition, a decision in plaintiff's favor regarding improper identification or prosecutorial misconduct would clearly affect the validity of the conviction.[8] Thus, plaintiff's may not sue any of the defendants who he claims were involved in the alleged improprieties at this time, and may not sue defendant Manfredi, even if plaintiff's conviction is ever overturned.

**Hasan v. Onondaga County, Not Reported in Fed. Supp. (2018)**

2018 WL 4055296

8    If the identification procedures were unfairly suggestive, plaintiff's constitutional rights would not have been violated until he was convicted on the basis of the suggestive identifications. *See Wray v. City of New York*, 490 F.3d 189, 193 (2d Cir. 2007) (there is no constitutional right not to be subjected to an unconstitutionally suggestive identification). *See also Delamota v. City of New York*, 683 F. App'x 65, 66-67 (2d Cir. 2017) (when an officer creates false information likely to influence a jury's decision and forwards that information to the prosecutor, he or she violates the plaintiff's right to a fair trial). In addition, in order to state a claim, plaintiff would have to show that the officers misled or pressured the prosecution or the trial judge. *Id.* It is the admission of the testimony carrying a likelihood of misidentification which violates a defendant's right to due process. *Wray, supra.* In the plaintiff's amended complaint, he cites no facts beyond the alleged show-up identification. In fact, he states that two photo arrays were unsuccessful in identifying the plaintiff. It is unclear what evidence was admitted at trial. Thus, at this time, there are multiple reasons to dismiss any claims against the officers who plaintiff alleges were involved in the alleged show up.

   ***6** It is unclear why plaintiff has named detective Kalil and officer Giordano because the only facts stated against them are that they conducted a photo array, after which plaintiff was **not** identified. It is also unclear why plaintiff has named Officer Patricia Sargent. Plaintiff only asserts that defendant Sergeant detained a suspect who later confessed to the crime of which plaintiff was convicted. Plaintiff makes no other claims against this individual, nor does he state how she violated his rights in any way. Thus, the plaintiff's claim may also be dismissed as against defendants Kalil, Giordano, and Sargent.

### 2. December 26, 2015 (SOF ¶ 2)

Plaintiff alleges that the grand jury returned a "no bill" after the December 26, 2015 arrest. (SOF ¶ 2 at 4). Thus, *Heck* does not bar plaintiff's action. Plaintiff names three individuals in this section of his amended complaint. Plaintiff claims that defendant Officer Ryan Blake and defendant Giarusso arrested plaintiff for criminal possession of a weapon, resisting arrest, and reckless endangerment, even though plaintiff did not have a weapon, nor did the officers have any eyewitnesses "that the prosecutor could present." Plaintiff claims that ADA Manfredi prosecuted plaintiff notwithstanding the lack of evidence. (*Id.*)

As stated above, defendant Manfredi has absolute immunity. Although it is unclear what plaintiff may be attempting to allege against defendants Giarusso and Blake, pro se pleadings must be read to raise the strongest arguments that they suggest. *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). With respect to defendants Blake and Giarusso, plaintiff may be attempting to assert a claim for false arrest. 9 In order to prevail on a false arrest claim, plaintiff must plausibly allege that the defendant intended to confine him, plaintiff was conscious of the confinement, the plaintiff did not consent to the confinement, and the confinement was not "otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (internal quotation marks omitted). An arrest by a police officer is privileged if it is based on probable cause. *Id.* at 135. However, " '[t]he defendant has the burden of raising and proving the affirmative defense of probable cause.' " *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) (citations omitted).

9    The court has also considered whether plaintiff may be attempting to allege claims of malicious prosecution. Malicious prosecution has four elements. *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015). The defendants must have commenced or continued a criminal proceeding against the plaintiff, the proceeding terminated in the plaintiff's favor, there was no probable cause for the criminal proceeding, and the proceeding was instituted with "actual malice." *Id.* (citations omitted). Police officers do not generally commence or continue criminal proceedings against an individual, but malicious prosecution claims may still be maintained if the officer is found to play an active role in the prosecution, such a giving advice and encouragement to the authorities to act. *Id.* (citations omitted). As it is written, most of plaintiff's allegations are insufficient to state claims for malicious prosecution. However, if plaintiff amends his complaint, he may add any facts that he believes would assert a claim for malicious prosecution as against the officers.

In this case, although plaintiff alleges that the defendants arrested him for weapons possession without a weapon, he also states that he was arrested for resisting arrest and reckless endangerment. Plaintiff does not describe the facts surrounding the particular arrest. It is well-established that a law enforcement official has probable cause to arrest if he has received information from some person, normally the putative victim or an eyewitness. *Felix v. New York State DOCCS*, No. 16-CV-7978, 2018 WL 3542859, at *7 (S.D.N.Y. July 23,

**Hasan v. Onondaga County, Not Reported in Fed. Supp. (2018)**

2018 WL 4055296

2018) (citing inter alia *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ).

**\*7** In the amended complaint, plaintiff states that the officers "claimed they had an eyewitness." (SOF ¶ 2 at 4). However, the "eyewitness" "never provided a statement to these officers." The failure to give a statement does not show that the eyewitness did not exist. However, if there was no witness, and there was no weapon, it is plausible that the officers did not have probable cause to arrest plaintiff. The facts surrounding this arrest are not clear, and as stated above, the plaintiff was also arrested for resisting arrest and reckless endangerment. The court will allow this claim to proceed at this time against officers Blake and Giarusso, but notes that this ruling is not meant to suggest that the claim would survive a supported motion for summary judgment.

### 3. May 18, 2016 (SOF ¶ 3)

Plaintiff appears to claim that he was improperly arrested on May 18, 2016 because he was not "named" as a suspect in a drug investigation, involving the residents of 309 Merriman Avenue. (SOF ¶ 3 at 4). Plaintiff states that he was arrested by defendants Henderson and Ballagh for just "walking by the residence" as the officers were getting out of their vehicles. [10] (*Id.*) Plaintiff states that while arresting him, the "officers beat plaintiff," causing multiple bruises on plaintiff's face and other parts of his body. (SOF ¶ 3 at 5). Plaintiff states that, at his May 19, 2016 arraignment, he was charged with the "additional crimes" of resisting arrest and obstructing governmental administration. (*Id.*) Plaintiff claims that, after six months, the grand jury returned a "no-bill."

[10]   Plaintiff also states that, in addition to defendants Handerson and Ballagh, "officers John Dos [sic] 1-10 [and] Jane Doe [sic] 1-10 "arrested plaintiff." (SOF ¶ 3 at 4). Plaintiff has not named any John or Jane Does in the caption of his amended complaint, and he would not be able to serve unnamed officers without obtaining their names. It also seems unlikely that it took twenty-two officers to arrest the plaintiff. Each individual sued must have had personal involvement in the arrest in order to be liable under section 1983. *Minott v. Duffy*, No. 11 Civ. 1217, 2014 WL 1386583, at *11 (S.D.N.Y. Apr. 8, 2014) (quoting *Travis v. Vill. of Dobbs Ferry*, 355 F. Supp. 2d 740, 747 (S.D.N.Y. 2005) ). Plaintiff has named the two individuals who he claims were the principle officers

involved in his August 7, 2016 arrest. Thus, the court will not consider the John or Jane Does as defendants.

*Heck* does not bar plaintiff's claim on the false arrest issue. In addition, plaintiff seems to be claiming that some officers used excessive force while they were arresting him. The Fourth Amendment prohibits the use of unreasonable force by a police officer in the course of an arrest. *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989) ). A claim of excessive force during the arrest would not be barred by *Heck* even if plaintiff had been subsequently convicted of a crime, because a finding in favor of plaintiff on a claim of excessive force would not necessarily invalidate his conviction.

However, plaintiff does not specify which of the officers were involved in beating him as he was being arrested. In the previous sentence, he stated that defendants Henderson and Ballagh, along with John and Jane Does 1-10 arrested him. As stated above, plaintiff must allege personal involvement by specific defendants in his claims. As written, plaintiff's amended complaint does not state a claim of excessive force as against any particular officer or officers with respect to this incident. Thus, the court will recommend dismissing the excessive force claim without prejudice to amendment.

However, the court will not recommend dismissing the false arrest claim for the May 18, 2016 arrest at this stage of the proceedings. Plaintiff claims that defendants Henderson and Ballagh arrested him for "walking by" the residence that was being raided "as part of their investigation." (SOF ¶ 3 at 4-5). If defendants arrested plaintiff without probable cause, then plaintiff could have a claim for false arrest. The court is not making any determination of the merits of this claim, or whether such a claim could withstand a properly supported dispositive motion.

### 4. August 7, 2016 (SOF ¶ 4)

**\*8** Plaintiff alleges that on August 7, 2016, he was arrested for second degree criminal possession of a weapon, and that defendants King, Blake, Picotta, Breen, Taylor, Ryan, and Tassini were "all" involved in "the incident." (SOF ¶ 4 at 5). Plaintiff then states that defendant PO King responded to a "shots fired" call, but found nothing of "significance" at the relevant location, so he decided to "roam" around, when he found plaintiff and "other occupants in a vehicle" in a driveway. (*Id.*) Plaintiff states that whe defendant King got out of his vehicle and approached plaintiff and the other

**Hasan v. Onondaga County, Not Reported in Fed. Supp. (2018)**

2018 WL 4055296

occupants of the car, plaintiff and two others ran away. (*Id.*) Plaintiff states that Officer King pursued and radioed a description of plaintiff's clothing to other officers. Plaintiff was ultimately apprehended and arrested by defendants Picotte and Blake. (*Id.*) A weapon was found, but plaintiff maintains that one of the other occupants told defendant Blake that it was his weapon, until defendant Blake "coerced" him into stating that it was the plaintiff's weapon. Plaintiff was indicted, and subsequently moved to suppress the weapon, but the motion was denied. Plaintiff states that he was acquitted by a jury. Because plaintiff was acquitted of the charges, *Heck* does not bar an action for false arrest or malicious prosecution.

The only officers that plaintiff alleges were involved in his "arrest" were defendants King, Picotta, and Blake. Thus, none of the other officers that plaintiff names as "involved in the incident" may be held liable for false arrest. *See Minott v. Duffy, supra,* 2014 WL 1386583, at \*11 (quoting *Travis v. Vill. of Dobbs Ferry,* 355 F. Supp. 2d 740, 747 (S.D.N.Y. 2005) ) (Each individual sued must have had personal involvement in the arrest in order to be liable under section 1983.) Plaintiff never states how defendants Breen, Taylor, Ryan, and Tassini were "involved" in the arrest, and therefore the action may be dismissed without prejudice as to these defendants.

The issue in a false arrest claim is whether the defendants had probable cause to arrest plaintiff. [11] If the complaint itself establishes that the defendants had probable cause, the complaint may be dismissed for failure to state a claim. *Overby v. Fabian,* No. 17-CV-3377, 2018 WL 3364392, at \*9 (S.D.N.Y. July 10, 2018). Plaintiff concedes that defendant King reported to a "shots fired" call, even though he did not find anything "of significance" at the location of the alleged shots fired. The fact that defendant King decided to "roam" around the area is not unusual, given that often individuals who fire weapons do not stand around waiting for the police to arrive. When defendant King found plaintiff and other individuals in a car, plaintiff states that he and two other occupants ran from the officer. However, under New York law, "running from the police is not itself a crime." *Parker v. Bulik,* No. 11-CV-5412, 2017 WL 3396440, at \*12 (E.D.N.Y. Aug. 5, 2017) (citing *People v. Howard,* 50 N.Y.2d 583, 586 (1980) ). [12] Plaintiff concedes that a weapon was ultimately found, and that one of the other occupants admitted that the weapon was his. However, the other occupant allegedly recanted his original statement when defendant King "coerced" him into saying that the gun

belonged to the plaintiff. Given the factual issues raised by plaintiff, this claim of false arrest survives initial review. [13]

[11]    Probable cause is also a defense to malicious prosecution. *Wright v. Stephens,* No. 3:17-CV-1499, 2018 WL 3241352, at \*3 (D. Conn. July 3, 2018) (citation omitted).

[12]    "Although flight alone is generally not sufficient to justify a stop or pursuit, petitioner's flight may be considered in conjunction with other attendant circumstances such as time and location, as well as the police officers' knowledge that a crime had been committed, to establish probable cause." *Morgan v. Superintendent,* 88 F. Supp. 2d 312, 318 n. 48 (S.D.N.Y. 2000) (citing, inter alia, *Sibron v. State of New York,* 392 U.S. 40, 66-67 (1968) ("[D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest.") ).

[13]    The court notes, however, that the fact that plaintiff was acquitted at trial does not indicate that probable cause to arrest him was lacking in the scenario that plaintiff described. *See McClenic v. Shmettan,* No. 15-CV-705, 2016 WL 3920219, at \*4 (E.D.N.Y. July 15, 2016) (citing inter alia *Lehman v. Kornblau,* 134 F. Supp. 2d 281, 290 (E.D.N.Y. 2001) ("The existence of probable cause is a complete defense to a false arrest claim, even where the plaintiff was ultimately acquitted of the criminal charges.") ). This is true regardless of plaintiff's claim that the officer told plaintiff that he would not "beat" the charges "this time." (SOF ¶ 4 at 5). Thus, even though I am allowing the claim to proceed, the court makes no findings regarding the ultimate issue of probable cause.

**\*9**    Finally, plaintiff claims that when he appeared before the grand jury, defendant Quatrone (an ex-detective) and the prosecutor stated that "we guarantee that you will be indicted today ... and you will rot in prison where you belong." The prosecutor is entitled to absolute immunity, and it is unclear what plaintiff is alleging against defendant Quatrone. Thus, the complaint may be dismissed as to the officers who plaintiff does not claim were "involved" in the arrest as well as defendant Quatrone, who was not involved in anything other than perhaps verbal abuse of plaintiff. It is well established that verbal abuse and profanity is not actionable conduct under 42 U.S.C. § 1983, because it does not violate any protected federal right. *See Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir. 1986) (per curiam); *Crown v. Croce,* 967 F. Supp. 101, 104 (S.D.N.Y. 1997); *Beal v. City of New York,* No. 92

**Hasan v. Onondaga County, Not Reported in Fed. Supp. (2018)**

2018 WL 4055296

Civ. 0718, 1994 WL 163954, at *6 (S.D.N.Y. Apr. 22, 1994) ("mere verbal abuse, and even vile language, does not give rise to a cognizable claim under Section 1983"), *aff'd*, 89 F.3d 826 (2d Cir. 1995).

## V. Municipal Liability

### A. Legal Standards

In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Id.* at 694. To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979).

### B. Application

Plaintiff has named Onondaga County as a defendant in this action, but the municipal defendants are employees of the City of Syracuse, and when prosecuting a criminal matter, the district attorneys are acting in a quasi-judicial capacity, and they represent the State, not the County. [14] *Shanks v. Otsego County New York*, No. 6:17-CV-719, 2017 WL 4220463, at *7 (N.D.N.Y. July 24, 2017) (Rep't-Rec.), *adopted*, 2017 WL 4221070 (N.D.N.Y. Sept. 21, 2017) (citing *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988) ). None of the defendants is employed by Onondaga County in the circumstances described in plaintiff's complaint. Plaintiff makes no separate claim against Onondaga County for municipal liability. Thus, the complaint may be dismissed with prejudice as against Onondaga County.

[14]   It is only where claims center on the administration or management of the district attorney's office that a district attorney may be found to have acted as a "policy maker" for purposes of section 1983 liability. *Shanks, supra* (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) ). In this case, plaintiff challenges only the district attorney's decisions regarding prosecution of plaintiff's criminal cases, and therefore, the district attorney is not an Onondaga County policy maker.

## VII. Chief of Police Frank Fowler

### A. Legal Standards

As stated above, personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d at 435. In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id.* *See also* *Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**\*10** Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. *See* *Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*. *Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.' " *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011) ). *See also* *Jones v. Smith*, No. 09-CV-1058, 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

### B. Application

In this case, plaintiff does not allege that defendant Fowler, the Chief of police was actually present during any of the police encounters that plaintiff described. Plaintiff never mentions defendant Fowler at all in the amended complaint. It appears that defendant Fowler was added to the caption solely because he is the Chief of Police in an attempt to establish liability based upon respondeat superior. Plaintiff may not bring such

**Hasan v. Onondaga County, Not Reported in Fed. Supp. (2018)**

2018 WL 4055296

a claim. There is no indication that supervisory liability has been alleged in any of the ways described above in *Williams*. There is no allegation that defendant Fowler even knew about the plaintiffs arrests or had any involvement in the acts plaintiff described. Thus, the complaint may be dismissed in its entirety without prejudice as against defendant Fowler based on a lack of personal involvement.

### VIII. Opportunity to Amend

#### A. Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). In this case, the court finds that any attempt by the plaintiff to amend some of the claims in this complaint would be futile, but finds that he should be allowed to amend others as discussed herein.

#### B. Application

The claims against both district attorneys may be dismissed **with prejudice** to the extent that plaintiff challenges any decisions or actions by the district attorneys related the prosecution of criminal charges against plaintiff or the prosecution of plaintiff's still-pending appeal. The complaint may be dismissed in its entirety as against Onondaga County because plaintiff makes no claims against Onondaga County, and the County is not the relevant municipality by which any of the defendants are employed. The claims against defendants Kalil, Giarusso, and Sergeant may also be dismissed with prejudice as stated above with respect to the July 2015 arrest.

Although any claims regarding the July 18, 2015 arrest should be dismissed without prejudice, as against defendants Jones, Ciciriallo, Springer, Blake, and Szakecs, plaintiff may not amend his complaint until the charges have been reversed by an appellate tribunal or been called into question by a successful habeas corpus petition. Plaintiff's claims relative to the December 2015 may go forward as against defendants Giarusso and Blake without requiring amendment. The claims surrounding the August 7, 2016 incidents should be dismissed without prejudice as against defendants Breen, Taylor, Ryan, and Tassini, but may be allowed to go forward as against defendants King, Picotta, and Blake.

**\*11** Although the court is ordering that the complaint go forward as to the December 2015 arrest as against defendants Giarusso and Blake; the May 18, 2016 incident as against defendants Henderson and Ballagh; and the August 2016 arrest as against King, Picotta, and Blake, any service of process on these defendants should await the District Court's decision on this recommendation. [15] I will issue my recommendation below based on the individual incidents for ease of understanding.

[15]    If plaintiff ultimately amends his complaint with respect to any of the claims dismissed without prejudice, he is advised that any amended complaint must be a complete pleading which shall repeat all the surviving claims including any amendments. Any amended complaint will **supercede** the original, must stand on its own, and must not incorporate any facts by reference to another pleading.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 4) is **GRANTED**, and it is

**RECOMMENDED**, that the amended complaint be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE AS AGAINST DEFENDANTS FITZPATRICK, MANFREDI, KALIL, and SARGENT**, and it is

**RECOMMENDED**, that the amended complaint be **DISMISSED WITH PREJUDICE AS AGAINST DEFENDANT GIARUSSO - ONLY WITH RESPECT TO THE JULY 2015 INCIDENT**, and it is

**RECOMMENDED**, that the amended complaint be **DISMISSED WITHOUT PREJUDICE AS TO:**

1. Defendants Jones, Ciciriallo, Springer, Blake, and Szakecs with respect to the July 2015 incident.

3. Defendants Breen, Taylor, Ryan, and Tassini with respect to the August 7, 2016, and it is

**ORDERED**, that the amended complaint go forward as against defendants **BLAKE and GIARUSSO (Dec. 26, 2015 incident); HENDERSON** and **BALLAGH (May 18, 2016 incident)**, and defendants **KING, PICOTTA, and BLAKE (Aug. 7, 2016 incident)**, but that service of process as against these defendants await the District Court's decision on this recommendation, and it is

**Hasan v. Onondaga County, Not Reported in Fed. Supp. (2018)**

2018 WL 4055296

**ORDERED**, that when the District Court issues a decision on this Recommendation, the case be returned to me for further proceedings, including any necessary orders regarding service of the complaint.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4055296

---

**End of Document**                               © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Hasan v. Onondaga County, Not Reported in Fed. Supp. (2018)

2018 WL 4054105

2018 WL 4054105
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Haithem HASAN, Plaintiff,

v.

ONONDAGA COUNTY et al., Defendants.

5:18-cv-806 (GLS/ATB)
|
Signed 08/24/2018

**Attorneys and Law Firms**

Haithem Hasan, 17-B-0550, Auburn Correctional Facility,
P.O. Box 618, Auburn, NY 13021, pro se.

**ORDER**

Gary L. Sharpe, Senior District Judge

 **\*1** The above-captioned matter comes to this court
following a Order and Report-Recommendation by
Magistrate Judge Andrew T. Baxter, duly filed on August 2,
2018. (Dkt. No. 9.) Following fourteen days from the service
thereof, the Clerk has sent the file, including any and all
objections filed by the parties herein. [1]

[1]   Plaintiff filed no objections; however, he submitted a
      document labeled "Amended Complaint," (Dkt. No. 10),
      which the court construes as a motion for leave to
      file a second amended complaint. That motion will be
      addressed by Judge Baxter in due course.

No objections having been filed, and the court having
reviewed the Order and Report-Recommendation for clear
error, it is hereby

**ORDERED** that the Order and Report-Recommendation
(Dkt. No. 9) is **ADOPTED** in its entirety; and it is further

**ORDERED** that the amended complaint (Dkt. No. 3) is
**DISMISSED WITH PREJUDICE** as against defendants
William Fitzpatrick, Michael Manfredi, Tara Kalil, Patricia
Sargent, James Quatrone, Frank Fowler, and Onondaga
County; and it is further

**ORDERED** that the amended complaint is **DISMISSED
WITH PREJUDICE** as against defendant J.M. Giarusso
with respect to the July 2015 incident; and it is further

**ORDERED** that the amended complaint be **DISMISSED
WITHOUT PREJUDICE** as against: (1) defendants Robert
Jones III, David Ciciriallo, Jason Springer, Ryan Blake, and
Joseph Szekecs with respect to the July 2015 incident; and (2)
defendants Jacob Breen, Joseph Taylor, Sean Ryan, and John
Tassini with respect to the August 7, 2016 incident; and it is
further

**ORDERED** that the following are the only remaining
defendants/incidents: (1) Blake and Giarusso with respect
to the December 26, 2015 incident; (2) defendants Scott
Henderson and J. Ballagh with respect to the May 18, 2016
incident; and (3) Blake and defendants Chad Picotte and Chad
King with respect to the August 7, 2016 incident; and it is
further

**ORDERED** that the court construes plaintiff's August 15,
2018 "Amended Complaint" (Dkt. No. 10) as a motion for
leave to file a second amended complaint, which will be
addressed in due course by Judge Baxter; and it is further

**ORDERED** that the Clerk provide a copy of this Order to the
parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4054105

**End of Document**                              © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

[1] At the time the action was originally filed, the Honorable
Leonard B. Sand, United States District Judge, granted
plaintiff's application for *in forma pauperis* status based
on plaintiff's *ex parte* submission (Docket Item 1).
Although the present application seeking to revoke
plaintiff's *in forma pauperis* status is non-dispositive, I
address it by way of a report and recommendation
to eliminate any appearance of a conflict between the
decision of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1** TO THE HONORABLE BARBARA S. JONES, United
States District Judge,

I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11),
defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke
plaintiff's *in forma pauperis* ("IFP") status on the ground that
plaintiff has previously had at least three Section 1983 actions
dismissed as frivolous, malicious or failing to state a claim
upon which relief could be granted, and has not shown that he
is in imminent danger of serious physical injury. Defendant
further seeks an order directing that the action be dismissed
unless plaintiff pays the full filing fee within thirty (30) days.
For the reasons set forth below, I respectfully recommend that
defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New
York State Department of Correctional Services, commenced

this action on or about January 12, 2009 by submitting his
complaint to the Court's Pro Se office. Plaintiff alleges, in
pertinent part, that he has "a non-healing ulcer that is gane
green [*sic* ]" and that defendant Bernstein "did not want
to treat the ulcer right" (Complaint, dated March 3, 3009
(Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants
—Dr. Bernstein and Dr. Finkelstein. The action was dismissed
as to Dr. Finkelstein because the complaint contained no
allegations whatsoever concerning Dr. Finkelstein (Order
dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr.
Bernstein—filed the current motion. Plaintiff failed to submit
a response. Accordingly, on August 20, 2010, I issued an
Order advising plaintiff that if he wished to oppose the
motion, he must submit his opposition by September 15, 2010
and that after that date I would consider the motion fully
submitted and ripe for decision (Order dated August 20, 2010
(Docket Item 15)). The only submission plaintiff has made
in response to my Order is a multi-part form issued by the
New York State Department of Correctional Services entitled
"Disbursement or Refund Request." [2] By this form, plaintiff
appears to request that the New York State Department of
Correctional Services pay the filing fee for this action. The
form is marked "Denied."

[2] Plaintiff sent this form directly to my chambers, and
it has not been docketed by the Clerk of the Court.
The form will be docketed at the time this Report and
Recommendation is issued.

III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence
an action in a federal court without prepayment of the filing
fee that would ordinarily be charged. Although an indigent,
incarcerated individual need not prepay the filing fee at the
time at the time of filing, he must subsequently pay the fee,
to the extent he is able to do so, through periodic withdrawals
from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v.
City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent
abuse of the judicial system by inmates, paragraph (g) of
this provision denies incarcerated individuals the right to
proceed without prepayment of the filing fee if they have
repeatedly filed meritless actions, unless such an individual
shows that he or she is in imminent danger of serious
physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d
Cir.2004) ("[T]he purpose of the PLRA ... was plainly to

curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson[3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at *1–*2.

3    It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at *1, *7.

  - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at *1–*2.

  - Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a

demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009).[4]

[4]   Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury.[5]

[5]   Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

> Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.
>
> *Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4.
>
> Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

### IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

### V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS ***WILL*** RESULT IN A WAIVER OF OBJECTIONS AND ***WILL*** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155

(1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57– 59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237– 38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

---

**End of Document**  © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 1915331
Only the Westlaw citation
is currently available.
United States District
Court, S.D. New York.

Troy PHILIPS, Plaintiff,
v.
VALHALLA COUNTY JAIL; Valhalla
County Jail Staff; George Longworth;
Kevin Cheverko, Defendants.

19-CV-2019 (CS)
|
Signed 04/30/2019

**Attorneys and Law Firms**

Troy Philips, Coxsackie, NY, pro se.

ORDER OF SERVICE

CATHY SEIBEL, United States District Judge

**\*1** Plaintiff, currently incarcerated in Coxsackie Correctional Facility, brings this *pro se* action under 42 U.S.C. § 1983, alleging that, while he was detained in the Westchester County Jail, Defendants violated his constitutional rights. By order dated April 24, 2019, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis.* [1]

**STANDARD OF REVIEW**

The Court must dismiss a complaint, or portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe pro se pleadings liberally, *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they suggest," *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

**DISCUSSION**

**A. Valhalla County Jail and Valhalla County Jail Staff**

Plaintiff indicates in his complaint that he was detained in a facility located at 10 Woods Road, Valhalla, New York. This is the address of the Westchester County Jail, and the Court therefore construes Plaintiff's allegations as asserting claims against staff at the Westchester County Jail.

Plaintiff's claims against the Jail and Jail Staff, however, must be dismissed. Section 1983 provides that an action may be maintained against a "person" who has deprived another of rights under the "Constitution and Laws." 42 U.S.C. § 1983. Valhalla County Jail and Valhalla County Jail Staff are not "persons" within the meaning of § 1983. *See generally Will v. Mich. Dep't of State Police,* 491 U.S. 58 (1989) (state is not a "person" for the purpose

of § 1983 claims); *Zuckerman v. Appellate Div., Second Dep't Supreme Court,* 421 F.2d 625, 626 (2d Cir. 1970) (court not a "person" within the meaning of 42 U.S.C. § 1983); *Whitley v. Westchester Cnty. Corr. Fac. Admin.,* No. 97-CV-420 (SS), 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997) (correctional facility or jail not a "person" within the meaning of § 1983). Therefore, Plaintiff's claims against Valhalla County Jail and Valhalla County Jail Staff are dismissed. *See* 28 U.S.C. § 1915(e)(2) (B)(ii).[2]

## B. Rule 21 of the Federal Rules of Civil Procedure

**\*2** Plaintiff asserts that during the winter of 20 i 6 and in 2017, correction officers at the Westchester County Jail used excessive force against him; denied him adequate medical care; placed him in cells the conditions of which violated his constitutional rights; and sexually harassed him. The Clerk of Court is therefore directed, under Rule 21 of the Federal Rules of Civil Procedure, to amend the caption of this action to add John/Jane Doe 1 - 10 as Defendants. J This amendment is without prejudice to any defenses that these Defendants may wish to assert.

## C. John/Jane Doe Defendants

Under *Valentin v. Dinkins,* a *pro se* litigant is entitled to assistance from the district court in identifying a defendant. 121 F.3d 72, 76 (2d Cir. 1997). In the complaint, Plaintiff supplies information that is likely sufficient to permit the Westchester County Jail to identify the individuals involved in the alleged deprivation of Plaintiff's rights during the winter of 2016 and in 2017. It is therefore

ordered that the Westchester County Attorney's Office, which is the attorney for and agent of the Westchester County Jail, ascertain the identity and badge number of j each John/ Jane Doe Defendant whom Plaintiff seeks to sue here and the addresses where these Defendants may be served. The Westchester County Attorney's Office must provide this information to Plaintiff and the Court within sixty days of the date of this order.

Within thirty days of receiving this information, Plaintiff must file an amended complaint naming the John/Jane Doe Defendants. The amended complaint will replace, not supplement, the original complaint. An amended complaint form that Plaintiff should complete is attached to this order. Once Plaintiff has filed an amended complaint, the Court will screen the amended complaint and, if necessary, issue an order directing the Clerk of Court to complete the USM-285 forms with the addresses for the named John/Jane Doe Defendants and deliver all documents necessary to effect service to the U.S. Marshals Service.

## D. Service on County Sheriff George Longworth and Commissioner of Corrections Kevin Cheverko

Because Plaintiff has been granted permission to proceed IFP, he is entitled to rely on the Court and the U.S. Marshals Service to effect service. *See Walker v. Schult,* 717 F.3d 119, 123 n.6 (2d Cir. 2013) (citing 28 U.S.C. § 1915(d)); § 1915(d) ("The officers of the court shall issue and serve all process ... in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) (the court must order the Marshals Service to serve if the plaintiff is authorized to proceed IFP). Rule

4(m) of the Federal Rules of Civil Procedure generally requires service of the summons and complaint to be completed within 90 days of the date the summons issues, and it is Plaintiff's responsibility to request, if necessary, an extension of time for service. *Meilleur v. Strong,* 682 F.3d 56, 63 (2d Cir. 2012). *But see Murray v. Pataki,* 378 F. App'x 50, 51-52 (2d Cir. 2010) (summary order) ("As long as the [plaintiff proceeding IFP] provides the information necessary to identify the defendant, the Marshals' failure to effect service automatically constitutes 'good cause' for an extension of time within the meaning of Rule 4(m).").

To allow Plaintiff to effect service on Defendants County Sheriff George Longworth and Commissioner of Corrections Kevin Cheverko through the U.S. Marshals Service, the Clerk of Court is instructed to fill out a U.S. Marshals Service Process Receipt and Return form ("USM-285 form") for each Defendant. The Clerk of Court is further instructed to issue summonses and deliver to the Marshals Service all of the paperwork necessary for the Marshals Service to effect service upon each Defendant.

**\*3** Plaintiff must notify the Court in writing if his address changes, and the Court may dismiss the action if Plaintiff fails to do so.

### E. Local Civil Rule 33.2

Local Civil Rule 33.2, which requires Defendants in certain types of prisoner cases to respond to specific, court-ordered discovery requests, applies to this action. Those discovery requests are available on the Court's website under "Forms" and are titled "Plaintiff's Local Civil Rule 33.2

Interrogatories and Requests for Production of Documents." Within 120 days of service of the complaint, Defendants must serve responses to these standard discovery requests. In their responses, Defendants must quote each request verbatim. [3]

### CONCLUSION

The Clerk of Court is directed to mail a copy of this order to Plaintiff, together with an information package.

The Clerk of Court is directed to add John/Jane Doe 1 – 10 as Defendants under Fed. R. Civ. P. 21, and to terminate Valhalla County Jail and Valhalla County Jail Staff as Defendants.

The Clerk of Court is further instructed to issue summonses and complete the USM-285 forms with the addresses for County Sheriff George Longworth and Commissioner of Corrections Kevin Cheverko and deliver all documents necessary to effect service to the U.S. Marshals Service.

The Clerk of Court is directed to mail a copy of this order and the complaint to Westchester County Attorney's Office at: 148 Martine Avenue, White Plains, New York 10601.

An "Amended Complaint" form is attached to this order.

Local Civil Rule 33.2 applies to this action.

The Clerk of Court is directed to docket this as a "written opinion" within the meaning of

Section 205(a)(5) of the E-Government Act of 2002.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States,* 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Attachment

### DEFENDANTS AND SERVICE ADDRESSES

1. County Sheriff George Longworth
Westchester County Jail
10 Woods Road
Valhalla, New York 10595

2. Commissioner of Corrections Kevin Cheverko
Westchester County Jail
10 Woods Road
Valhalla, New York 10595

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ CV _____
[include case number if one has been assigned]

Write the full name of each plaintiff.

-against-

**AMENDED COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 5/20/16

## I. LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "Bivens" action (against federal defendants).

☐ Violation of my federal constitutional rights

☐ Other:

## II. PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name     Middle Initial     Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City     State     Zip Code

## III. PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐ Pretrial detainee
☐ Civilly committed detainee
☐ Immigration detainee
☐ Convicted and sentenced prisoner
☐ Other:

## IV. DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name     Last Name     Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City     State     Zip Code

Defendant 2:

First Name     Last Name     Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City     State     Zip Code

Defendant 3:

First Name     Last Name     Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City     State     Zip Code

Defendant 4:

First Name     Last Name     Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City     State     Zip Code

## V. STATEMENT OF CLAIM

Place(s) of occurrence:

Date(s) of occurrence:

FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

INJURIES:

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

## VI. RELIEF

State briefly what money damages or other relief you want the court to order.

**WESTLAW** © 2019 Thomson Reuters. No claim to original U.S. Government Works.     5

VII. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |
| First Name          Middle Initial | Last Name |
| Prison Address | |
| County, City | State          Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing:

Page 6

## All Citations

Slip Copy, 2019 WL 1915331

## Footnotes

1    Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed *in forma pauperis*. See 28 U.S.C. § 1915(b)(1).

2    Plaintiff may have meant to sue the County of Westchester, but he does not allege facts suggesting a policy or custom that might render the County liable for the alleged constitutional violations of its employees. *See Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007)* ("[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.") (internal quotation marks omitted) (alteration in original).

3    If Plaintiff would like copies of these discovery requests before receiving the responses and does not have access to the website, Plaintiff may request them from the Pro Se Intake Unit.

**End of Document**      © 2019 Thomson Reuters. No claim to original U.S. Government Works.